JS 44 (Rev. 12/07) (cand rev 1-16-08)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

### I. (a) PLAINTIFFS

Jose Duarte, pro se

### DEFENDANTS

The Standard Insurance Company, a subdivision of STANCORP, and Does 1 through 50

**(b)** County of Residence of First Listed Plaintiff
(EXCEPT IN U.S. PLAINTIFF CASES)

*Alameda County*

County of Residence of First Listed Defendant *Multnomah County*
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

Shawn Hanson, Katherine Ritchey, Emily Booth
Jones Day
555 California Street, 26th Floor
San Francisco, CA 94104

*BZ*
*ADR*

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

☐ 2  U.S. Government Defendant

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury -- | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R. R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | **LABOR** | | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | Act | ☐ 862 Black Lung (923) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| | | | ☐ 740 Railway Labor Act | | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | | Act |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff | ☐ 900Appeal of Fee |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | or Defendant) | Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | **IMMIGRATION** | ☐ 871 IRS—Third Party | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | ☐ 462 Naturalization Application | 26 USC 7609 | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | ☐ 463 Habeas Corpus – | | ☐ 950 Constitutionality of |
| | Other | | Alien Detainee | | State Statutes |
| | ☐ 440 Other Civil Rights | | ☐ 465 Other Immigration | | |
| | | | Actions | | |

### V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Judge from Magistrate Judgment

Transferred from

Appeal to District

### VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC 1441

Brief description of cause:
Removal; Failure to pay policy benefits

### VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

### VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

### IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)

☐ SAN FRANCISCO/OAKLAND   ☐ SAN JOSE

DATE
June 19, 2008

SIGNATURE OF ATTORNEY OF RECORD

*Emily Booth*

JS 44 Reverse (Rev. 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.** **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.** **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.
**Date and Attorney Signature.** Date and sign the civil cover sheet.

ORIGINAL

FILED

JUN 1 9 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1    Shawn Hanson (State Bar No. 109321)
     shanson@jonesday.com
2    Katherine S. Ritchey (State Bar No. 178409)
     ksritchey@jonesday.com
3    Emily E. Booth (State Bar No. 248008)
     ebooth@jonesday.com
4    JONES DAY
     555 California Street, 26th Floor
5    San Francisco, CA 94104
     Telephone:    (415) 626-3939
6    Facsimile:    (415) 875-5700

7    Attorneys for Defendant
     THE STANDARD INSURANCE COMPANY

8

BZ

9                        UNITED STATES DISTRICT COURT

10                      NORTHERN DISTRICT OF CALIFORNIA

11

12   **JOSE DUARTE,**                          CV Case No.    3 0 2 1

13            **Plaintiff,**                    **NOTICE OF REMOVAL OF CIVIL**
                                                **ACTION UNDER 28 U.S.C. § 1441**
14        **v.**

15   **THE STANDARD INSURANCE**
     **COMPANY, a subdivision of STANCORP,**
16   **and Does 1 through 50,**

17            **Defendants.**

18

19         TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR

20   THE NORTHERN DISTRICT OF CALIFORNIA:

21         PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. § 1441, Defendant The Standard

22   Insurance Company ("Standard"), hereby removes the above-entitled action from the Superior

23   Court of the State of California for the County of Alameda to the United States District Court for

24   the Northern District of California.

25         This removal is based upon the original jurisdiction of the United States District Court

26   over the parties consistent with 28 U.S.C. § 1332 based on the existence of diversity of

27   citizenship of the parties.

28

1    In support of its notice of removal, Standard states to the Court as follows:

2    1.    Plaintiff commenced this action against Standard and Does 1 through 50 by filing a

3    complaint in the Superior Court of the State of California for the County of Alameda (the

4    "Superior Court"), entitled Jose Duarte v. The Standard Insurance Company, a subdivision of

5    Stancorp; and DOES 1 through 50, Case No. RG08369292 on February 1, 2008.

6    2.    On or about May 22, 2008 Standard was served with the Summons and Complaint.  A

7    true and correct copy of the Complaint and Summons is attached hereto as Exhibit A.

8    3.    On June 18, 2008, Standard filed its General Denial and Defenses to Plaintiff's Complaint

9    in the Superior Court of the State of California for the County of Alameda.  A true and correct

10    copy of the General Denial and Defenses is attached hereto as Exhibit B.

11    4.    This Notice of Removal of Civil Action from State Court ("Notice") is timely filed

12    pursuant to 28 U.S.C. § 1446(b) which provides that such notice "shall be filed within thirty days

13    after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading

14    setting forth the claim upon which such action or proceeding is based."  Standard has filed this

15    notice within thirty (30) days after service of the Complaint.  The Complaint was the first paper

16    from which Standard could ascertain that the action was removable.

17    5.    This Court has original jurisdiction of this action under 28 U.S.C. § 1332 in that it is a

18    civil action wherein the matter in controversy exceeds the sum of $75,000, exclusive of costs and

19    interests, and is between a citizen of a state and a citizen of a foreign state.  Specifically, removal

20    is proper based on the following:

21    a.    The amount in controversy exceeds $75,000 because Plaintiff has alleged benefits

22    to age 65 and has prayed for them to be calculated as either $1200 a month or $1599.84 a month.

23    Complaint ¶ 110.  Standard is informed and believes based on information attached to the

24    complaint that Plaintiff is 42 years old and thus seeks over 20 years of benefits.  Complaint ¶ 7.

25    In addition to seeking damages for Standard's alleged failure to provide disability benefits,

26    Plaintiff seeks restitution and disgorgement of profits, as well as punitive damages and attorneys'

27    fees, which amounts must be considered in calculating the amount in controversy.  Complaint ¶

28    112-115; see also Galt G/S v. JSS Scandinavia, 142 F. 3d 1150, 1156 (9th Cir. 1998) (holding

1    that attorneys fees that plaintiffs can recover as a matter of law must be considered by the Court

2    in calculating the amount in controversy); Surber v. Reliance Nat'l Indem.Co., 110 F. Supp. 2d

3    1227, 1232 (N.D. Cal. 2000), citing Richmond v. Allstate Ins. Co., 897 F. Supp. 447, 450 (S.D.

4    Cal. 1995) (exemplary and punitive damages also to be considered in determining amount in

5    controversy). Furthermore, Plaintiff's failure to plead a specific amount of damages in his

6    Complaint should be construed in favor of Standard, supporting a finding that the minimum

7    amount in controversy has been met. See Bosinger v. Phillips Plastic Corporation, 57 F. Supp. 2d

8    986, 989 (S.D. Cal. 1999).

9          b.    Plaintiff alleged that he is a resident of Oakland, California. Complaint ¶ 7.

10         c.    Standard was, at the time of filing this action, and still is incorporated in Oregon,

11    and its principal business office is in Portland, Oregon. The day-to-day control of Standard is

12    exercised from Oregon. The individuals who control the day-to-day operations of Standard's

13    business work at Standard's corporate headquarters, located in Portland, Oregon. Standard

14    supervises its business operations throughout the country from Oregon. The vast majority of

15    Standard's employees, real property and personal property are located in Oregon. Declaration of

16    Rebecca J. Jeffrey In Support of Removal. Standard is not a citizen of the State of California.

17    See Albino v. Standard Ins. Co., 349 F.Supp.2d 1334, 1336 (C.D. Cal. 2004); Jewett v. Standard

18    Ins. Co., 2004 WL 2475553, *2 (C.D. Cal. 2004).

19         d.    Defendants designated as Does 1 through 50 are fictitious defendants, are not

20    parties to this action, have not been served and are to be disregarded for the purposes of this

21    removal. 28 U.S.C. § 1441(a).

22    / / / /

23    / / / /

24    / / / /

25    / / / /

26    / / / /

27    / / /

28    / / /

1    6.    Based on the foregoing, this action is one over which this Court has original jurisdiction

2    and which may be removed by Standard to this Court pursuant to 28 U.S.C. §§ 1441(b) and 1446

3    because complete diversity of citizenship exists between Plaintiff and Standard.

5    Dated: June 19, 2008                          Respectfully submitted,

6                                                  Jones Day

8                                                  By: _Emily Booth_____
                                                       Emily Booth

10                                                 Counsel for Defendant
                                                   THE STANDARD INSURANCE
11                                                 COMPANY

12   SFI-585196v1

NOTICE OF REMOVAL OF CIVIL ACTION
UNDER 28 U.S.C. 1441

**EXHIBIT  A**

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>THE STANDARD INSURANCE COMPANY, a subdivision of<br>STANCORP, and Does 1 through 50<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br>JOSE DUARTE | **FOR COURT USE ONLY**<br>*(SOLO PARA USO DE LA CORTE)*<br><br>ENDORSED<br>FILED<br>ALAMEDA COUNTY<br><br>FEB 0 1 2008<br><br>CLERK OF THE SUPERIOR COURT<br>By Esther Coleman, Deputy |

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>Alameda County Superior Court, 1225 Fallon St, Oakland, CA 94612 | **CASE NUMBER:**<br>*(Número del Caso):*  R G 0 8 3 6 9 2 9 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
JOSE DUARTE, 5319 Broadway Terrace, #103, Oakland, CA 94618, (510) 653-9999

| DATE:<br>*(Fecha)* FEB 0 1 2008 | PAT S. SWEETEN | Clerk, by Esther Coleman<br>*(Secretario)* | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* THE STANDARD Insurance Company

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
   ☑ other *(specify):* CCP § 415.95 — Business Organization Form Unknown

4. ☐ by personal delivery on *(date):*

Page 1 of 1

**SUMMONS**

| 1 | Jose Duarte | |
| | 5319 Broadway Terrace #103 | ENDORSED |
| 2 | Oakland, California | FILED |
| | (510) 653-9999 | ALAMEDA COUNTY |
| 3 | | FEB 0 1 2008 |
| 4 | In forma pauperis | CLERK OF THE SUPERIOR COURT |
| 5 | | SUPERIOR COURT OF THE STATE OF CALIFORNIA By Esther Coleman, Deputy |
| 6 | | COUNTY OF ALAMEDA |

| 7 | JOSE DUARTE | CASE NO: RG08369292 |
| 8 | Plaintiff, | |
| | | PLAINTIFF'S COMPLAINT FOR |
| 9 | vs. | DECLARATORY RELIEF, INJUNCTIVE |
| | | RELIEF, AND DAMAGES |
| 10 | THE STANDARD INSURANCE COMPANY, a | |
| 11 | subdivision of STANCORP, and DOES 1 | |
| | THROUGH 50, | |
| 12 | Defendant(s) | |

13

14    Mr. JOSE DUARTE, the plaintiff, demands a jury trial and states:

15    1.   Duarte sues THE STANDARD INSURANCE COMPANY for its failure to pay him disability

16    insurance benefits to age 65 pursuant to an insurance policy (Exh. A). On December 4, 2003,

17    Duarte was brutally attacked while teaching for Oakland Unified School District (Exh. B). In

18
      December 2004, Duarte applied for disability benefits. Standard denied Duarte his disability
19
20    benefits in part, only committing to paying said benefits for a 24 months referencing suspect policy

21    "amendments" and using questionable calculation methods.

22                                        **STANDING**

23    2.   Standard harmed Duarte.

24
                                  **JURISDICTION AND VENUE**
25

26    3.   Standard maintains sales and service offices in San Francisco, CA, and purposefully transacts

27    significant business in California. Consequently, the Court has personal jurisdiction over Standard

28    pursuant to Code Civil Procedure section 410.10. (Exh. I).

-1-

PLAINTIFF'S COMPLAINT

4. The Court also has jurisdiction over the subject matter because it involves a contract that became enforceable against the parties in Oakland, California.

5. Venue is proper in this Court because the unlawful conduct alleged below was and is now being committed in Alameda County.

## PRINCIPAL REMEDIES SOUGHT

6. This is a contract action seeking equitable relief against Standard and not a tort action. Duarte seeks only equitable relief and only in the alternative damages if this Court construes unpaid benefits as money damages. Examples of equitable remedies include back pay[1] or most accurately in this case, back due benefits and/or benefits improperly withheld. Duarte seeks equitable remedies in the form of declaratory relief to determine the terms of the disability insurance contract and specific performance. Retroactive remedies in the form of unpaid benefits or the amount owed to Duarte due to Standard's incorrect calculations may sound in either law or equity.

## PARTIES

7. Duarte is an adult citizen of the United States and a resident Oakland, California. At the time of the injury, he was 38 years old and a probationary employee of OUSD as a credentialed Spanish teacher assigned the School for Social Justice.

8. Standard is an insurer and is a subdivision of the StanCorp. Financial Group a corporation incorporated in Oregon. Standard was incorporated under the laws of the State of Oregon. Standard maintains sales and service offices in San Francisco, CA, and purposefully transacts significant business in California (Exh. I).

## BACKGROUND FACTS

---

[1] Title VII of the Civil Rights Act of 1964 instructs that, to redress violations of the Act, courts may award, *inter alia*, "appropriate ... equitable relief," including "reinstatement or hiring of employees, with or without back pay." 42 U. S. C. §2000e-5(g)(1).

-2-

PLAINTIFF'S COMPLAINT

9.  Duarte taught from 1992 until December 4, 2003, taking breaks from teaching to return to school. As a result of vicious attack on him, Duarte is totally disabled from teaching.

10. On February 2004, Duarte lost his second job as a paralegal because he could no longer do his work as a result of Post Traumatic Stress Disorder.  He gets frequent lapses in concentration and blank outs.

11. On November 2004, Duarte made a futile attempt to return to work as a paralegal but was terminated because he made numerous mistakes and could not keep up with the multiple tasks as a result of his cognitive problems.  Thus, Duarte is impaired from his secondary line of work, paralegal, as discussed by Dr. Felix below.

12. Between 1994 and 1997, Duarte had been a fire fighter for the California Department of Forestry. This work entailed responding to medical emergencies, lifting victims weighing 150 pounds, lifting hydraulic tools weighing 70 pounds, climbing ladders, and pulling charged hose line weighing over 200 pounds.  Duarte is disabled from firefighting due the impinged shoulder.

13. The insurance policy provides for payment of benefits for disability from one's own line of work and any line of work for which one is qualified.  The policy does not make any distinction between physical injury causing physical symptoms and psychiatric injury causing physical symptoms.  An ambiguity exists as to whether the limitation on mental illness applies to mental illnesses having *physical manifestations* or physical injuries having psychological symptoms.  Duarte has both an impinged left shoulder and physical symptoms of nausea, convulsions, and headaches would be physical disabilities for which any limitations on psychiatric illness would not apply.

## FACTS

14. On or about December 1, 2003, OUSD hired Duarte to teach high school Spanish. Ms. Betty Succo, OUSD's Human Resources Officer, handed Duarte an employment packet that included health,

-3-

1    dental. and disability insurance information. In that packet was a disability insurance policy from

2    Standard, a true and accurate copy of that policy is attached (Exh. A).

3
     15. on December 3, 2003, Duarte reported for his first day of work at the School for Social Justice, part
4
5    of OUSD.

6    16. On December 4, 2003, Duarte was viciously attacked by two students, Demario Freeland and Vuyo

7    Mbuli.

8    17. On or about December 4, 2003, at approximately, 12: 00 noon, DeMario Freeland burst into
9
10   Duarte's classroom through an adjacent classroom door which had been blocked by heavy desks to

11   prevent intrusion from the next classroom. Freeland's violent entry into the classroom shocked

12   students. Upon entering Duarte's classroom Freeland went around the class disrupting other

13   students. Duarte demanded that he leave, but Freeland refused and continued to disrupt the class

14   with loud outbursts.   At or about 12:10 Freeland walked out of Duarte's classroom, and Duarte
15
     locked the door behind him. At 12:15 there was a knock at the door, and Duarte opened the door to
16
17   see who it was. Freeland had returned with Vuyo Mbuli, who is 5'10" and weighs approximately

18   180 lbs.

19   18. Mbuli made abusive remarks to Duarte because he had not allowed Freeland to enter after bursting
20
     into the classroom earlier. Duarte told them that they could not enter. Then both Freeland and
21
22   Mbuli angrily rammed Duarte knocking him backward and injuring his left shoulder and arm.

23   While Duarte was teaching the other students, Mbuli taunted Duarte and threatened to kill him

24   repeatedly.

25   19. Later, while Duarte was in the office to make a formal report of the incident, Mbuli was in the
26
     office and attacked and threatened Duarte a second time.
27
28   20. On or about December 4, 2003, Duarte notified the Oakland Police Department that he had been a

                                                      -4-

PLAINTIFF'S COMPLAINT

victim of a violent crime and filed a report.

21. As a result of the attack and in addition to the injury to the shoulder, Duarte suffered Post Traumatic Stress.

22. On or about December 16, 2003, Duarte sought and the Alameda County Superior Court granted a temporary restraining order against the student attackers, Freeland and Mbuli. On January 9, 2004, a hearing on injunction was held at the Alameda County Superior Court, which issued a final injunction restraining Freeland and Mbuli (Exh. B, bates 2001, 2013).

23. On or about November 2004, Duarte made a claim with OUSD's risk management office for permanent disability benefits. On or about November 2004, Overlin Zamora, director of risk manage for OUSD, referred Duarte to Standard for his claim for disability benefits. The Risk Management office certified Duarte's disabilities and sent the form to Standard.

24. On December 2004, Duarte filed his claim for permanent disability benefits with Standard pursuant to the terms of the insurance policy. This claim included his diagnoses from his psychiatric and orthopedic health care providers, indicating disability.

25. Between December 2004 and continuing into 2006, Duarte provided Standard with all of the information it requested and rebutted what Duarte felt were unlawful pretexts for denial of benefits. Those pretexts were that the Standard Insurance Company could delay payment pending the outcome of the worker's compensation matter, that payment could be conditioned on Duarte signing a new agreement adding new terms, that payment will be delayed because Duarte was represented by counsel, among other things. Moreover, between December 2004 and into 2006 the Standard Insurance Company wrote to Duarte to send him "amendments" and different policies to claim that Duarte was not entitled to benefits beyond 24 months.

26. On or about January 6, 2005, the Standard Insurance Company wrote to Duarte admitting that he

-5-

1    was disabled due to Duarte's Post Traumatic Stress Disorder was subject to a 24 month limitation

2    but claimed that Duarte would be eligible for benefits until age 65 if he was "...disabled from Any

3    Occupation as defined by the Any Occupation Definition of Disability due to his physical

4
     condition(s) alone..." The Standard Insurance Company stated that it would continue to review the

5

6    matter.

7    27. In that same January 6, 2005 letter, Standard purported to allege an "amendment" to Duarte's policy

8    that limited benefits to 24 months. They attached a copy of that alleged "amendment." This

9
     alleged amendment appears to be a generic form, does not contain a title identifying Duarte's
10

11   policy, has "Oakland Unified School District" typed over it on top indicating a later creation, and it

12   is crooked and appears pasted together. Notably, it reads at line 1, "Effective October 1, 1996..."

13   but at the footer of the document it has a creation date of "90 LTD." The Standard Insurance

14   Company stated that it would continue to review the matter.

15
16   28. Once Duarte rebutted by showing the existence of disability based on the physical trauma to the

17   shoulder, Standard switched to a claim that disability from "all work" only means teaching, which

18   for them is a purely psychiatric illness irrespective of symptoms, in order to limit payment to 24

19   months.

20
     29. On or about January 11, 2005, upon seeing Duarte's diagnoses of physical disability, Standard
21

22   reversed itself and mischaracterized Duarte's as disability as a mental disability rather than a

23   physical one, "Therefore, the focus of this review will be regarding Duarte's mental impairment

24   from December 4, 2003 to current." The Standard Insurance Company stated that it would continue

25   to review the matter.

26
     30. On January 14, 2005, Duarte informed Standard that Duarte had been approved for State of
27

28   California Disability Benefits (Exh. C).

-6-

PLAINTIFF'S COMPLAINT

31. As stated above, all orthopedists concur that the left shoulder is permanently impinged with vocational disability, most notably Dr. Anthony Matan and Social Security Administration examiner Calvin Pon, MD.

32. On April 18, 2005, Standard wrote to Duarte admitting that he is disabled and entitled to disability benefits (Exh. D). The Standard Insurance Company stated that it would continue to review the matter.

33. On or about April 2005 defendants started sending checks to Duarte, who did not cash them immediately.

34. On April 20, 2005, Standard wrote to Duarte attaching yet another version of an insurance policy with "Printed 6/7/93" typed at the footer and purporting to limit Duarte's benefits to 24 months. This is the **third** time that Standard presented an incorrect policy as being authentic and controlling. The Standard Insurance Company stated that it would continue to review the matter.

35. On or about April 2005 Standard started sending checks to Duarte, who did not cash them immediately.

36. On October 2005, However, Duarte's Qualified Medical Examiner Dr. Joseph Anthony Matan diagnosed Duarte's shoulder impingement as disabling him from physical labor (Exh. E, p. 9).

37. On or about March 2006, Duarte realized that Standard breached the agreement by arbitrarily refusing to pay Duarte his disability insurance benefits until age 65, because he did not receive a check that month. In fact on February 2, 2006, Standard sent Duarte a check for the last time (Exh. F).

38. In 2006, Duarte applied for Social Security benefits. The Social Security Administration sent Duarte to be examined by its own doctors. On March 19, 2007, Morton Felix, PhD, psychologist for the Social Security Administration found that Duarte had <u>physical</u> symptoms[2] The examiner

[2]On January 20, 2005, Duarte provided defendants with a detailed explanation of Duarte's Post Traumatic Stress

wanted to find out more about the severe beating the claimant received in the a school classroom, but when prodded to talk about it, the claimant shivered and shook and had a very contorted and negative response to the memories of the incident..." "It was clear that the claimant could not think about the incident without severe mental and physical reactions..." (Exh. G, bates 1012).

39. Additionally, on March 27, 2007, Calvin Pon, MD, orthopedist for the Social Security Administration found Duarte to be physically disabled from all lines of physical labor due to the left shoulder impingement (Exh. H, Bates 7004, 7005)(emphasis added).

40. To summarize, the Standard Insurance Company does not contest that Duarte is disabled. The Standard Insurance Company admits that Duarte is psychiatrically disabled. The dispute is whether a) the policy has an ambiguity as to physical injury that causes psychiatric symptoms and psychiatric illness which causes physical symptoms both of which are treated as physical disability in California, and b) Duarte is only psychiatrically disabled or also physically disabled. The Standard Insurance Company paid Duarte disability benefits.

## CAUSES OF ACTION

## 1. BREACH OF CONTRACT

41. Duarte restates and reiterates all of the foregoing paragraphs of this complaint as if set forth in full at this point.

42. All applicable laws and ordinances in existence when the agreement is made become a part thereof as fully as if incorporated by reference. *Calpetro Producers Syndicate v. Woods Co.,* (1929) 206 C. 246, 252, 278.

43. The contract terms provided that Duarte would be entitled disability insurance benefits upon suffering disabling injury or illness and that those benefits would be paid until age 65, and without offset (Exh. A).

Disorder symptoms including, "violent illness, vomiting, headaches, and night sweats."

-8-

PLAINTIFF'S COMPLAINT

44. Duarte did all of the significant things that the contract required him to do including filing a claim for disability benefits.

45. All conditions required for Standard' performance had occurred as Duarte was disabled from not only his but all other lines of work due to his injuries. Those injuries are physical injury to his left shoulder and psychiatric injuries.

46. Standard breached their duties that the contract required.

47. As a result, Duarte suffered harm.

48. Wherefore Duarte prays for Declaratory Relief, Specific Performance; civil penalties; Injunctive relief as this court deems appropriate: prospective and retroactive, cost of suit, and attorney's fees.

## 2. BREACH OF THE IMPLIED COVENANT

## OF GOOD FAITH AND FAIR DEALING

49. Duarte restates and reiterates all of the foregoing paragraphs of this complaint as if set forth in full at this point.

50. The contractual relationship between Duarte and Standard is governed by the California implied covenant of good faith and fair dealing.

51. In acting as described above, Standard wrongfully and unreasonably breached its duty implied in the employment contract to deal fairly and in good faith with Duarte.

52. Standard knew at all material times that because of Duarte's age, health condition, and work experience, that he was extremely vulnerable to substantial harm from the termination of his employment. Standard also knew that at all material times Duarte was in an inherently unequal bargaining position with Standard and had placed trust and confidence in Standard to act fairly and in good faith toward him.

53. As a direct and proximate result of Standard' conduct, Duarte has sustained substantial economic

-9-

losses, including past and future compensation, and other economic benefits. Duarte has also sustained loss of financial stability, peace of mind and future security and has suffered embarrassment, humiliation, mental and emotional distress and discomfort, all to his detriment and damage in amounts not fully ascertained.

54. In acting as described above, Standard acted oppressively, maliciously, fraudulently and outrageously towards Duarte, with conscious disregard for his known rights and with the intention of causing, unjust and cruel hardship to him. In acting in a deliberate, cold, callous and intentional manner Standard intended to and did injure and annoy Duarte.

55. Duarte requests the assessment of punitive damages against Standard in an amount to punish and make an example of them.

56. Wherefore Duarte prays for Declaratory Relief, Specific Performance; civil penalties; Injunctive relief as this court deems appropriate: prospective and retroactive, cost of suit, and attorney's fees.

### 3. BREACH OF THE OBLIGATION OF GOOD FAITH AND FAIR DEALING:

### BAD FAITH INSURER BREACH

**California *Insurance Code* § 790.03(h), California Unfair Claims Practices Act**

57. Duarte incorporates by reference all of the preceding paragraphs by reference.

58. Standard breached the obligation of good faith and fair dealing by unreasonably failing to pay and delaying payment of insurance benefits.

59. Duarte suffered a loss covered under an insurance policy with Standard (Exh. A).

60. Standard were notified of the loss.

61. Standard unreasonably failed to pay and delayed payment of policy benefits.

62. Duarte was harmed.

63. Standard' unreasonable failure to pay and delay in payment of policy benefits was a substantial

-10-

1  factor in causing Duarte's harm.

2  64. Wherefore Duarte prays for Declaratory Relief. Specific Performance; civil penalties; Injunctive

3
4     relief as this court deems appropriate: prospective and retroactive, cost of suit, and attorney's fees.

5  **4. VIOLATION CAL. CIVIL CODE §51, THE UNRUH ACT**

6
7  65. Duarte restates and reiterates all of the foregoing paragraphs of this complaint as if set forth in full

8     at this point.

9  66. Duarte intentionally invokes the protections of the Unruh Act under Civ. Code section 51 (f) in

10    order to resolve any question as to whether Duarte seeks protection of his civil right to be free from

11    disability discrimination under the Americans with Disabilities Act.

12
13 67. The conduct of Standard in denying him his disability benefits constitutes interference on the basis

14    of disability with Duarte's right to the "the full and equal enjoyment of the goods, services,

15    facilities, privileges, advantages, or accommodations of any place of public accommodation . . . "

16    under the ADA. 42 U.S.C. section 12182, subd. (a).

17
18 68. But, Standard also violated Duarte's right guaranteed under the ADA to receive the benefits of the

19    services, programs or activities of a public entity which are unrelated to public accommodations and

20    do not derive from the common law.  42 U.S.C. Section 12132. In this case, Standard had a duty to

21    provide those benefits and failed to do so on the basis of Duarte's disabilities.

22 69. As a result,Duarte suffered harm.

23
24 70. Wherefore Duarte prays for Declaratory Relief, Specific Performance; civil penalties; Injunctive

25    relief as this court deems appropriate: prospective and retroactive, cost of suit, and attorney's fees.

26 **5. UNFAIR COMPETITION**

27 **Cal. Business & Professions Code § 17200**

28
   71. Duarte hereby incorporate by reference all of the preceding paragraphs as if fully set forth herein.

-11-

72. Under the Unruh Act, Civil Code §§51,52 it is unlawful for private individuals to discriminate against Duarte on the basis of her gender, race, national origin, medical condition, and/or disability. The Unruh is a strict liability statute.

73. All applicable laws and ordinances in existence when the agreement is made become a part thereof as fully as if incorporated by reference. Calpetro Producers Syndicate v. Woods Co., (1929) 206 C. 246, 252; 278. The terms in contracts in California are governed by Civil Code §§51, the California Constitution Article 1, §§1, the provisions of which are duties with which the insurer must comply.

74. It is unlawful for private individuals to violate California Constitution, article I §§1, the right to property and happiness. The California Constitution provides for strict liability.

75. Standard' violations of Civil Code §§51, 52, the California Constitution Article 1, §§1 and Ins. Code §790.03(h) constitute per se violations of the Unlawful Business Practice prong of Cal. Bus. Cal. Business & Professions Code §§ 17200, et. Seq.

76. Standard through their agents made the representations that the insurance policy complied with all laws and that Duarte would receive fair non-discriminatory treatment.

77. When Standard made these representations, they had a tendency to deceive and/or had no ground for believing them to be true in that they were not going to provide Duarte with the benefits as described in his policy. Standard' deceptive practices constitute unfair competition under the Fraudulent Acts or Practices prong of Bus. & Prof. Code §17200.

78. Standard' acts of deceiving Duarte, delaying payment of benefits, and misrepresenting the amount of benefits are immoral, unethical, oppressive, unscrupulous, and injurious conduct prohibited the Unfair Act or Practices prong of Bus. & Prof. Code § 17200.

79. Standard repeatedly stated that they would continue to ignore Duarte's physical disabilities, construe contractual ambiguities against him, and would use fabricated insurance policies. As a

-12-

PLAINTIFF'S COMPLAINT

1    result, Duarte is informed and believes that Standard will continue to intimidate, discriminate, and

2    harm her in violation of the above statutory and Constitutional rights.

3
4    80. Wherefore Ms. Duarte prays for injunctive relief.

5    **6. DECLARATORY AND INJUNCTIVE RELIEF INCLUDING SPECIFIC**

6    **PERFORMANCE**

7    81. Duarte restates and reiterates all of the foregoing paragraphs of this complaint as if set forth in full

8    at this point.

9
10   82. About December 2003, Duarte entered into an agreement.  The consideration was reasonable.

11   Duarte performed all covenants required of him by the contract.

12   83. The conduct of Standard violated California and Federal laws guaranteeing Duarte right to be free

13   from discrimination on the basis of disability.

14
15   84.  Duarte seeks specific performance for all of the benefits under the contract (Exh. A).

16   85. In addition, pursuant to California Civil Code § 52(c)(3), Duarte is entitled to seek injunctive and

17   equitable relief, against the person or persons responsible for the conduct, as Duarte's deems

18   necessary to ensure the full enjoyment of the rights described in the contract.

19   86. Unless and until enjoined by order of this Honorable court, Standard will continue to violate Duarte

20   's rights as herein alleged, thereby causing Duarte great and irreparable injury in that they these

21
22   Standard will continue to discriminate against them in violation of the above-enumerated statutes.

23   87. Duarte  has no adequate remedy at law for the injuries suffered and to be suffered in the future in

24   that it is impossible for him to calculate a sum of money damages that will compensate them for the

25   deprivation of their rights as alleged herein.

26
27   88.  Wherefore Duarte prays for Declaratory Relief, Specific Performance; civil penalties; Injunctive

28   relief as this court deems appropriate: prospective and retroactive, cost of suit, and attorney's fees.

-13-

1

**PRAYER FOR RELIEF**

2

89.  Duarte demands a jury trial.

3

90.  Duarte's remedies sought include but are not limited to the following against all Standard:

4

5

91.  Issue injunctive (specific performance) relief retroactively for disability benefits not paid since

6

February 2, 2006 in the sum of $28, 800 or in an amount that this Court deems just and

7

prospectively in the amount of $1,200 per month starting now.  This total is $27, 600.

8

92.  Permanently enjoin Standard from making further misrepresentations.

9

93.  Issue a permanent injunction mandating that all Standard make prompt payment of disability

10

benefits every month on or about the 1ˢ of the month.

11

12

94.  Declare that Duarte's 2002 insurance policy controls.

13

95.  Declare that Duarte properly presented a claim for disability benefits under that policy.

14

96.  Declare that Duarte is disabled due to cognitive and physical impairment

15

16

97.  Declare that Duarte is disabled from his own occupation.

17

98.  Declare that Duarte is disabled from his own occupations of teaching, paralegal, and firefighter.

18

99.  Declare that Duarte is disabled from any occupation.

19

100.Declare that Duarte satisfied the requirements for disability benefits under the "Own Occupation"

20

definition of disability.

21

22

101.Declare that Duarte satisfied the requirements for disability benefits under the "Any Occupation"

23

definition of disability.

24

102.Declare that Duarte's 2002 insurance policy contains an ambiguity between psychiatric

25

manifestations caused by physical injuries and psychiatric illness which cause physical

26

manifestations.

27

28

103.Declare that the above ambiguity  shall be construed against the drafter. defendant Standard.

-14-

104. Declare that based on this ambiguity a 24 month benefit limit did not apply to Duarte's physical symptoms including but not limited to convulsions, nausea, retching, vomiting, headaches, and night sweats.

105. Declare that no 24 month benefit limit applies to Duarte's limitations in his impinged left shoulder.

106. Declare that Duarte satisfied the requirements for payment of disability benefits to age 65.

107. Declare that Standard waived the repayment provisions of Duarte's policy.

108. Declare that Standard unlawfully denied Duarte his disability benefits in violation of California law including but not limited to Insurance Code §790 and the Unruh Act.

109. Declare that Standard violated Duarte's right to happiness and property under Article I, §1 of the California Constitution.

110. Declare the proper method for calculating the monthly benefit amount per the terms of the policy: a) $1,200 maximum or b) 66.66% of the first $1,200 ($799.92) + 66.66% of the next $1,200 ($799.92) = $1,599.84 ($799.92 + $799.92= $1599.84.). Award back due amounts if necessary.

111. Award penalties against Standard under Civil Code §52.

112. Award restitution and disgorgement of profits.

113. Award punitive remedies against Standard as the court deems appropriate.

114. Grant Duarte his attorney's fees and costs arising out of this suit.

115. Grant such other and further relief as the Court deems appropriate including but not limited to damages.

Date: January 31, 2008

_̷ ̷ ̷ ̷ ̷ ̷ ̷ ̷ ̷_
JOSE DUARTE

-15-

PLAINTIFF'S COMPLAINT

# EXH. A

# STANDARD INSURANCE COMPANY

A Stock Life Insurance Company
900 SW Fifth Avenue
Portland, Oregon 97204-1282
(503) 321-7000

*People. Not Just Policies.®*

## CERTIFICATE:

## GROUP LONG TERM DISABILITY INSURANCE

Policyowner:                              Oakland Unified School District

Policy Number:                           614371-A

Effective Date:                          March 1, 1993

A Group Policy has been issued to the Policyowner. We certify that you will be insured as provided by the terms of the Group Policy. If your coverage is changed by an amendment to the Group Policy, we will provide the Policyowner with a revised Certificate or other notice to be given to you.

Possession of this Certificate does not necessarily mean you are insured. You are insured only if you meet the requirements set out in this Certificate.

"We", "us" and "our" mean Standard Insurance Company. "You" and "your" mean the Member. All other defined terms appear with the initial letter capitalized. Section headings, and references to them, appear in boldface type.

*Ronald E. Timpe*
President

GC190-LTD

Printed on recycled paper

## CALIFORNIA NOTICE OF COMPLAINT PROCEDURE

Should any dispute arise about your premium or about a claim that you have filed, write to the company that issued the group policy. If the problem is not resolved, you may also write to the State of California, Department of Insurance, Consumer Services Division, 300 S. Spring Street, 14th FL, Los Angeles, CA 90013, or call toll-free 1-800-927-HELP (4357). This notice of complaint procedure is for information only and does not become a part or condition of this group policy/certificate.

## CALIFORNIA LIFE AND HEALTH INSURANCE GUARANTEE ASSOCIATION ACT

### SUMMARY DOCUMENT AND DISCLAIMER

Residents of California who purchase life and health insurance and annuities should know that the insurance companies licensed in this state to write these types of insurance are members of the California Life and Health Insurance Guarantee Association ("CLHIGA"). The purpose of this Association is to assure that policyholders will be protected, within limits, in the unlikely event that a member insurer becomes financially unable to meet its obligations. If this should happen, the Guarantee Association will assess its other member insurance companies for the money to pay the claims of the insured persons who live in this state and, in some cases, to keep coverage in force. The valuable extra protection provided by these insurers through the Guarantee Association is not unlimited, however, as noted below, and is not a substitute for consumers' care in selecting insurers.

The California Life and Health Insurance Guarantee Association may not provide coverage for this policy. If coverage is provided, it may be subject to substantial limitations or exclusions, and require continued residency in California. You should not rely on coverage by the Association in selecting an insurance company or in selecting an insurance policy.

Coverage is NOT provided for your policy or any portion of it that is not guaranteed by the insurer or for which you have assumed the risk, such as a variable contract sold by prospectus.

Insurance companies or their agents are required by law to give or send you this notice. **However, insurance companies and their agents are prohibited by law from using the existence of the guarantee association to induce you to purchase any kind of insurance policy.**

Policyholders with additional questions should first contact their insurer or agent or may then contact:

**The California Life and Health Insurance Guarantee Association**

**PO Box 17319**

**Beverly Hills CA  90209-3319**

**OR**

**Consumer Services Division**

**California Department of Insurance**

**300 S Spring St, 14th Fl**

**Los Angeles CA  90013**

The state law that provides for this safety-net coverage is called the California Life and Health Guarantee Association Act. Below is a brief summary of this law's coverages, exclusions and limits. This summary does not cover all provisions of the law; nor does it in any way change anyone's rights or obligations under the Act or the rights or obligations of the Association.

### COVERAGE

Generally, individuals will be protected by the California Life and Health Insurance Guarantee Association if they live in this state and hold a life or health insurance contract, or an annuity, or if they are insured under a group insurance contract, issued by a member insurer. The beneficiaries, payees or assignees of insured persons are protected as well, even if they live in another state.

## EXCLUSIONS FROM COVERAGE

However, persons holding such policies are not protected by this Guarantee Association if:

Their insurer was not authorized to do business in this state when it issued the policy or contract;

Their policy was issued by a health care service plan (HMO, Blue Cross, Blue Shield), a charitable organization, a fraternal benefit society, a mandatory state pooling plan, a mutual assessment company, an insurance exchange, or a grants and annuities society;

They are eligible for protection under the laws of another state. This may occur when the insolvent insurer was incorporated in another state whose guaranty association protects insureds who live outside that state.

The Guarantee Association also does not provide coverage for:

Unallocated annuity contracts; that is, contracts which are not issued to and owned by an individual and which guarantee rights to group contract holders, not individuals;

Employer or association plans, to the extent they are self-funded or uninsured;

Any policy or portion of a policy which is not guaranteed by the insurer or for which the individual has assumed the risk, such as a variable contract sold by prospectus;

Any policy of reinsurance unless an assumption certificate was issued;

Interest rate yields that exceed an average rate;

Any portion of a contract that provides dividends or experience rating credits.

## LIMITS ON AMOUNT OF COVERAGE

The Act limits the Association to pay benefits as follows:

## LIFE AND ANNUITY BENEFITS

80% of what the insurance company would owe under a policy or contract up to $100,000 in cash surrender values,

$100,000 in present value of annuities, or

$250,000 in life insurance death benefits.

A maximum of $250,000 for any one insured life no matter how many policies and contracts there were with the same company, even if the policies provided different types of coverages.

## HEALTH BENEFITS

A maximum of $200,000 of the contractual obligations that the health insurance company would owe were it not insolvent. The maximum may increase or decrease annually based upon changes in the health care cost component of the consumer price index.

## PREMIUM SURCHARGE

Member insurers are required to recoup assessments paid to the Association by way of a surcharge on premiums charged for health insurance policies to which the Act applies.

001005

# Table of Contents

COVERAGE FEATURES ........................................................................... 1
    GENERAL POLICY INFORMATION ............................................. 1
    BECOMING INSURED ....................................................................... 1
    SCHEDULE OF INSURANCE ........................................................... 2
    DISABILITY PROVISIONS ............................................................... 3
    EXCLUSIONS AND LIMITATIONS ................................................. 3
    DEDUCTIBLE INCOME .................................................................... 3
    OTHER PROVISIONS ....................................................................... 4
    PREMIUM CONTRIBUTIONS ......................................................... 4
INSURING CLAUSE ............................................................................... 5
DEFINITION OF DISABILITY .............................................................. 5
RETURN TO WORK INCENTIVE ........................................................ 6
TEMPORARY RECOVERY .................................................................... 6
WHEN LTD BENEFITS END ................................................................ 7
PREDISABILITY EARNINGS ............................................................... 7
DEDUCTIBLE INCOME ........................................................................ 8
EXCEPTIONS TO DEDUCTIBLE INCOME ......................................... 9
COORDINATION OF BENEFITS .......................................................... 9
RULES FOR DEDUCTIBLE INCOME .................................................. 10
SURVIVORS BENEFIT .......................................................................... 10
WAIVER OF PREMIUM ......................................................................... 11
BENEFITS AFTER INSURANCE ENDS OR IS CHANGED ................. 11
EFFECT OF NEW DISABILITY ............................................................ 11
EXCLUSIONS .......................................................................................... 11
LIMITATIONS ......................................................................................... 11
CLAIMS ................................................................................................... 12
ALLOCATION OF AUTHORITY ........................................................... 13
TIME LIMITS ON LEGAL ACTIONS .................................................... 14
INCONTESTABILITY PROVISIONS .................................................... 14
CONTINUITY OF COVERAGE ............................................................. 14
WHEN YOUR INSURANCE BECOMES EFFECTIVE ......................... 14
ACTIVE WORK PROVISIONS .............................................................. 15
WHEN YOUR INSURANCE ENDS ....................................................... 16
CONTINUED INSURANCE DURING SCHOOL VACATIONS ............. 16
STRIKE CONTINUATION ..................................................................... 16
REINSTATEMENT OF INSURANCE .................................................... 17
DEFINITIONS ......................................................................................... 17



## Index of Defined Terms

The page number shown below is where the term is defined. For terms defined by an entire section, the page number below is the page on which that section begins.

Noncontributory, 18

Active Work, Actively At Work, 15
Allowable Period, 6
Any Occupation Definition of Disability, 5
Any Occupation Income Level, 3
Any Occupation Period, 3

Own Occupation, 5
Own Occupation Definition Of Disability, 5
Own Occupation Income Level, 3
Own Occupation Period, 3

Benefit Waiting Period, 17

Partial Disability, 5
Physical Disease, 18
Physician, 18
Class Definition, 1
Contributory, 17
CPI-W, 17
Policyowner, 1
Predisability Earnings, 7
Pregnancy, 18
Prior Plan, 18
Proof Of Loss, 12
Deductible Income, 8
Disability, 5
Disabled, 5
Return To Work Incentive, 6

Eligibility Waiting Period, 17
Employer(s), 1
Evidence of Insurability, 17
Strike Continuation, 4

Temporary Recovery, 6
Group Policy, 17
Group Policy Effective Date, 1
Group Policy Number, 1
War, 11
Work Earnings, 6

Hospital, 12

Indexed Predisability Earnings, 18
Injury, 18

Leave of Absence Provision, 4
LTD Benefit, 18

Material Duties, 5
Maximum Benefit Period, 3, 18
Maximum LTD Benefit, 2
Member, 1
Mental Disorder, 12
Minimum LTD Benefit, 2

# COVERAGE FEATURES

This section contains many of the features of your long term disability (LTD) insurance. Other provisions, including exclusions, limitations, and Deductible Income, appear in other sections. Please refer to the text of each section for full details. The Table of Contents and the Index of Defined Terms help locate sections and definitions.

## GENERAL POLICY INFORMATION

| | |
|---|---|
| Group Policy Number: | 614371-A |
| Policyowner: | Oakland Unified School District |
| Employer(s): | Oakland Unified School District |
| Group Policy Effective Date: | March 1, 1993 |
| State of Issue: | California |

## BECOMING INSURED

To become insured you must: (a) Be a Member; (b) Complete your Eligibility Waiting Period; and (c) Meet the requirements in **Active Work Provisions** and **When Your Insurance Becomes Effective**.

Definition of Member:

You are a Member if you are:

1. An active full-time employee of the Employer;

2. An employee for whom long term disability coverage is provided under the terms of a collective bargaining agreement with the Employer; and

3. A citizen or resident of the United States or Canada.

You are not a Member if you are:

1. A part-time employee or substitute teacher;

2. A temporary or seasonal employee; or

3. A full time member of the armed forces of any country.

Class Definition:

Class 1: White Collar employees who are covered under a collective bargaining agreement with Oakland School Employees Association/United Public Employees 790

Class 2: Certificated employees with five or more years of credited service with the California State Teachers Retirement System

Class 3: Employees who are covered under a collective bargaining agreement with California School Employees Association, Oakland Chapter 1, and were hired after the date of execution of the 1977 - 1980 collective bargaining agreement

Class 4: Classified employees

Class 5: All other employees

| | |
|---|---|
| Eligibility Waiting Period: | You are eligible on the Group Policy Effective Date if you are a Member on that date. |
| | You are eligible on the first day as a Member, if you become a Member after the Group Policy Effective Date. |
| Evidence of Insurability | Required for: |
| | a. Late application for Contributory insurance. |
| | b. Reinstatements if required. |
| | c. Members eligible but not insured under the Prior Plan. |

## SCHEDULE OF INSURANCE

**LTD Benefit:**

Class 1:

| | |
|---|---|
| LTD Benefit: | The sum of: |
| | 1. 66 2/3% of the first $1,200 of your Predisability Earnings; and |
| | 2. 33 1/3% of the next $1,200 of your Predisability Earnings, reduced by Deductible Income. |
| Maximum: | $1,200 before reduction by Deductible Income. |
| Minimum: | $100 or 10% of your LTD Benefit before reduction by Deductible Income, whichever is greater. |

All other Classes:

| | |
|---|---|
| LTD Benefit: | The sum of: |
| | 1. 66 2/3% of the first $1,000 of your Predisability Earnings; and |
| | 2. 33 1/3% of the next $1,000 of your Predisability Earnings, reduced by Deductible Income. |
| Maximum: | $1,000 before reduction by Deductible Income. |
| Minimum: | $100 or 10% of your LTD Benefit before reduction by Deductible Income, whichever is greater. |

**Benefit Waiting Period:** 60 days

**Maximum Benefit Period:**

Class 2:

Maximum Benefit Period: One year

Class 3:

Maximum Benefit Period: Determined by your age when Disability begins, as follows:

Age                    Maximum Benefit Period

65 or younger ............. ........... ............ 2 years
66 ................................................. ................. 1 year 9 months

**001009**

| | |
|---|---|
| 67 | 1 year 6 months |
| 68 | 1 year 3 months |
| 69 or older | 1 year |

All other Classes:

Maximum Benefit Period:    Determined by your age when Disability begins, as follows:

Age    Maximum Benefit Period

| | |
|---|---|
| 61 or younger | To age 65, or 3 years 6 months, if longer. |
| 62 | 3 years 6 months |
| 63 | 3 years |
| 64 | 2 years 6 months |
| 65 | 2 years |
| 66 | 1 year 9 months |
| 67 | 1 year 6 months |
| 68 | 1 year 3 months |
| 69 or older | 1 year |

## DISABILITY PROVISIONS

| | |
|---|---|
| Own Occupation Period: | Safety Employees: The first 12 months for which LTD Benefits are paid. |
| | All other Employees: The first 24 months for which LTD Benefits are paid. |
| Any Occupation Period: | From the end of the Own Occupation Period to the end of the Maximum Benefit Period. |
| Partial Disability: | Covered |
| Own Occupation Income Level: | 80% of your Indexed Predisability Earnings. |
| Any Occupation Income Level: | Class 4: 66 2/3% of your Indexed Predisability Earnings. |
| | All other Classes: 80% of your Indexed Predisability Earnings. |

See **Definition of Disability** for more information.

## EXCLUSIONS AND LIMITATIONS

Preexisting Condition Exclusion:    No

See **Exclusions** and **Limitations** for other exclusions and limitations.

## DEDUCTIBLE INCOME

| | |
|---|---|
| Salary Continuation Offset: | Sick pay, vacation pay, pay received during a leave of absence, or other salary continuation paid to you by your Employer. |
| Social Security Offset: | Full offset |

See **Deductible Income** for this and other Deductible Income.

## OTHER PROVISIONS

| | |
|---|---|
| Survivors Benefit Amount: | A lump sum equal to 3 times your LTD Benefit without reduction by Deductible Income. |
| Estate Payment Allowed: | No |
| Leave of Absence Provision: | Insurance is continued during a leave of absence scheduled to last 30 days or less. |
| Sabbatical Leave of Absence: | Insurance is continued during an approved sabbatical leave of absence. |
| Continuity of Coverage: | Yes, for employees on an approved leave of absence. |
| Strike Continuation: | Yes. The Strike Continuation premium percentage is 120% of the Premium Rate. |
| Predisability Earnings based on: | Earnings in effect on your last full day of Active Work (except during a sabbatical leave of absence). |

## PREMIUM CONTRIBUTIONS

Insurance is:                           Noncontributory

00101

## INSURING CLAUSE

If you become Disabled while insured under the Group Policy, we will pay LTD Benefits according to the terms of the Group Policy after we receive satisfactory Proof Of Loss.

LT IC 01

## DEFINITION OF DISABILITY

You are Disabled if you meet one of the following definitions during the period it applies:

A. Own Occupation Definition of Disability;

B. Any Occupation Definition of Disability; or

C. Partial Disability Definition.

Own Occupation means any employment, business, trade, profession, calling or vocation that involves Material Duties of the same general character as your regular and ordinary employment with the Employer. Your Own Occupation is not limited to your job with your Employer.

Material Duties means the essential tasks, functions and operations, and the skills, abilities, knowledge, training and experience, generally required by employers from those engaged in a particular occupation.

A. Own Occupation Definition Of Disability

During the Benefit Waiting Period and the Own Occupation Period you are required to be Disabled only from your Own Occupation.

You are Disabled from your Own Occupation if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of your Own Occupation.

B. Any Occupation Definition Of Disability

During the Any Occupation Period you are required to be Disabled from all occupations.

You are Disabled from all occupations if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform with reasonable continuity the Material Duties of any gainful occupation for which you are reasonably fitted by education, training and experience.

C. Partial Disability Definition

1. During the Benefit Waiting Period and the Own Occupation Period, you are Partially Disabled when you work in your Own Occupation but, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to earn more than the Own Occupation Income Level.

2. During the Any Occupation Period, you are Partially Disabled when you work in an occupation but, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to earn more than the Any Occupation Income Level in that occupation and in all other occupations for which you are reasonably fitted under the Any Occupation Definition of Disability.

You may work in another occupation while you meet the Own Occupation Definition of Disability. If you are Disabled from your Own Occupation, there is no limit on your Work Earnings in another occupation. Your Work Earnings may be Deductible Income. See **Return To Work Incentive** and **Deductible Income**.

Your Any Occupation Period, Any Occupation Income Level, Own Occupation Period, and Own Occupation Income Level are shown in the **Coverage Features**.

**00101**

LT CO 01 X

# RETURN TO WORK INCENTIVE

A.  During The Benefit Waiting Period

You may serve your Benefit Waiting Period while working, if you meet either the Own Occupation Definition of Disability or the Partial Disability Definition.

B.  After The Benefit Waiting Period

You are eligible for the Return to Work Incentive on the first day you work after the Benefit Waiting Period if LTD Benefits are payable on that date. The Return To Work Incentive changes 12 months after that date, as follows:

1.  During the first 12 months, your Work Earnings will be Deductible Income as determined below:

    a.  Determine the amount of your LTD Benefit as if there were no Deductible Income, and add your Work Earnings to that amount.

    b.  Determine 100% of your Indexed Predisability Earnings.

    c.  If a. is greater than b., the difference will be Deductible Income.

2.  After those first 12 months, one half of your Work Earnings will be Deductible Income.

Work Earnings means your gross monthly earnings from work you perform while Disabled, including earnings from your Employer, any other employer, or self-employment.

LT RW.01

# TEMPORARY RECOVERY

You may temporarily recover from your Disability, and then become Disabled again from the same cause or causes, without having to serve a new Benefit Waiting Period. Temporary Recovery means you cease to be Disabled for no longer than the applicable Allowable Period.

A.  Allowable Periods

1.  During the Benefit Waiting Period: a total of 5 days of recovery for every 30 days of the Benefit Waiting Period.

2.  During the Maximum Benefit Period: 180 days for each period of recovery.

B.  Effect Of Temporary Recovery

If your Temporary Recovery does not exceed the Allowable Periods, 1 through 5 below will apply.

1.  The Predisability Earnings used to determine your LTD Benefit will not change.

2.  The period of Temporary Recovery will not count toward your Benefit Waiting Period, your Maximum Benefit Period or your Own Occupation Period.

3.  No LTD Benefits will be payable for the period of Temporary Recovery.

4.  No LTD Benefits will be payable after benefits become payable to you under any other group long term disability insurance policy under which you become insured during your period of Temporary Recovery.

5.  Except as stated above, the provisions of the Group Policy will be applied as if there had been no interruption of your Disability.

LT TR 06

**001013**

# WHEN LTD BENEFITS END

Your LTD Benefits end automatically on the earliest of 1 through 4 below.

1. The date you are no longer Disabled.

2. The date your Maximum Benefit Period ends.

3. The date you die.

4. The date benefits become payable under any other group long term disability insurance policy under which you become insured during a period of Temporary Recovery.

LT.BE 01

# PREDISABILITY EARNINGS

Your Predisability Earnings will be based on your earnings in effect on your last full day of Active Work unless a different date applies (see the **Coverage Features**). Any subsequent change in your earnings will not affect your Predisability Earnings.

Predisability Earnings means your monthly rate of earnings from your Employer, including:

1. Contributions you make through a salary reduction agreement with your Employer to:

   a. An Internal Revenue Code (IRC) Section 401(k), 403(b), 408(k), or 457 deferred compensation arrangement; or

   b. An executive nonqualified deferred compensation arrangement.

2. Shift differential pay.

3. Amounts contributed to your fringe benefits according to a salary reduction agreement under an IRC Section 125 plan.

Predisability Earnings does not include:

1. Bonuses.

2. Commissions.

3. Overtime pay.

4. Your Employer's contributions on your behalf to any deferred compensation arrangement or pension plan.

5. Any other extra compensation.

If you are paid on an annual contract basis, your monthly rate of earnings is one-twelfth (1/12th) of your annual contract salary.

If you are paid hourly, your monthly rate of earnings is based on your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per month, but not more than 173 hours. If you do not have regular work hours, your monthly rate of earnings is based on the average number of hours you worked per month during the preceding 12 calendar months (or during your period of employment if less than 12 months), but not more than 173 hours.

LT.PD 16

001014

# DEDUCTIBLE INCOME

Subject to **Exceptions To Deductible Income,** Deductible Income means:

1.  Salary continuation as shown in the **Coverage Features.**

2.  Your Work Earnings, as described in the **Return To Work Incentive.**

3.  Any amount you receive or are eligible to receive because of your disability under any workers' compensation law or similar law, including amounts for partial or total disability, whether permanent, temporary, or vocational.

4.  Any amount you, your spouse, or your children under age 18 receive or are eligible to receive because of your disability or retirement under:

    a.  The Federal Social Security Act;

    b.  The Canada Pension Plan;

    c.  The Quebec Pension Plan; or

    d.  Any similar plan or act.

    Benefits your spouse or children receive or are eligible to receive because of your disability are Deductible Income regardless of marital status, custody, or place of residence.

    The **Coverage Features** states which one of the following options applies to your Social Security benefits.

    a.  Full offset: Both the primary benefit (the benefit awarded to you) and dependents benefits are Deductible Income.

    b.  Primary offset: Primary benefits are Deductible Income, but dependents benefits are not.

    c.  Partial dependents offset: Primary benefits are Deductible Income. Dependents benefits are Deductible Income as determined below:

        (1) Determine the amount of your LTD Benefit as if there were no Deductible Income, and add your dependents benefits to that amount.

        (2) Multiply your Predisability Earnings by the dependents limit.

        (3) If (1) is greater than (2), the difference will be Deductible Income.

5.  Any amount you receive or are eligible to receive because of your disability under any state disability income benefit law or similar law.

6.  Any amount you receive or are eligible to receive because of your disability under any other group insurance coverage.

7.  Any disability or retirement benefits you receive or are eligible to receive under your Employer's retirement plan, including a public employee retirement system, a state teacher retirement system, and a plan arranged and maintained by a union or employee association for the benefit of its members.

    If any of these plans has two or more payment options, the option which comes closest to providing you a monthly income for life with no survivors benefit will be Deductible Income, even if you choose a different option.

8.  Any amount you receive by compromise, settlement, or other method as a result of a claim for any of the above, whether disputed or undisputed.

LT.DI.02X

## EXCEPTIONS TO DEDUCTIBLE INCOME

Deductible Income does not include:

1. Any cost of living increase in any Deductible Income other than Work Earnings, if the increase becomes effective while you are Disabled and while you are eligible for the Deductible Income.

2. Reimbursement for hospital, medical, or surgical expense.

3. Reasonable attorneys fees incurred in connection with a claim for Deductible Income.

4. Benefits from any individual disability insurance policy.

5. California Workers' Compensation benefits for permanent total or permanent partial disability.

6. Early retirement benefits under the Federal Social Security Act which are not actually received.

7. Group credit or mortgage disability insurance benefits.

8. Accelerated death benefits paid under a life insurance policy.

9. Benefits from a through h below:

   a. Profit sharing plan.

   b. Thrift or savings plan.

   c. Deferred compensation plan.

   d. Plan under IRC Section 401(k), 408(k), or 457.

   e. Individual Retirement Account (IRA).

   f. Tax Sheltered Annuity (TSA) under IRC Section 403(b).

   g. Stock ownership plan.

   h. Keogh (HR-10) plan.

LT.ED.06

## COORDINATION OF BENEFITS

Your LTD Benefit is reduced by benefits payable under any other group disability income protection policy. If the other group policy has a disability benefit which is reduced by all or part of your LTD Benefit under this Group Policy, then the following formula will be used to compute your LTD Benefit:

LTD Benefit = A divided by (A + B), times C

In this formula,

A = The LTD Benefit which would be payable by us if you were not insured under the other group policy.

B = The disability benefit which would be payable by the other insurer if you were not insured under this Group Policy.

C = A or B, whichever is higher.

The resulting LTD Benefit is our pro rata share of the higher of the benefits which would be payable if you were not insured under both group policies. If necessary, the same principles will be applied to coordinate benefits among three or more group disability income protection policies.

LT CB 01

001018

# RULES FOR DEDUCTIBLE INCOME

A.  Monthly Equivalents

Each month we will determine your LTD Benefit using the Deductible Income for the same monthly period, even if you actually receive the Deductible Income in another month.

If you are paid Deductible Income in a lump sum or by a method other than monthly, we will determine your LTD Benefit using a prorated amount. We will use the period of time to which the Deductible Income applies. If no period of time is stated, we will use a reasonable one.

B.  Your Duty To Pursue Deductible Income

You must pursue Deductible Income for which you may be eligible. We may ask for written documentation of your pursuit of Deductible Income. You must provide it within 60 days after we mail you our request. Otherwise, we may reduce your LTD Benefits by the amount we estimate you would be eligible to receive upon proper pursuit of the Deductible Income.

C.  Pending Deductible Income

We will not deduct pending Deductible Income until it becomes payable. You must notify us of the amount of the Deductible Income when it is approved. You must repay us for the resulting overpayment of your claim.

D.  Overpayment Of Claim

We will notify you of the amount of any overpayment of your claim under any group disability insurance policy issued by us. You must immediately repay us. You will not receive any LTD Benefits until we have been repaid in full. In the meantime, any LTD Benefits paid, including the Minimum LTD Benefit, will be applied to reduce the amount of the overpayment. We may charge you interest at the legal rate for any overpayment which is not repaid within 30 days after we first mail you notice of the amount of the overpayment.

LT.RU.01

# SURVIVORS BENEFIT

If you die while LTD Benefits are payable, we will pay a Survivors Benefit according to 1 through 4 below.

1.  The amount of the Survivors Benefit is shown in the **Coverage Features**.

2.  The Survivors Benefit will first be applied to reduce any overpayment of your claim.

3.  The Survivors Benefit will be paid at our option to any one or more of the following:

    a.  Your surviving spouse;

    b.  Your surviving unmarried children under age 25; or

    c.  Any person providing the care and support of any of them.

4.  If you are not survived by a spouse or an unmarried child under age 25, no Survivors Benefit will be paid unless payment to your estate is allowed as stated in the **Coverage Features**.

LT.SB.01

001017

# WAIVER OF PREMIUM

Your insurance will continue without payment of premiums while LTD Benefits are payable.

LT.WP.01

# BENEFITS AFTER INSURANCE ENDS OR IS CHANGED

Your right to receive LTD Benefits for a period of Disability which begins while you are insured will not be affected by:

1.  Termination of the Group Policy after you become Disabled;

2.  Termination of your insurance while the Group Policy remains in force; or

3.  Any amendment to the Group Policy approved after the date you become Disabled.

LT.BA.01

# EFFECT OF NEW DISABILITY

If a period of Disability is extended by a new cause while LTD Benefits are payable, LTD Benefits will continue while you remain Disabled. However, 1 and 2 apply.

1.  LTD Benefits will not continue beyond the end of the original Maximum Benefit Period.

2.  All provisions of the Group Policy, including the **Exclusions** and **Limitations** sections, will apply to the new cause of Disability.

LT.ND.01

# EXCLUSIONS

A.  War

You are not covered for a Disability caused or contributed to by War or any act of War. War means declared or undeclared war, whether civil or international, and any substantial armed conflict between organized forces of a military nature.

B.  Intentionally Self-Inflicted Injury

You are not covered for a Disability caused or contributed to by an intentionally self-inflicted injury, while sane or insane.

LT.EX.01X

# LIMITATIONS

A.  Care Of A Physician

You must be under the ongoing care of a Physician during the Benefit Waiting Period. No LTD Benefits will be paid for any period of Disability when you are not under the ongoing care of a Physician.

**001018**

B. Mental Disorder

Payment of LTD Benefits is limited to 24 months for each period of continuous Disability caused or contributed to by a Mental Disorder. However, if you are confined in a Hospital at the end of the 24 months, this limitation will not apply while you are continuously confined.

Mental Disorder means any mental, emotional, behavioral, psychological, personality, cognitive, mood or stress- related abnormality, disorder, disturbance, dysfunction or syndrome, regardless of cause, including any biological or biochemical disorder or imbalance of the brain. Mental Disorder includes, but is not limited to, bipolar affective disorder, organic brain syndrome, schizophrenia, psychotic illness, manic depressive illness, depression and depressive disorders, or anxiety and anxiety disorders.

Hospital means a legally operated hospital providing full- time medical care and treatment under the direction of a full-time staff of licensed Physicians. Rest homes, nursing homes, convalescent homes, homes for the aged, and facilities primarily affording custodial, educational, or rehabilitative care are not Hospitals.

LT.LM.01X

## CLAIMS

A.  Filing A Claim

Claims should be filed on our forms. If you do not receive our forms within 15 days after you ask for them, you may submit your claim in a letter to us. The letter should include the date disability began, and the cause and nature of the disability.

B.  Time Limits On Filing Proof Of Loss

You must give us Proof Of Loss within 90 days after the end of the Benefit Waiting Period. If you cannot do so, you must give it to us as soon as reasonably possible, but not later than one year after that 90 day period. If Proof Of Loss is filed outside these time limits, your claim will be denied. These limits will not apply while you lack legal capacity.

C.  Proof Of Loss

Proof Of Loss means written proof that you are Disabled and entitled to LTD Benefits. Proof Of Loss must be provided at your expense.

D.  Documentation

At your expense, you must submit completed claims statements, your signed authorization for us to obtain information, and any other items we may reasonably require in support of your claim. If you do not provide the documentation within 60 days after we mail you our request, your claim may be denied.

E.  Investigation Of Claim

We may investigate your claim at any time.

At our expense, we may have you examined at reasonable intervals by specialists of our choice. We may deny or suspend LTD Benefits if you fail to attend an examination or cooperate with the examiner.

F.  Time Of Payment

We will pay LTD Benefits within 60 days after you satisfy Proof Of Loss.

LTD Benefits will be paid to you at the end of each month you qualify for them. LTD Benefits remaining unpaid at your death will be paid to the person(s) receiving the Survivor Benefit. If no Survivor Benefit is paid, the unpaid LTD Benefits will be paid to your estate.

G.  Notice Of Decision On Claim

You will receive a written decision on your claim within a reasonable time after we receive your claim.

001019

If you do not receive our decision within 90 days after we receive your claim, you will have an immediate right to request a review as if your claim had been denied.

If we deny any part of your claim, you will receive a written notice of denial containing:

1. The reasons for our decision;

2. Reference to the parts of the Group Policy on which our decision is based;

3. A description of any additional information needed to support your claim; and

4. Information concerning your right to a review of our decision.

H. Review Procedure

You must request in writing a review of a denial of all or part of your claim within 60 days after you receive notice of the denial.

When you request a review, you may send us written comments or other items to support your claim. You may review any non-privileged information that relates to your request for review.

We will review your claim promptly after we receive your request. We will send you a notice of our decision within 60 days after we receive your request, or within 120 days if special circumstances require an extension. We will state the reasons for our decision and refer you to the relevant parts of the Group Policy.

I. Assignment

The rights and benefits under the Group Policy are not assignable.

LT.CL.01

## ALLOCATION OF AUTHORITY

Except for those functions which the Group Policy specifically reserves to the Policyowner, we have full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy.

Our authority includes, but is not limited to:

1. The right to resolve all matters when a review has been requested;

2. The right to establish and enforce rules and procedures for the administration of the Group Policy and any claim under it;

3. The right to determine:

   a. Eligibility for insurance;

   b. Entitlement to benefits;

   c. Amount of benefits payable;

   d. Sufficiency and the amount of information we may reasonably require to determine a., b., or c., above.

Subject to the review procedures of the Group Policy, any decision we make in the exercise of our authority is conclusive and binding.

LT.AL.01

0010.0

# TIME LIMITS ON LEGAL ACTIONS

No action at law or in equity may be brought until 60 days after you have given us Proof Of Loss. No such action may be brought more than three years after the earlier of:

1. The date we receive Proof Of Loss; and

2. The end of the period within which Proof Of Loss is required to be given.

<div align="right">LT.TL.01</div>

# INCONTESTABILITY PROVISIONS

A. Incontestability Of Member's Insurance

Any statement you make to obtain insurance is a representation and not a warranty.

No misrepresentation by you will be used to reduce or deny your claim or contest the validity of your insurance unless:

1. Your insurance would not have been approved if we had known the truth; and

2. We have given you a copy of a written instrument signed by you which contains your misrepresentation.

After your insurance has been in effect for two years, we will not use a misrepresentation by you to reduce or deny your claim, unless it was a fraudulent misrepresentation.

B. Incontestability Of Group Policy

Any statement made by the Policyowner or Employer to obtain the Group Policy is a representation and not a warranty.

No misrepresentation by the Policyowner or Employer will be used to deny a claim or to deny the validity of the Group Policy unless:

1. The Group Policy would not have been issued if we had known the truth; and

2. We have given the Policyowner or Employer a copy of a written instrument signed by the Policyowner or Employer which contains the misrepresentation.

The validity of the Group Policy will not be contested after it has been in force for two years, except for nonpayment of premiums or fraudulent misrepresentations.

<div align="right">LT IN.01</div>

# CONTINUITY OF COVERAGE

If you were insured under the Prior Plan on February 28, 1993, you are on an approved leave of absence on March 1, 1993 and you are not Disabled, the Active Work requirement will not apply to you on March 1, 1993.

<div align="right">LT.CC.10X</div>

# WHEN YOUR INSURANCE BECOMES EFFECTIVE

The **Coverage Features** states whether your insurance is Contributory or Noncontributory.

001021

Printed 9/9/02  Revised 8/18/98                    - 14 -                                614371-A

A. Noncontributory Insurance

Subject to the **Active Work Provisions**, your Noncontributory insurance becomes effective on the date you become eligible.

B. Contributory Insurance

You must apply in writing for Contributory insurance and agree to pay premiums. Subject to the **Active Work Provisions**, your insurance becomes effective on:

1. The date you become eligible, if you apply on or before that date;

2. The date you apply, if you apply within 31 days after you become eligible; or

3. The date we approve your Evidence Of Insurability, if you apply more than 31 days after you become eligible (late application).

C. Insurance Subject To Evidence Of Insurability

Insurance subject to Evidence Of Insurability becomes effective on the date we approve Evidence Of Insurability.

D. Takeover Provisions

1. If you were insured under the Prior Plan on the day before the effective date of your Employer's coverage under the Group Policy, your Eligibility Waiting Period is waived on the effective date of your Employer's coverage under the Group Policy.

2. You must submit satisfactory Evidence Of Insurability to become insured for insurance if you were eligible for insurance under the Prior Plan for more than 31 days but were not insured.

LT.EF.01

## ACTIVE WORK PROVISIONS

A. Active Work Requirement

If you are incapable of Active Work because of Physical Disease, Injury, Pregnancy or Mental Disorder on the day before the scheduled effective date of your insurance, your insurance will not become effective until the day after you complete one full day of Active Work as an eligible Member.

Active Work and Actively At Work mean performing the Material Duties of your Own Occupation at your Employer's usual place of business.

You will also meet the Active Work requirement if:

1. You were absent from Active Work because of a regularly scheduled day off, holiday, or vacation day;

2. You were Actively At Work on your last scheduled work day before the date of your absence; and

3. You were capable of Active Work on the day before the scheduled effective date of your insurance.

B. Changes In Insurance

This Active Work requirement also applies to any increase in your insurance. However, if you return to Active Work during a period of Disability or Temporary Recovery (see **Temporary Recovery**), you will not qualify for any change in insurance caused by a change in:

1. Your status as a member of a class;

2. The rate of earnings used to determine your Predisability Earnings; or

3. The terms of the Group Policy.

0010

LT AW 05

## WHEN YOUR INSURANCE ENDS

Your insurance ends automatically on the earliest of:

1. The date the last period ends for which you made a premium contribution, if your insurance is Contributory.

2. The date the Group Policy terminates.

3. The date your employment terminates.

4. The date you cease to be a Member. However, if you cease to be a Member because you are not working the required minimum number of hours, your insurance will be continued during the following periods, unless it ends under 1 through 3 above.

   a. While your Employer is paying you at least the same Predisability Earnings paid to you immediately before you ceased to be a Member.

   b. During the Benefit Waiting Period and while LTD Benefits are payable.

   c. During an approved sabbatical leave of absence. However, if you become Disabled, Predisability Earnings during the remainder of the leave will be based on your monthly rate of earnings in effect during the sabbatical leave. Thereafter, Predisability Earnings will be based on your monthly rate of earnings in effect on the date you were scheduled to return to work for the Employer.

   d. During a leave of absence if continuation of your insurance under the Group Policy is required by the state-mandated family or medical leave act or law.

   e. During any other leave of absence approved by your Employer in advance and in writing and scheduled to last the period shown in the **Coverage Features.**

LT EN.16X

## CONTINUED INSURANCE DURING SCHOOL VACATIONS

If you cease to be a Member because of a school break or vacation, your insurance will be continued during that period.

LT SV.01

## STRIKE CONTINUATION

Insurance may be continued for up to 6 months when you cease to be a Member because you are working less than the minimum number of hours due to a strike, lockout or other general work stoppage caused by a labor dispute. Rules 1 through 4 below will apply.

1. When your compensation is suspended or terminated because of a work stoppage, your Employer will immediately notify you in writing of your rights under this provision. Your Employer will mail the notice to you at your last address on record with the Employer.

2. You must pay the entire premium for your Insurance, including the Employer's share, if any, to your Employer on or before each Premium Due Date.

001023

3. The premiums for your Insurance during the work stoppage will equal a percentage of the premium rate in effect on the date the work stoppage began (see **Coverage Features**). We may change Premium Rates during the work stoppage according to the terms of the Group Policy.

4. Insurance continued under this provision will end on the earliest of:

   a. Any Premium Due Date if you fail to make the required premium contribution to your Employer on or before that date.

   b. The date you have been absent from Active Work for 6 months.

   c. On the date you begin full-time employment with another employer.

   d. At our option, on any Premium Due Date if less than 75% of the Members eligible to continue Insurance under this provision make the required premium payment to the Employer.

LT.SK 02

## REINSTATEMENT OF INSURANCE

If your insurance ends, you may become insured again as a new Member. However, the following will apply.

1. If your insurance ends because you cease to be a Member, and if you become a Member again within 90 days, the Eligibility Waiting Period will be waived.

2. If your insurance ends because you fail to make a required premium contribution, you must provide Evidence of Insurability to become insured again.

3. If your insurance ends because you are on a state-mandated family or medical leave of absence, and you become a Member again immediately following the period allowed, your insurance will be reinstated pursuant to the state-mandated family or medical leave act or law.

LT.RE.01X

## DEFINITIONS

Benefit Waiting Period means the period you must be continuously Disabled before LTD Benefits become payable. No LTD Benefits are payable for the Benefit Waiting Period. See **Coverage Features**.

Contributory means you pay all or part of the premium for your insurance.

CPI-W means the Consumer Price Index for Urban Wage Earners and Clerical Workers published by the United States Department of Labor. If the CPI-W is discontinued or changed, we may use a comparable index. Where required, we will obtain prior state approval of the new index.

Eligibility Waiting Period means the period you must be a Member before you become eligible for insurance. See **Coverage Features**.

Providing Evidence Of Insurability means you must:

1. Complete and sign our medical history statement;

2. Sign our form authorizing us to obtain information about your health;

3. Undergo a physical examination, if required by us, which may include blood testing; and

4. At your expense, provide any additional information about your insurability that we may reasonably require.

Group Policy means the group long term disability insurance policy issued by us to the Policyowner and identified by the Group Policy Number.

001024

Indexed Predisability Earnings means your Predisability Earnings adjusted by the rate of increase in the CPI-W. During your first year of Disability, your Indexed Predisability Earnings are the same as your Predisability Earnings. Thereafter, your Indexed Predisability Earnings are determined on each anniversary of your Disability by increasing the previous year's Indexed Predisability Earnings by the rate of increase in the CPI-W for the prior calendar year. The maximum adjustment in any year is 10%. Your Indexed Predisability Earnings will not decrease, even if the CPI-W decreases.

Injury means an injury to your body.

LTD Benefit means the monthly benefit payable to you under the terms of the Group Policy.

Maximum Benefit Period means the longest period for which LTD Benefits are payable for any one period of continuous Disability, whether from one or more causes. It begins at the end of the Benefit Waiting Period. No LTD Benefits are payable after the end of the Maximum Benefit Period, even if you are still Disabled. See **Coverage Features**.

Noncontributory means the Policyowner or Employer pays the entire premium for your insurance.

Physical Disease means a physical disease entity or process that produces structural or functional changes in your body as diagnosed by a Physician.

Physician means a licensed medical professional, other than yourself, acting within the scope of the license.

Pregnancy means your pregnancy, childbirth, or related medical conditions, including complications of pregnancy.

Prior Plan means your Employer's group long term disability insurance plan in effect on the day before the effective date of your Employer's coverage under the Group Policy and which is replaced by the Group Policy.

LT.OF 06

001025

EXH. $\mathcal{B}$

CH-140

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| ADDRESS WHERE YOU WANT MAIL SENT: Leandro H. Duran (Bar # 121847) DURAN, OCHOA, & ICAZA, LLP 1035 Carleton St. Berkeley, California 94710 | |

TELEPHONE NO. *(Optional)*: (510) 540-1046     FAX NO. *(Optional)*: (510) 540- 103

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*: JOSE DUARTE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA

STREET ADDRESS: 225 Fallon St.,

MAILING ADDRESS:

CITY AND ZIP CODE: Oakland 94612

BRANCH NAME: Rene C. Davidson

PLAINTIFF: JOSE DUARTE

DEFENDANT: VUYO MBULI

| ORDER AFTER HEARING ON PETITION FOR INJUNCTION PROHIBITING HARASSMENT (CLETS) | CASE NUMBER: RG-03-132118 |
|---|---|

1. THIS ORDER, EXCEPT FOR AWARD OF ATTORNEY FEES AND COSTS, SHALL EXPIRE AT MIDNIGHT ON

   *(date)*: 1-9-07     IF NO DATE IS PRESENT, THIS ORDER EXPIRES THREE YEARS FROM THE DATE OF ISSUANCE.

2. This proceeding came on for hearing as follows:

   | Date: Jan. 9, 2004 | Time: 10:00 A.M. | Dept.: 4 | Room: |
   |---|---|---|---|

3. Judicial officer *(name)*:     ☐ Temporary judge

4. a. ☒ Plaintiff present          ☒ Attorney present *(name)*: RAFAEL A. ICAZA
   b. ☐ Defendant present          ☐ Attorney present *(name)*:

THE COURT FINDS

5. a. The defendant is *(name)*: VUYO MBULI

   Sex: ☒ M  ☐ F  Ht.:5'10" Wt.: 180  Hair color: BLK  Eye color: BLK  Race: Black  Age: 17  Date of birth: _____

b. The protected person is *(name)*: JOSE DUARTE

   Sex: ☒ M  ☐ F  Date of birth: 10/8/65

c. Protected family or household members who reside with the protected person are:
   (1) *(Name)*: ESTEBAN MENDOZA

   Sex: ☒ M ☐ F  Date of birth: _____

   (2) *(Name)*:

   Sex: ☐ M ☐ F  Date of birth: _____

   (3) *(Name)*:

   Sex: ☐ M ☐ F  Date of birth: _____     ☐ Continued on Attachment 5c.

6. After the hearing on the petition, IT IS ORDERED THAT DEFENDANT
   a. shall not contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any messages to, follow, stalk, destroy the personal property of, disturb the peace of, keep under surveillance, or block movements in public places or thoroughfares of ☒ the person seeking the order  ☒ the other protected persons listed in item 5c.

002001

Form Approved for Optional Use
Judicial Council of California
ORDER AFTER HEARING ON PETITION FOR
Code of Civil Procedure, § 527.6;

PLAINTIFF *(Name):* JOSE DUARTE, et al.

DEFENDANT *(Name):* DEMARIO FREELAND

CASE NUMBER

6. b. ☒ shall stay at least *(specify):* _____200_____ yards away from the following protected persons and places:

(1) ☒ Person seeking the order
(2) ☒ The other protected persons listed in item 5c
(3) ☒ Residence of person seeking the order
(4) ☒ Place of work of person seeking the order

(5) ☐ The children's school or place of child care
(6) ☒ The protected persons' vehicles
(7) ☐ Other *(specify):*

7. ☐ Other orders *(specify):*

8. MANDATORY FIREARM RELINQUISHMENT
The restrained person must surrender to local law enforcement or sell to a licensed gun dealer any firearm in or subject to his or her immediate possession or control within
a. ☒ 24 hours after issuance of this order (if restrained person is present at hearing).
b. ☒ 24 hours after service of this order (if restrained person is not present at hearing).

002002

PLAINTIFF *(Name):* JOSE DUARTE, et al.

DEFENDANT *(Name):* DEMARIO FREELAND

CASE NUMBER:

6. b. [X] shall stay at least *(specify):* _____ 200 _____ yards away from the following protected persons and places:

   (1) [X] Person seeking the order
   (2) [X] The other protected persons listed in item 5c
   (3) [X] Residence of person seeking the order
   (4) [X] Place of work of person seeking the order

   (5) [ ] The children's school or place of child care
   (6) [X] The protected persons' vehicles
   (7) [ ] Other *(specify):*

7. [ ] Other orders *(specify):*

8. **MANDATORY FIREARM RELINQUISHMENT**
The restrained person must surrender to local law enforcement or sell to a licensed gun dealer any firearm in or subject to his or her immediate possession or control within
   a. [X] 24 hours after issuance of this order (if restrained person is present at hearing).
   b. [X] 24 hours after service of this order (if restrained person is not present at hearing).
   c. [ ] other *(specify):*

The restrained person shall file a receipt with the court showing compliance with this order within 72 hours of receiving this order.

9. By the close of business on the date of this order, a copy of this order and any proof of service shall be given to the law enforcement agencies listed below as follows:
   a. [X] plaintiff shall deliver.
   b. [ ] plaintiff's attorney shall deliver.
   c. [ ] the clerk of the court shall deliver.

| Law enforcement agency | Address |
| --- | --- |
| Oakland Police Department | 455 7th St. Oakland, CA 94607 |
| Alameda County Sheriff's Department | 1401 Lakeside Dr, Oakland, CA 94612 |
| BART Police | 800 Madison St, Oakland, CA 94607 |

Date:    JAN 0 9 2003

**JULIE CONGER**
JUDICIAL OFFICER'S SIGNATURE

This order is effective when made. It is enforceable anywhere in all 50 states, the District of Columbia, all tribal lands, and all U.S. territories and shall be enforced as if it were an order of that jurisdiction by any law enforcement agency that has received the order, is shown a copy of the order, or has verified its existence on the California Law Enforcement Telecommunications System (CLETS). If proof of service on the restrained person has not been received, and the restrained person was not present at the court hearing, the law enforcement agency shall advise the restrained person of the terms of the order and then shall enforce it. Violations of this restraining order are subject to criminal penalties.

### NOTICE REGARDING FIREARMS

Any person subject to a restraining order is prohibited from owning, possessing, purchasing or attempting to purchase, receiving or attempting to receive, or otherwise obtaining a firearm. Such conduct is subject to a $1,000 fine and imprisonment.

| [SEAL] | **CLERK'S CERTIFICATE** |
| --- | --- |
| | I certify that the foregoing *Order After Hearing on Petition for Injunction Prohibiting Harassment (CLETS)* is a true and correct copy of the original on file in the court. |
| | Date: 'JAN 0 9 2003    Clerk, by _____ , Deputy |

002003



\*2562226\*

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
ESS WHERE YOU WANT MAIL SENT: Leandro H. Duran (Bar # 121847)
JRAN, OCHOA, & ICAZA, LLP
1035 Carleton St., Berkeley, California 94710

TELEPHONE NO. *(Optional):* (510) 540-1046
E-MAIL ADDRESS *(Optional):*                    FAX NO. *(Optional):* (510) 540-1036
ATTORNEY FOR *(Name):* JOSE DUARTE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon St.,
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: Rene C. Davidson

PLAINTIFF: JOSE DUARTE

DEFENDANT: VUYO MBULI

**FOR COURT USE ONLY**

**ENDORSED
FILED
ALAMEDA COUNTY**

DEC 1 6 2003

**CLERK OF THE SUPERIOR COURT**
By                    Deputy

A. JACKSON

| ORDER TO SHOW CAUSE (Harassment) [X] and Temporary Restraining Order (CLETS) | CASE NUMBER: RG03132118 |
|---|---|

**THIS ORDER SHALL EXPIRE AT THE DATE AND TIME OF THE HEARING SHOWN IN THE BOX BELOW UNLESS EXTENDED BY THE COURT.**

1. To defendant *(name):* VUYO MBULI
2. A court hearing has been set at the time and place indicated below:

| Date: JAN. 9, 2004 | Time: 10:00am | Dept.: 4 | Room: |
|---|---|---|---|

*You have the right to attend the court hearing, with or without an attorney, to give any legal reason why the orders requested in the attached petition should not be granted. NOTICE: If you do not attend the hearing, the court may grant the requested orders without further notice to you. Restraining Orders may last up to three (3) years.*

## TEMPORARY RESTRAINING ORDER

**THE COURT FINDS**

4. a. The defendant is *(name):* VUYO MBULI

    Sex: [X] M [ ] F  HL: 5'10" Wt: 180  Hair color: blk  Eye color: blk  Race: Black  Age: 17  Date of birth: _____

b. The protected person is *(name):* JOSE DUARTE

    Sex: [X] M [ ] F  Date of birth: 10/8/1965

c. Protected family or household members who reside with the protected person:
   (1) *(Name):* ESTEBAN MENDOZA, 37, PLAINTIFF'S ROOMATE/TENANT

    Sex: [X] M [ ] F  Date of birth: _____

   (2) *(Name):*

    Sex: [ ] M [ ] F  Date of birth: _____

   (3) *(Name):*

    Sex: [ ] M [ ] F  Date of birth: _____    [ ] Continued on Attachment 4c.

.002004

ORDER TO SHOW CAUSE AND

| PLAINTIFF *(Name):* JOSE DUARTE, et al. | CASE NUMBER: |
|---|---|

DEFENDANT *(Name):* VUYO MBULI

## UNTIL THE TIME OF HEARING, IT IS ORDERED

5. The restrained person
   a. [X] **shall not contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any messages to, follow, stalk, destroy the personal property of, disturb the peace of, keep under surveillance, or block movements in public places or thoroughfares of** [X] **the person seeking the order** [X] **the other protected persons listed in item 4c.**

   b. [X] **shall stay at least** *(specify):* ___200___ **yards away from the following protected persons and places:**
      *(The addresses of these places are optional and you do not have to provide them.)*
      (1) [X] Person seeking the order
      (2) [X] The other persons listed in item 4c
      (3) [X] Residence of person seeking the order
      (4) [X] Place of work of person seeking the order
      (5) [ ] The children's school or place of child care
      (6) [ ] The protected persons' vehicles
      (7) [ ] Other *(specify):*

6. [ ] OTHER ORDERS *(specify):*

7. **MANDATORY FIREARM RELINQUISHMENT**
   **The restrained person must surrender to local law enforcement or sell to a licensed gun dealer any firearm in or subject to his or her immediate possession or control within**
   a. [X] **24 hours after issuance of this order (if restrained person is present at hearing).**
   b. [X] **24 hours after service of this order (if restrained person is not present at hearing).**
   c. [ ] **other** *(specify):*

   **The restrained person shall file a receipt with the court showing compliance with this order within 72 hours of receiving this order.**

8. By the close of business on the date of this order, a copy of this order and any proof of service shall be given to the law enforcement agencies listed below as follows:
   a. [X] plaintiff shall deliver.
   b. [ ] plaintiff's attorney shall deliver.
   c. [ ] the clerk of the court shall deliver.

| Law enforcement agency | Address |
|---|---|
| Oakland Police Department | 455 7th St. Oakland, CA 94607 |
| Alameda Co. Sheriff's Department | 1401 Lakeside Dr, Oakland, CA 94612 |
| BART Police | 800 Madison St, Oakland, CA 94607 |

002065

| PLAINTIFF *(Name)*: JOSE DUARTE, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name)*: VUYO MBULI | |

9.  a. ☐  Application for an order shortening time is granted and the documents listed in b shall be personally served on the defendant no fewer than *(specify number)*: _____ days before the time set for hearing.

    b. ☐  The following documents shall be personally served on defendant:
        (1) *Order to Show Cause and Temporary Restraining Order (Harassment)* (form CH-120)
        (2) *Petition for Injunction Prohibiting Harassment* (form CH-100)
        (3) *Blank Response to Petition for Injunction Prohibiting Harassment* (form CH-110)
        (4) *Instructions for Lawsuits to Prohibit Harassment* (form CH-150)
        (5) *Other (specify):*

10. ☐  Filing fees for the filing of this action are duly waived.

Date: 12/16/03

_____
JUDICIAL OFFICER

---

This order is effective when made. It is enforceable anywhere in all 50 states, the District of Columbia, all tribal lands, and all U.S. territories and shall be enforced as if it were an order of that jurisdiction by any law enforcement agency that has received the order, is shown a copy of the order, or has verified its existence on the California Law Enforcement Telecommunications System (CLETS). If proof of service on the restrained person has not been received, and the restrained person was not present at the court hearing, the law enforcement agency shall advise the restrained person of the terms of the order and then shall enforce it. Violations of this restraining order are subject to criminal penalties.

---

**NOTICE REGARDING FIREARMS**

**Any person subject to a restraining order is prohibited from owning, possessing, purchasing or attempting to purchase, receiving or attempting to receive, or otherwise obtaining a firearm. Such conduct is subject to a $1,000 fine and imprisonment.**

---

| [SEAL] | **CLERK'S CERTIFICATE** |
|---|---|
| | I certify that the foregoing *Order to Show Cause and Temporary Restraining Order (CLETS)* is a true and correct copy of the original on file in the court. |
| | Date: _____   Clerk, by _____, Deputy |

**002006**

ORDER TO SHOW CAUSE AND


*2562230*
....0

| | |
|---|---|
| E OF PARTY OR ATTORNEY *(and state bar number if attorney):* Leandro H. Duran (Bar # 121847) | **FOR COURT USE ONLY** |
| (ESS WHERE YOU WANT MAIL SENT:<br>DURAN, OCHOA, & ICAZA, LLP<br>1035 Carleton St.<br>Berkeley, California 94710 | F I L E D<br>ALAMEDA COUNTY<br>DEC 1 6 2003 |
| TELEPHONE NUMBER *(Optional):* (510) 540-1046    FAX NUMBER *(Optional):* (510) 540-1036 | |
| E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* JOSE DUARTE | CLERK OF THE SUPERIOR COURT |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA<br>STREET ADDRESS: 225 Fallon St.,<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: Oakland 94612<br>BRANCH NAME: Rene C. Davidson | By [signature]    Deputy |
| PLAINTIFF: JOSE DUARTE | |
| DEFENDANT: VUYO MBULI | |
| **PETITION FOR INJUNCTION PROHIBITING HARASSMENT**<br>[X]  **Application for Temporary Restraining Order** | **CASE NUMBER:**<br>RG03132118 |

*(THIS IS NOT AN ORDER)*

*Read the* Instructions for Lawsuits to Prohibit Harassment *(form CH-150) before completing this form.*

1. Plaintiff *(name each):* JOSE DUARTE

   [X]  OTHER PERSONS TO BE PROTECTED *(List names and ages of all family or household members who reside with plaintiff and are to be protected by the requested orders and their relationship to plaintiff:*

   | Name | Age | Relationship to plaintiff |
   |---|---|---|
   | ESTEBAN MENDOZA | 37 | TENANT/ROOMATE |

3. a. Defendant *(name):* VUYO MBULI

   Sex: [X] M  [ ] F  Ht.: Attach Wt.: 180 Hair color: bl Eye color: BLK Race: Black Age: 17 Date of birth: unk

   b. Defendant's residence address *(if known):*    c. Defendant's work address and name of business *(if known):*

   9225 or 9229 Olive St, Oakland, CA 94603

4. This action is filed in this county because
   a. [X]  defendant resides in this county.
   b. [X]  defendant has caused physical or emotional injury to plaintiff in this county.
   c. [ ]  other *(specify):*

5. Describe how plaintiff knows defendant (e.g., landlord/tenant, neighbor, etc.):
   Plaintiff is a teacher at the School of Social Justice, 8350 Hillside, Oakland, CA 94606, and defendant is student enrolled in Plaintiff's class.

6. Defendant has
   a. [X]  threatened to commit acts of violence against plaintiff as described in item 10.
   b. [X]  committed acts of violence against plaintiff as described in item 10.
   c. [ ]  not threatened to commit and has not committed any acts of violence.

   002007

Page 1 of 4

PLAINTIFF (Name): JOSE DUAR..

FENDANT (Name): VUYO MBULI

SE NUMBER:

7: Defendant has committed a series of acts that seriously alarm, annoy, or harass plaintiff as described in item 10.

8. Plaintiff has actually suffered substantial emotional distress as a direct result of defendant's conduct described In item 10, and defendant's conduct would have caused a reasonable person to suffer substantial emotional distress.

9. Defendant's continuing course of conduct has been directed specifically against plaintiff and is knowing, willful, not constitutionally protected, and without legitimate purpose.

10. DESCRIPTION OF CONDUCT
   Describe in detail the harassment (including the dates, who did what to whom, and any injuries):

   See Attachement 10

   [X] (If more space is needed, check the box and add additional pages as Attachment 10.)

PLAINTIFF REQUESTS THE COURT TO MAKE THE ORDERS INDICATED BY THE CHECK MARKS IN THE BOXES BELOW.

11. [X] PERSONAL CONDUCT ORDERS    [X] To be ordered now and effective until the hearing.
   Defendant must not contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any messages to, follow, stalk, destroy any personal property, disturb the peace, keep under surveillance, or block movements in public places or thoroughfares, or otherwise harass plaintiff    [X] and the other protected persons identified in item 2.

12. [X] STAY-AWAY ORDERS    [X] To be ordered now and effective until the hearing

   a. Defendant must stay at least (specify): 200 yards away from the following persons and places (the addresses of the places are optional and you do not have to reveal them):
      (1) Plaintiff    [  ] and the other protected persons identified in item 2.
      (2) [X] Plaintiff's residence (address optional):
      (3) [X] Plaintiff's place of work (address optional):
      (4) [  ] Plaintiff's children's school or place of child care (address optional):
      (5) [X] Plaintiff's vehicle (specify):
      (6) [  ] Other (specify):

002008

| PLAINTIFF *(Name)*: JOSE DUARTE | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name)*: VUYO MBULI | |

12.    b.   Granting any of the stay-away orders
       (1)   [X]   will not interfere with defendant's access to defendant's residence or place of employment.
       (2)   [ ]   will interfere with defendant's access to defendant's residence or place of employment *(explain)*:

13.   [X]   Plaintiff will suffer great and irreparable harm before this petition can be heard in court unless the court makes the orders requested above effective now and until the hearing *(specify the harm and why it will occur before the hearing)*:

Plaintiff believes that defendants were acting in jointly and in concert, and will act jointly to harm him in the future. When Mbuli and Freeland approached Plaintiff, Mbuli made abusive remarks to Plaintiff because he had not allowed Freeland to enter, thereby, showing malice aforethought. When Plaintiff told them that they could not enter, Freeland and Mbuli angrily, simultaneously rammed Plaintiff knocking him backward and injuring his left shoulder and arm. Later, when Plaintiff was in the office, Mbuli taunted Plaintiff, charged Plaintiff, grabbbed Plaintiff as attempted to leave, and threatened Plaintiff, "I'm gonna get you! You better watch your back!" Thus, Plaintiff believes that both Freeland and Mbuli will carry out their threats and will cause Plaintiff bodily injury or will attempt to kill Plaintiff.

14.   [X]   There is good cause to include in the orders requested above the other protected persons identified in Item 2 *(explain)*:

Esteban Mendoza is a tenant renting a room from Plaintiff. Freeland and Mbuli are dangerous and would be indifferent to harming anyone in Plaintiff's home.

15.   [ ]   **ATTORNEY FEES AND COSTS**
     Plaintiff requests that defendant be ordered to pay plaintiff's attorney fees and costs as follows *(specify)*:

16.   [ ]   **OTHER ORDERS** *(specify other orders you are requesting)*:

17.   Plaintiff requests that copies of orders be given to the following law enforcement agencies:

| Law enforcement agency | Address |
|---|---|
| Oakland Police Department | 455 7th St. Oakland, CA 94607 |
| Alameda Sheriff's Department | 1401 Lakeside Dr. Oakland, CA 94612 |
| BART Police | 800 Madison St, Oakland, CA 94607 |

**002009**

| PLAINTIFF *(Name):* JOSE DUARTE | CASE NUMBER: |
|---|---|
| DEFENDANT *(Name):* VUYO MBULI | |

18. a. ☐ Plaintiff has asked for restraining orders against the defendant before *(specify county and case number if known):*

b. ☐ Defendant has asked for restraining orders against plaintiff before *(specify county and case number if known):*

19. Plaintiff requests additional relief as may be proper.

20. ☐ Plaintiff requests that time for service of the *Order to Show Cause* and accompanying papers be shortened so that they may be served no less than *(specify number):* _____ days before the date set for the hearing. The order shortening time is needed because of the facts contained in this petition. *(Add additional facts if necessary):*

21. ☒ Plaintiff is not required to pay a fee for filing this petition because the petition alleges that the defendant has inflicted or threatened violence against the plaintiff, or stalked the plaintiff, or acted or spoken in any other manner that has placed the plaintiff in reasonable fear of violence, and seeks a protective or restraining order or injunction restraining stalking or future threats of violence under Code of Civil Procedure section 527.6.

22. ☒ Number of pages attached:  1

*(If the plaintiff is represented by an attorney, the attorney's signature follows):*

Date:  12/12/03

. . . . . . . . . Leandro H. Duran . . . . . . . . .
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  12/12/03

. . . . . . . JOSE DUARTE . . . . . . .
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF)

. . . . . . . . . . . . . . . . . . . . .
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PLAINTIFF)

**002010**

CH-100 [Rev. July 1, 2001]     PETITION FOR INJUNCTION PROHIBITING HARASSMENT

# Attachments

1.   5' 10 "

Attachment 10

On December 4, 2003, Mr. Jose Duarte ("Plaintiff") was working as a Spanish language teacher at the School for Social Justice at Oakland Unified School District. At or about 11:45am, Plaintiff denied entry to a student, DeMario L. Freeland, who is 6' tall and weighs approximately 200 lbs, to Plaintiff's class. Plaintiff denied Freeland entry because he had been disruptive on December 3, 2003, with loud outbursts such as "puta" throughout the one hour class period.

At approximately, 12: 00 noon, DeMario Freeland burst into Plaintiff's classroom through an adjacent classroom door which had been blocked by heavy desks to prevent intrusion from the next classroom. Freeland's violent entry into the classroom shocked students. Upon entering Plaintiff's classroom Freeland went around the class disrupting other students. Plaintiff demanded that he leave, but Freeland refused and continued to disrupt the class with loud outbursts.

At or about 12:10 Freeland walked out of Plaintiff's classroom, and Plaintiff locked the door behind him. At 12:15 there was a knock at the door, and Plaintiff opened the door to see who it was. Freeland had returned with Vuyo Mbuli, who is 5'10" and weighs approximately 180 lbs. Mbuli made abusive remarks to Plaintiff because he had not allowed Freeland to enter. Plaintiff told them that they could not enter. Then both Freeland and Mbuli angrily rammed Plaintiff knocking him backward and injuring his left shoulder and arm. As a result, Plaintiff believes that defendants were acting jointly and in concert, and will act jointly to harm him in the the future.

While Plaintiff was teaching the other students, Mbuli taunted Plaintiff and yelled "football!" "Football!" making sport of their attack on Plaintiff. Because Plaintiff ignored the taunts, Mbuli threatened him saying, "I'm gonna put a cap in your ass." Plaintiff understood that to mean that Mbuli was going to shoot Plaintiff. After class ended at approximately 12:30pm Plaintiff informed his supervisor, Principal Linda Halpern, that he had been attacked by Freeland and Mbuli, and that Plaintiff was going to press criminal charges against them.

While Plaintiff was in the office, another teacher, George, was talking to Mbuli. When Mbuli saw Plaintiff, Mbuli, angry because Plaintiff was going to press charges, taunted Plaintiff to fight, Plaintiff attempted to leave, Mbuli charged at Plaintiff, and George attempted to restrain Mbuli. Mbuli escaped George's grasp. Mbuli then came up behind Plaintiff, put his hand over Plaintiff's hand on the door knob, and prevented Plaintiff from leaving by slamming the door shut. George pulled Mbuli off of Plaintiff. As Plaintiff opened the door to leave, Mbuli yelled "I'm gonna get you! You better watch your back!"

Freeland is approximately 16-17 years old, and Mbuli is approximately between 17-18 years old.

There are no security guards at the School for Social Justice, nor are there any telephones or communication devices in Plaintiff's classroom.

As a result of the attack and in addition to the injury to the shoulder, Plaintiff suffered severe emotional distress and has been diagnosed as being temporarily disabled due to the trauma.

002911

CH-140

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
ADDRESS WHERE YOU WANT MAIL SENT: Leandro H. Duran (Bar # 121847)
DURAN, OCHOA, & ICAZA, LLP
1035 Carleton St. Berkeley, California 94710
TELEPHONE NO. *(Optional):* (510) 540-1046    FAX NO. *(Optional):* (510) 540-1036
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* JOSE DUARTE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon St.,
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: Rene C. Davidson

PLAINTIFF: JOSE DUARTE

DEFENDANT: DEMARIO FREELAND

**FILED**
ALAMEDA COUNTY

JAN 1 5 2004

CLERK OF THE SUPERIOR COURT
By _____
Deputy

| ORDER AFTER HEARING ON PETITION FOR<br>INJUNCTION PROHIBITING HARASSMENT (CLETS) | CASE NUMBER:<br>RG 03-132115 |
|---|---|

1. THIS ORDER, EXCEPT FOR AWARD OF ATTORNEY FEES AND COSTS, SHALL EXPIRE AT MIDNIGHT ON

   *(date):* 6-25-04    IF NO DATE IS PRESENT, THIS ORDER EXPIRES THREE YEARS FROM THE DATE OF ISSUANCE.

2. This proceeding came on for hearing as follows:

   | Date: Jan. 9, 2004 | Time: 10:00 A.M. | Dept.: 4 | Room: |
   |---|---|---|---|

3. Judicial officer *(name):* Judge Julie Conger    ☐ Temporary judge

4. a. [X] Plaintiff present    [X] Attorney present *(name):* RAFAEL A. ICAZA
   b. ☐ Defendant present    ☐ Attorney present *(name):*

THE COURT FINDS

5. a. The defendant is *(name):* DEMARIO FREELAND

   Sex: [X] M  ☐ F  Ht.: 6' "  Wt.: 200  Hair color: BLK  Eye color: BLK  Race: Black  Age: 17  Date of birth: 11/6/86

   b. The protected person is *(name):* JOSE DUARTE

   Sex: [X] M  ☐ F  Date of birth:  10/8/65

   c. Protected family or household members who reside with the protected person are:
   (1) *(Name):* ESTEBAN MENDOZA

   Sex: [X] M  ☐ F  Date of birth: _____

   (2) *(Name):*

   Sex: ☐ M  ☐ F  Date of birth: _____

   (3) *(Name):*

   Sex: ☐ M  ☐ F  Date of birth: _____    ☐ Continued on Attachment 5c.

6. After the hearing on the petition, IT IS ORDERED THAT DEFENDANT
   a. shall not contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any messages to, follow, stalk, destroy the personal property of, disturb the peace of, keep under surveillance, or block movements in public places or thoroughfares of [X] the person seeking the order  [X] the other protected persons listed in item 5c.

002013    Page 1 of 2

ORDER AFTER HEARING ON PETITION FOR
INJUNCTION PROHIBITING HARASSMENT (CLETS)

Code of Civil Procedure, § 527.6;
Penal Code, § 273.6(a)

| PLAINTIFF *(Name):* JOSE DUARTE, et al. | CASE NUMBER: |
| DEFENDANT *(Name):* DEMARIO FREELAND | RG 03-132115 |

6. b. [X] shall stay at least *(specify):* ___100___ yards away from the following protected persons and places:

    (1) [X] Person seeking the order
    (2) [X] The other protected persons listed in item 5c
    (3) [X] Residence of person seeking the order
    (4) [X] Place of work of person seeking the order

    (5) [ ] The children's school or place of child care
    (6) [X] The protected persons' vehicles
    (7) [ ] Other *(specify):*

7. [ ] Other orders *(specify):*

8. **MANDATORY FIREARM RELINQUISHMENT**
The restrained person must surrender to local law enforcement or sell to a licensed gun dealer any firearm in or subject to his or her immediate possession or control within
    a. [X] 24 hours after issuance of this order (if restrained person is present at hearing).
    b. [X] 24 hours after service of this order (if restrained person is not present at hearing).
    c. [ ] other *(specify):*

The restrained person shall file a receipt with the court showing compliance with this order within 72 hours of receiving this order.

9. By the close of business on the date of this order, a copy of this order and any proof of service shall be given to the law enforcement agencies listed below as follows:
    a. [X] plaintiff shall deliver.
    b. [ ] plaintiff's attorney shall deliver.
    c. [ ] the clerk of the court shall deliver.

| Law enforcement agency | Address |
| --- | --- |
| Oakland Police Department | 455 7th St. Oakland, CA 94607 |
| Alameda County Sheriff's Department | 1401 Lakeside Dr, Oakland, CA 94612 |
| BART Police | 800 Madison St, Oakland, CA 94607 |

Date: **JAN 1 5 2004**

JUDICIAL OFFICER'S SIGNATURE   **JULIE CONGER**

This order is effective when made. It is enforceable anywhere in all 50 states, the District of Columbia, all tribal lands, and all U.S. territories and shall be enforced as if it were an order of that jurisdiction by any law enforcement agency that has received the order, is shown a copy of the order, or has verified its existence on the California Law Enforcement Telecommunications System (CLETS). If proof of service on the restrained person has not been received, and the restrained person was not present at the court hearing, the law enforcement agency shall advise the restrained person of the terms of the order and then shall enforce it. Violations of this restraining order are subject to criminal penalties.

**NOTICE REGARDING FIREARMS**

Any person subject to a restraining order is prohibited from owning, possessing, purchasing or attempting to purchase, receiving or attempting to receive, or otherwise obtaining a firearm. Such conduct is subject to a $1,000 fine and imprisonment.

| [SEAL] | **CLERK'S CERTIFICATE** |
| --- | --- |
| | I certify that the foregoing *Order After Hearing on Petition for Injunction Prohibiting Harassment (CLETS)* is a true and correct copy of the original on file in the court. |
| | Date: _____ Clerk, by _____, Deputy |

**002014**

:2562234*

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):* ~RESS WHERE YOU WANT MAIL SENT: Leandro H. Duran (Bar # 121847) .RAN, OCHOA, & ICAZA, LLP ~u35 Carleton St., Berkeley, California 94710 | ENDORSED FILED ALAMEDA COUNTY DEC 1 6 2003 CLERK OF THE SUPERIOR COURT By A. JACKSON Deputy |

TELEPHONE NO. *(Optional):* (510) 540-1046    FAX NO. *(Optional):* (510) 540-1036
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* JOSE DUARTE

SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
STREET ADDRESS: 1225 Fallon St.,
MAILING ADDRESS:
CITY AND ZIP CODE: Oakland 94612
BRANCH NAME: Rene C. Davidson

PLAINTIFF: JOSE DUARTE

DEFENDANT: DEMARIO FREELAND

| ORDER TO SHOW CAUSE (Harassment) [X] and Temporary Restraining Order (CLETS) | CASE NUMBER: RG03132115 |
|---|---|

**THIS ORDER SHALL EXPIRE AT THE DATE AND TIME OF THE HEARING SHOWN IN THE BOX BELOW UNLESS EXTENDED BY THE COURT.**

1. To defendant *(name):* DEMARIO FREELAND
2. A court hearing has been set at the time and place indicated below:

Date: JAN. 9, 2004    Time: 10:00am    Dept.: 4    Room:

3. *You have the right to attend the court hearing, with or without an attorney, to give any legal reason why the orders equested in the attached petition should not be granted. NOTICE: If you do not attend the hearing, the court may grant the requested orders without further notice to you. Restraining Orders may last up to three (3) years.*

### TEMPORARY RESTRAINING ORDER

**THE COURT FINDS**

4. a. The defendant is *(name):* DEMARIO FREELAND

Sex: [X] M    [ ] F    Ht.: 6' "    Wt.: 200    Hair color: BLK    Eye color: BLK    Race: Black    Age: 17    Date of birth: 11/6/86

b. The protected person is *(name):* JOSE DUARTE

Sex: [ ] M    [ ] F    Date of birth:

c. Protected family or household members who reside with the protected person:
(1) *(Name):*

Sex: [ ] M [ ] F    Date of birth:

(2) *(Name):*

Sex: [ ] M [ ] F    Date of birth:

(3) *(Name):*

Sex: [ ] M [ ] F    Date of birth:    [ ] Continued on Attachment 4c.

002015

ORDER TO SHOW CAUSE AND    Code of Civil Procedure,

PLAINTIFF *(Name):* JOSE DUARTE, et al.

ENDANT *(Name):* DEMARIO FREELAND

CASE NUMBER: RG03 132115

## UNTIL THE TIME OF HEARING, IT IS ORDERED

5. The restrained person
   a. ☐ **shall not contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any messages to,** follow, stalk, destroy the personal property of, disturb the peace of, keep under surveillance, or block movements in public places or thoroughfares of ☐ the person seeking the order ☐ the other protected persons listed in item 4c.

   b. ☒ shall stay at least *(specify):* ____200____ yards away from the following protected persons and places:
      *(The addresses of these places are optional and you do not have to provide them.)*
      (1) ☒ Person seeking the order
      (2) ☒ The other persons listed in item 4c
      (3) ☒ Residence of person seeking the order
      (4) ☒ Place of work of person seeking the order
      (5) ☐ The children's school or place of child care
      (6) ☐ The protected persons' vehicles
      (7) ☐ Other *(specify):*

6. ☐ OTHER ORDERS *(specify):*

7. **MANDATORY FIREARM RELINQUISHMENT**
   The restrained person must surrender to local law enforcement or sell to a licensed gun dealer any firearm in or subject to his or her immediate possession or control within
   a. ☐ 24 hours after issuance of this order (if restrained person is present at hearing).
   b. ☐ 24 hours after service of this order (if restrained person is not present at hearing).
   c. ☐ other *(specify):*

   The restrained person shall file a receipt with the court showing compliance with this order within 72 hours of receiving this order.

8. By the close of business on the date of this order, a copy of this order and any proof of service shall be given to the law enforcement agencies listed below as follows:
   a. ☒ plaintiff shall deliver.
   b. ☐ plaintiff's attorney shall deliver.
   c. ☐ the clerk of the court shall deliver.

| Law enforcement agency | Address |
|---|---|
| Oakland Police Department | 455 7th St. Oakland, CA 94607 |
| Alameda County Sheriff's Department | 1401 Lakeside Dr, Oakland, CA 94612 |
| BART Police | 800 Madison St, Oakland, CA 94607 |

002016

PLAINTIFF *(Name):* JOSE DUARTE, et al.

DEFENDANT *(Name):* DEMARIO FREELAND

CASE NUMBER: RG03 132115

9. a. ☐ Application for an order shortening time is granted and the documents listed in b shall be personally served on the defendant no fewer than *(specify number):* _____ days before the time set for hearing.

b. ☐ The following documents shall be personally served on defendant:
   (1) *Order to Show Cause and Temporary Restraining Order (Harassment)* (form CH-120)
   (2) *Petition for Injunction Prohibiting Harassment* (form CH-100)
   (3) *Blank Response to Petition for Injunction Prohibiting Harassment* (form CH-110)
   (4) *Instructions for Lawsuits to Prohibit Harassment* (form CH-150)
   (5) Other *(specify):*

10. ☐ Filing fees for the filing of this action are duly waived.

Date: 12/16/03

_Harry R. Sheppard_
JUDICIAL OFFICER

This order is effective when made. It is enforceable anywhere in all 50 states, the District of Columbia, all tribal lands, and all U.S. territories and shall be enforced as if it were an order of that jurisdiction by any law enforcement agency that has received the order, is shown a copy of the order, or has verified its existence on the California Law Enforcement Telecommunications System (CLETS). If proof of service on the restrained person has not been received, and the restrained person was not present at the court hearing, the law enforcement agency shall advise the restrained person of the terms of the order and then shall enforce it. Violations of this restraining order are subject to criminal penalties.

### NOTICE REGARDING FIREARMS
Any person subject to a restraining order is prohibited from owning, possessing, purchasing or attempting to purchase, receiving or attempting to receive, or otherwise obtaining a firearm. Such conduct is subject to a $1,000 fine and imprisonment.

| [SEAL] | **CLERK'S CERTIFICATE**<br>I certify that the foregoing *Order to Show Cause and Temporary Restraining Order (CLETS)* is a true and correct copy of the original on file in the court. |
|---|---|
| | Date: _____    Clerk, by _____ , Deputy<br>**002017** |

002018

'2562238'    :00

| NAME OF PARTY OR ATTORNEY (and state bar number if attorney): Leandro H. Duran (Bar # 121847) | FOR COURT USE ONLY |
|---|---|
| ADDRESS WHERE YOU WANT MAIL SENT: DURAN, OCHOA, & ICAZA, LLP 1035 Carleton St. Berkeley, California 94710 TELEPHONE NUMBER (Optional): (510) 540-1046  FAX NUMBER (Optional): (510) 540-1036 E-MAIL ADDRESS (Optional): ATTORNEY FOR (Name): JOSE DUARTE | F I L E D ALAMEDA COUNTY DEC 1 6 2003 CLERK OF THE SUPERIOR COURT By_____ Deputy |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA STREET ADDRESS: 1225 Fallon St., MAILING ADDRESS: CITY AND ZIP CODE: Oakland 94612 BRANCH NAME: Rene C. Davidson | |
| PLAINTIFF: JOSE DUARTE | |
| DEFENDANT: DEMARIO FREELAND | |
| PETITION FOR INJUNCTION PROHIBITING HARASSMENT [X] Application for Temporary Restraining Order | CASE NUMBER: RG03132115 |

*(THIS IS NOT AN ORDER)*

Read the Instructions for Lawsuits to Prohibit Harassment *(form CH-150)* before completing this form.

1. Plaintiff *(name each):* JOSE DUARTE

2. [X] OTHER PERSONS TO BE PROTECTED *(List names and ages of all family or household members who reside with plaintiff and are to be protected by the requested orders and their relationship to plaintiff:*

| Name | Age | Relationship to plaintiff |
|---|---|---|
| ESTEBAN MENDOZA | 37 | TENANT/ROOMATE |

3. a. Defendant *(name):* DEMARIO FREELAND

   Sex: [X] M  [ ] F  Ht.: 6' "  Wt.: 200  Hair color: bl  Eye color: BLK  Race: Black  Age: 17  Date of birth: 11/6/86

   b. Defendant's residence address *(if known):*   c. Defendant's work address and name of business *(if known):*

   690 15th St, Apt. 303, Oakland, CA 94612

4. This action is filed in this county because
   a. [X] defendant resides in this county.
   b. [X] defendant has caused physical or emotional injury to plaintiff in this county.
   c. [ ] other *(specify):*

5. Describe how plaintiff knows defendant (e.g., landlord/tenant, neighbor, etc.):
   Plaintiff is a teacher at the School of Social Justice, 8350 Hillside, Oakland, CA 94606, and defendant is a student enrolled in Plaintiff's class.

6. Defendant has
   a. [X] threatened to commit acts of violence against plaintiff as described in item 10.
   b. [X] committed acts of violence against plaintiff as described in item 10.
   c. [ ] not threatened to commit and has not committed any acts of violence.

002019

PETITION FOR INJUNCTION PROHIBITING HARASSMENT    Code of Civil Procedure, § 527.6

PLAINTIFF *(Name)*: JOSE DUARTE, et al.

ᴊE NUMBER:

'ENDANT *(Name)*: DEMARIO FREELAND

7. Defendant has committed a series of acts that seriously alarm, annoy, or harass plaintiff as described in item 10.

8. Plaintiff has actually suffered substantial emotional distress as a direct result of defendant's conduct described in item 10, and defendant's conduct would have caused a reasonable person to suffer substantial emotional distress.

9. Defendant's continuing course of conduct has been directed specifically against plaintiff and is knowing, willful, not constitutionally protected, and without legitimate purpose.

10. **DESCRIPTION OF CONDUCT**
    Describe in detail the harassment *(including the dates, who did what to whom, and any injuries)*:

    See Attachment 10

    [X]  *(If more space is needed, check the box and add additional pages as Attachment 10.)*

**PLAINTIFF REQUESTS THE COURT TO MAKE THE ORDERS INDICATED BY THE CHECK MARKS IN THE BOXES BELOW.**

11. [X]  **PERSONAL CONDUCT ORDERS**          [X]  **To be ordered now and effective until the hearing.**
    Defendant must not contact, molest, harass, attack, strike, threaten, sexually assault, batter, telephone, send any messages to, follow, stalk, destroy any personal property, disturb the peace, keep under surveillance, or block movements in public places or thoroughfares, or otherwise harass plaintiff          [X]  and the other protected persons identified in item 2.

12. [X]  **STAY-AWAY ORDERS**                 [X]  **To be ordered now and effective until the hearing**

    a. Defendant must stay at least *(specify):* __200__ yards away from the following persons and places *(the addresses of the places are optional and you do not have to reveal them):*
       (1) Plaintiff      [  ] and the other protected persons identified in item 2.
       (2) [X]  Plaintiff's residence *(address optional):*
       (3) [X]  Plaintiff's place of work *(address optional):*
       (4) [  ]  Plaintiff's children's school or place of child care *(address optional):*
       (5) [X]  Plaintiff's vehicle *(specify):*
       (6) [  ]  Other *(specify):*

· **003020**

PLAINTIFF *(Name)*: JOSE DUARTE, et al.

CASE NUMBER:

DEFENDANT *(Name)*: DEMARIO FREELAND

12.    b.  Granting any of the stay-away orders
    (1) [ X ]  will not interfere with defendant's access to defendant's residence or place of employment.
    (2) [   ]  will interfere with defendant's access to defendant's residence or place of employment *(explain)*:

13.  [ X ]  Plaintiff will suffer great and irreparable harm before this petition can be heard in court unless the court makes the orders requested above effective now and until the hearing *(specify the harm and why it will occur before the hearing)*:

Plaintiff believes that defendants were acting jointly and in concert, and will act jointly to harm him in the the future. When Mbuli and Freeland approached Plaintiff, Mbuli made abusive remarks to Plaintiff because he had not allowed Freeland to enter, thereby, showing malice aforethought. When Plaintiff told them that they could not enter, Freeland and Mbuli angrily, simultaneously rammed Plaintiff knocking him backward and injuring his left shoulder and arm.  Later, when Plaintiff was in the office, Mbuli taunted Plaintiff, charged Plaintiff, grabbbed Plaintiff as attempted to leave, and threatened Plaintiff, "I'm gonna get you! You better watch your back!" Thus, Plaintiff believes that both Freeland and Mbuli will carry out their threats and will cause Plaintiff bodily injury or will attempt to kill Plaintiff.

14.  [ X ]  There is good cause to include in the orders requested above the other protected persons identified in item 2 *(explain)*:

Esteban Mendoza is a tenant renting a room from Plaintiff. Freeland and Mbuli are dangerous and would be indifferent to harming anyone in Plaintiff's home.

15.  [   ]  ATTORNEY FEES AND COSTS
Plaintiff requests that defendant be ordered to pay plaintiff's attorney fees and costs as follows *(specify)*:

16.  [   ]  OTHER ORDERS *(specify other orders you are requesting)*:

17.  Plaintiff requests that copies of orders be given to the following law enforcement agencies:

| Law enforcement agency | Address |
| --- | --- |
| Oakland Police Department | 455 7th St. Oakland, CA 94607 |
| Alameda Sheriff's Department | 1401 Lakeside Dr, Oakland, CA 94612 |
| BART Police | 800 Madison St, Oakland, CA 94607 |

00201

| AINTIFF (Name): JOSE DUARTE, et al. | CASE NUMBER: |
|---|---|
| DEFENDANT (Name): DEMARIO FREELAND | |

18. a. ☐ Plaintiff has asked for restraining orders against the defendant before (specify county and case number if known):

b. ☐ Defendant has asked for restraining orders against plaintiff before (specify county and case number if known):

19. Plaintiff requests additional relief as may be proper.

20. ☐ Plaintiff requests that time for service of the *Order to Show Cause* and accompanying papers be shortened so that they may be served no less than (specify number): _____ days before the date set for the hearing. The order shortening time is needed because of the facts contained in this petition. (Add additional facts if necessary):

21. ☒ Plaintiff is not required to pay a fee for filing this petition because the petition alleges that the defendant has inflicted or threatened violence against the plaintiff, or stalked the plaintiff, or acted or spoken in any other manner that has placed the plaintiff in reasonable fear of violence, and seeks a protective or restraining order or injunction restraining stalking or future threats of violence under Code of Civil Procedure section 527.6.

22. ☒ Number of pages attached: 1

*(If the plaintiff is represented by an attorney, the attorney's signature follows):*

Date: 12/12/63

Leandro H. Duran
(TYPE OR PRINT NAME)

►
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 12/12/63

JOSE DUARTE
(TYPE OR PRINT NAME)

►
(SIGNATURE OF PLAINTIFF)

(TYPE OR PRINT NAME)

►
(SIGNATURE OF PLAIN 003022

CV-120 [Rev. July 1, 2001]     PETITION FOR INJUNCTION PROHIBITING HARASSMENT     Page 1 of 1

# Attachments

Attachment 10

On December 4, 2003, Mr. Jose Duarte ("Plaintiff") was working as a Spanish language teacher at the School for Social Justice at Oakland Unified School District. At or about 11:45am, Plaintiff denied entry to a student, DeMario L. Freeland, who is 6' tall and weighs approximately 200 lbs, to Plaintiff's class. Plaintiff denied Freeland entry because he had been disruptive on December 3, 2003, with loud outbursts such as "puta" throughout the one hour class period.

At approximately, 12: 00 noon, DeMario Freeland burst into Plaintiff's classroom through an adjacent classroom door which had been blocked by heavy desks to prevent intrusion from the next classroom. Freeland's violent entry into the classroom shocked students. Upon entering Plaintiff's classroom Freeland went around the class disrupting other students. Plaintiff demanded that he leave, but Freeland refused and continued to disrupt the class with loud outbursts.

At or about 12:10 Freeland walked out of Plaintiff's classroom, and Plaintiff locked the door behind him. At 12:15 there was a knock at the door, and Plaintiff opened the door to see who it was. Freeland had returned with Vuyo Mbuli, who is 5'10" and weighs approximately 180 lbs. Mbuli made abusive remarks to Plaintiff because he had not allowed Freeland to enter. Plaintiff told them that they could not enter. Then both Freeland and Mbuli angrily rammed Plaintiff knocking him backward and injuring his left shoulder and arm. As a result, Plaintiff believes that defendants were acting jointly and in concert, and will act jointly to harm him in the the future.

While Plaintiff was teaching the other students, Mbuli taunted Plaintiff and yelled "football!" "Football!" making sport of their attack on Plaintiff. Because Plaintiff ignored the taunts, Mbuli threatened him saying, "I'm gonna put a cap in your ass." Plaintiff understood that to mean that Mbuli was going to shoot Plaintiff. After class ended at approximately 12:30pm Plaintiff informed his supervisor, Principal Linda Halpern, that he had been attacked by Freeland and Mbuli, and that Plaintiff was going to press criminal charges against them.

While Plaintiff was in the office, another teacher, George, was talking to Mbuli. When Mbuli saw Plaintiff, Mbuli, angry because Plaintiff was going to press charges, taunted Plaintiff to fight, Plaintiff attempted to leave, Mbuli charged at Plaintiff, and George attempted to restrain Mbuli. Mbuli escaped George's grasp. Mbuli then came up behind Plaintiff, put his hand over Plaintiff's hand on the door knob, and prevented Plaintiff from leaving by slamming the door shut. George pulled Mbuli off of Plaintiff. As Plaintiff opened the door to leave, Mbuli yelled "I'm gonna get you! You better watch your back!"

Freeland is approximately 16-17 years old, and Mbuli is approximately between 17-18 years old.

There are no security guards at the School for Social Justice, nor are there any telephones or communication devices in Plaintiff's classroom.

As a result of the attack and in addition to the injury to the shoulder, Plaintiff suffered severe emotional distress and has been diagnosed as being temporarily disabled due to the trauma.

# EXH. C

# DURAN & OCHOA, LLP

Attorneys at Law

January 14, 2005

*Sent Via US Mail*

Scott Corwin
Claims Department
Standard Insurance Company/C9A
900 S W 5th Avenue
Portland, Or. 92704

> RE: *SUPPLEMENTAL INFORMATION: RECOGNITION OF DISABILITY BY THE*
> *CALIFORNIA DISABILITY INSURANCE SYSTEM*
> Standard Insurance Policy 614371-A

Dear Scott Corwin,

This is letter is to provide you with a copy of Mr. Duarte's California Disability Insurance award, indicating that Mr. Duarte has a record and history of disability, and is regarded as having a disability. The disabilities compensated, therein, are for the injuries for which he has filed a claim for disability benefits, from the Standard Insurance Company.

Thank you for your attention to this matter. If I can be of further assistance, please do not hesitate to contact me.

Sincerely,

LEANDRO H. DURAN

S:\Cases Litigation\Duarte v. Standard Insurance\Correspondence\let Standard Insurance 2a.wpd

KEEP THIS STAT _____T FOR YOUR RECORDS.                    DATE ISSUED 11/2(
SSN: 556-04-33G   NAME. JOSE A DUARTE               CLAIM EFFECTIVE DATE: 09/15
WEEKLY RATE: $270.00       WEEKLY RATE IS FOR 7 DAYS
EXCEPT FOR THE MANDATORY 7-DAY WAITING PERIOD, YOU WILL BE PAID FOR EVERY DAY YOU ARE ELIGIBLE FOR
BENEFITS, INCLUDING WEEKENDS.

IF YOU ARE NOT PAID FOR ANY DAYS, YOU WILL BE NOTIFIED WHAT DAYS WERE NOT PAID AND WHY THEY WERE NOT
IN THE MESSAGE AREA BELOW.  THE OFFICE PROCESSING YOUR CLAIM IS:
                          EMPLOYMENT DEVELOPMENT DEPARTMENT     TELEPHONE: (800) 480-328:
                          PO BOX 1857
                          OAKLAND  CA  94604-1857
     THE ATTACHED CHECK IS FOR THE FOLLOWING PERIOD(S): 09/22/04 THROUGH 11/22/04.



| NO. OF DAYS | BENEFIT AMT. | AMT. DEDUCTED | AMT. PAID |
|---|---|---|---|
| 62 | $2391.43 | $0.00 | $2391.43 |

MESSAGE-AREA

   IMPORTANT NOTICE:   IF YOU DO NOT UNDERSTAND ANY FORM SENT TO YOU BY THIS OFFICE, CONTACT US FC
   ASSISTANCE AT THE TELEPHONE NUMBER SHOWN ON THE CHECK STATEMENT.

                          NOTICE OF CLAIM DATE ADJUSTMENT

   YOUR FIRST CLAIM FOR DISABILITY INSURANCE HAS BEEN DISALLOWED BEGINNING 12/04/03 THROUGH 09/14/04.
   THE BEGINNING DATE OF YOUR CLAIM HAS BEEN ADJUSTED FOR THE FOLLOWING REASON:

   YOUR CLAIM WAS NOT FILED WITHIN 49 DAYS OF THE BEGINNING OF YOUR DISABILITY,
   SECTION 2706-1, CALIFORNIA UNEMPLOYMENT INSURANCE CODE.                    DE 2517-16

   This determination is final unless you send a written appeal within twenty (20) days from
   mailing date above.  You may appeal by completing the enclosed Appeal Form or separately
   writing a detailed statement of why you believe the determination is in error.  Please in
   your Social Security number on your appeal and send it to the EDD office shown above.

# EXH. D



The
**STANDARD**
INSURANCE

April 18, 2005

Jose Duarte
5319 Broadway Ter #103
Oakland CA 94618

Re:    Oakland Unified School District
       Group Policy 614371
       Claim No. 85058

Dear Mr. Duarte:

We are writing with regard to your long term disability (LTD) claim. We have reviewed your claim to determine the cause of your disability.

The Oakland Unified School District group policy limits payment of LTD benefits to 24 months for conditions caused or contributed to by a mental disorder. A copy of the applicable policy provision is enclosed for your review. Based on the information in your claim file, Standard Insurance Company will be applying the mental disorder limitation and thus limiting payment of your LTD benefits to a maximum of 24 months for your mental disorder.

You have claimed disability as a result of post traumatic stress disorder. As this condition is considered to be a mental disorder, Standard Insurance Company will be applying the mental disorder limitation to your claim for this condition.

Benefits first became payable for your mental disorder on February 3, 2004. Therefore, the 24-month maximum benefit period for your mental disorder will end on February 2, 2006, as long as you remain disabled and continue to meet the terms of your group policy. To ensure that a correct decision is made on your claim, if you have any information that would indicate or support that you are disabled by conditions not subject to this limitation, we would appreciate your bringing this information to our attention as soon as possible. Standard Insurance Company wants to provide to you all the benefits you are entitled to receive under the terms of the group policy.

If you have any questions, please write or call me.

Sincerely,

Scott Corwin
Senior Disability Benefits Analyst
Employee Benefits National Accounts
1-800-368-1135, x8966

SC:mkp

Standard Insurance Company  900 SW Fifth Avenue  Portland OR 97204-1282

# LIMITATIONS

A.   Care of A Physician

You must be under the ongoing care of a Physician during the Benefit Waiting Period. No LTD Benefits will be paid for any period of Disability when you are not under the ongoing care of a Physician.

B.   Mental Disorder

Payment of LTD Benefits is limited to 24 months for each period of Disability caused or contributed to by a Mental Disorder. However, if you are confined in a Hospital at the end of the 24 months, this limitation will not apply while you are continuously confined.

Mental Disorder means a mental, emotional, behavioral, or stress-related disorder.

Hospital means a legally operated hospital providing full-time medical care and treatment under the direction of a full-time staff of licensed Physicians. Rest homes, nursing homes, convalescent homes, homes for the aged, and facilities primarily affording custodial, educational, or rehabilitative care are not Hospitals.

LT.LM.01

# CLAIMS

A.   Filing A Claim

Claims should be filed on our forms. If you do not receive our forms within 15 days after you ask for them, you may submit your claim in a letter to us. The letter should include the date disability began, and the cause and nature of the disability.

B.   Time Limits On Filing Proof Of Loss

You must give us Proof Of Loss within 90 days after the end of the Benefit Waiting Period. If you cannot do so, you must give it to us as soon as reasonably possible, but not later than one year after that 90 day period. If Proof Of Loss is filed outside these time limits, your claim will be denied. These limits will not apply while you lack legal capacity.

C.   Proof Of Loss

Proof Of Loss means satisfactory written proof that you are Disabled and entitled to LTD Benefits. Proof Of Loss must be provided at your expense.

D.   Documentation

At your expense, you must submit completed claims statements, your signed authorization for us to obtain information, and any other items we may reasonably require in support of your claim. If you do not provide the documentation within 60 days after we mail you our request, your claim may be denied.

E.   Investigation Of Claim

We may investigate your claim at any time.

At our expense, we may have you examined at reasonable intervals by specialists of our choice. We may deny or suspend LTD Benefits if you fail to attend an examination or cooperate with the examiner.

F.   Time Of Payment

We will pay LTD Benefits within 60 days after you satisfy Proof Of Loss.

LTD Benefits will be paid to you at the end of each month you qualify for them. LTD Benefits remaining unpaid at your death will be paid to the person(s) receiving the Survivor Benefit. If no Survivor Benefit is paid, the unpaid LTD Benefits will be paid to your estate.

G.   Notice Of Decision On Claim

You will receive a written decision on your claim within a reasonable time after we receive your claim.

EXH. *E*



*Joseph Anthony Matan, M. D.*
*A. A. O. S.*
2160 APPIAN WAY, SUITE 104
PINOLE, CALIFORNIA 94564

(510) 724-4300 FAX (510)724-4859

A PROFESSIONAL CORPORATION
SPECIALIZING IN
SURGERY OF THE HAND AND
ORTHOPAEDIC SURGERY
ID# 94 2739258



October 24, 2005

## REPORT OF QUALIFIED MEDICAL EVALUATOR

### RE:  JOSE DUARTE
### Date of Evaluation:  October 24, 2005
### Claim No.:  0312003836

I examined Jose Duarte as a Qualified Medical Evaluator at my above-noted address on October 24, 2005.

I am charging for a **Complex Examination**. I spent over two hours face to face with Mr. Duarte. I addressed issues of apportionment and causation as requested.

### HISTORY OF CONDITION:

Mr. Duarte is a 40-year-old right-handed man who was working as a Spanish teacher with the Oakland Unified School District.

He tells me he was trying to prevent two out-of-control students from entering his class. One of them, who weighed approximately 200 pounds, pushed in and he had what sounds like a hyperextension type of injury to his left shoulder. He tells me it felt like something was "tearing" in the shoulder. This shoulder did not dislocate.

He tells me he was taking a course at Delta College in firefighting. This facility was considered a firefighting academy. He tells me he was carrying a 12 foot ladder on his right shoulder with his left hand out in front. A gust of wind came and blew the ladder up, carrying his left shoulder up. He sustained a dislocation of his left shoulder. This was reduced at Dameron Hospital in Stockton.

**RE: JOSE DUARTE**
October 24, 2005
Page Two


He was a student at the time and was not employed by anyone, so this was not considered a work-related injury. He was a Kaiser member at the time and was treated by Kaiser/Stockton. He was eventually released to full activity.

He brought with him today some photographs which show him on top of a fire truck in the snow. He worked for the California Department of Forestry at a fulltime job without restrictions.

He had no further dislocations and had no continuing symptoms.

Following the injury on the job on December 5, 2003, he did not return to work at the Oakland Unified School District.

Mr. Duarte has worked approximately one month following the industrial injury.

In December 2004 he returned to work as a legal assistant.

I looked at his brief medical file and his deposition.

I noticed in the medical file that I do have the consultation from Dr. Ma at UCSF addressed to Dr. Burvin who is an orthopedic spine surgeon at UCSF. Mr. Duarte tells me he did not actually see Dr. Burvin in treatment but knew Dr. Burvin because of his work as a medical-legal expert witness and Dr. Burvin gave him the name of Dr. Ma.

Mr. Duarte tells me he reported the injury "within minutes" to the principal. The school district did not send him to a doctor. At Dr. Burvin's referral on December 30, 2003, roughly four weeks post-injury, he was seen by Dr. C. Benjamin Ma, Assistant Professor, Shoulder and Sports Medicine, UCSF.

At the time Dr. Ma first saw Mr. Duarte, he was having discomfort with overhead type activities and a feeling of instability of the left shoulder. Dr. Ma noted that the examination of the right shoulder was normal. He states there was full forward flexion and abduction of both shoulders. Examination of the right shoulder was normal as far as stability was concerned with a little anterior

**RE: JOSE DUARTE**
October 24, 2005
Page Three

laxity of the left shoulder.  There was a type 1 acromion with no sign of a Hill-Sachs lesion on the humeral head.  Dr. Ma felt he had symptoms of left shoulder impingement secondary to glenohumeral instability.  He recommended physical therapy.  He was going to see him back again in eight weeks.  He stated Mr. Duarte could not do any heavy lifting over the left shoulder.

Physical therapy was done at Berkeley Physical Therapy.  I see a report dated March 9, 2004, signed by Diane Kern, P.T.  Mr. Duarte had intermittent aching with prolonged sitting.  Active range of motion was improving.  There was pain with horizontal adduction, for example, turning the wheel of a car and with abduction.  He was started on home exercises for shoulder stabilization.

There are some handwritten notes from Suzanne Gaynor-Sloman, Ph.D., a licensed psychologist.

I see the first page only of a May 10, 2004 note from Dr. Ma.  This would have been five months post-injury.  At that point Dr. Ma noted there was full range of motion, there was a negative Neer and Hawkins test, there was normal rotator cuff strength and there was mild discomfort over the posterior aspect of the shoulder with external rotation.  Stability was normal.

Dr. Ma recommended continuation of physical therapy and a home exercise program.  He felt the patient would be permanent and stationary after the next visit.  He was going to see him back again in about three months.  He felt Mr. Duarte could do full duty as far as his shoulder was concerned.

I have no additional records.

There is a deposition of 83 pages taken of Mr. Duarte on April 21, 2005.  This is labeled volume one.  He tells me there is a second volume that was done on a different day.  The first 28 pages are the usual recitation of past work experience.  Then starting on page 29 there is discussion about the work as a teacher.  Mr. Duarte tells me this incident occurred on his second day on the job

**RE: JOSE DUARTE**
October 24, 2005
Page Four

and there is quite a bit of discussion about the psychologist, Dr. Gaynor-Sloman, and the treatment received from her. Starting on page 46 there is a description of the injury. Then on page 47 there is discussion about the old injury which is essentially as that which he told me today. Then on page 53 and following is discussion about the specific injury. Starting on page 65 and following are a lot of questions concerning his marriage which are not pertinent to an orthopedic examination. Then there are quite a few pages concerning living expenses, etc.

The deposition was taken by Gregory Stanfield, Esq. of the Hanna, Brophy Law Firm.

Mr. Duarte tells me he last saw Dr. Ma in or about November 2004. Dr. Ma told him he declared him permanent and stationary.

I reviewed the records from Dameron Hospital. An x-ray taken on April 24, 1997 showed a dislocation of the left humeral head. It was reduced under sedation. He was referred to see his orthopedist.

There is a letter to Kaiser dated May 31, 2004, asking for an appointment for treatment to his left shoulder and neck, as well as pain in the low back. He noted the employer had not accepted the left shoulder injury.

There is a handwritten progress note that is very difficult to read. The date is not readable. Diagnosis: Likely impingement, left shoulder. This must have been the visit where the doctor gave him Motrin.

I reviewed the QME by Dr. Victoria Barber dated April 13, 2005. Dr. Barber does not discuss instability testing of the left shoulder and, in fact, Mr. Duarte tells me she did not do the tests that I did or that Dr. Ma has done on him. She did have available to her Dr. Ma's permanent and stationary report of August 9, 2004. She felt that his disability precluded constant work at or above shoulder height on the left. It was her opinion, as it is mine, that the previous injury did not appear to be related to the present complaints and she further went on to state that she did not feel

**RE: JOSE DUARTE**
October 24, 2005
Page Five

this predisposed Mr. Duarte to his current injury or complaints. She apportioned the causation 100 percent to the specific injury on the job as a teacher. She felt that he needed no further medical treatment.

I would note that Mr. Duarte told me as he was leaving that he had been reading about a shoulder shrinking procedure for instability. I had him speak to my colleague, Dr. Lyon, who keeps up on all of the newest issues. He told Mr. Duarte that after a burst of enthusiasm for shoulder shrinkage, perhaps eight or nine years ago, that there are only a few surgeons regularly doing that procedure in the United States.

I suggested that he talk to Dr. Gary Fanton who is with the orthopedic group at Stanford. Dr. Fanton treats the 49ers.

I personally took a course on laser shrinkage from Dr. Fanton a number of years ago. I sent him at least one patient for the procedure which, by the way, was unsuccessful. I do not know if he is still doing those procedures or not.

I also suggested to Mr. Duarte that he go back and see his treating orthopedist, Dr. Ma.

## REVIEW OF RECORDS:

Dr. C. Benjamin Ma, records of 12-30-2003 through 5-10-2004;

Physical therapy notes, 3-9-2004 and following;

Dr. Suzanne-Gaynor-Sloman, various reports;

Deposition taken of Mr. Duarte on 4-21-2005;

Dameron Hospital, ER record and x-ray report, 4-24-1997;

Kaiser Permanente Medical Center, record of 5-31-2004 and following;

**RE: JOSE DUARTE**
October 24, 2005
Page Six

**REVIEW OF RECORDS:** (continued)

Dr. Victoria Barber, QME, 4-13-2005.

**PRESENT SYMPTOMS:**

I asked Mr. Duarte about his present symptoms with his left shoulder, not necessarily as he is sitting here today, but what has been going on over the past few months.

He tells me he has a constant pain in his left shoulder. He points across the posterior part of the left shoulder as being the location of that pain, although he will, on occasions, get pain at the front of the shoulder. He tells me this is the same place that he hurt at the time he was injured by the student.

He tells me he is particularly bothered by heavy pulling or repetitive pulling with his left shoulder. Overhead use bothers his left shoulder. Interestingly, pushing does not particularly bother him. Pushing below shoulder height, for example, pushing a door does not bother him. He is bothered by driving. Moving the steering wheel bothers him. Prolonged typing will bother him. Holding his arm for an extended period of time in the position when one types will bother him.

He tells me he has not used aspirin or Tylenol. Ibuprofen does not help.

He tells me he saw a Dr. Koris at Kaiser/Oakland who prescribed 800 mg of Motrin but that did not help. He was not followed in the Kaiser/Oakland occupational clinic.

Interestingly, he tells me that his left shoulder will bother him at night. If he rolls over on it he will have pain which awakens him at night.

I do a considerable amount of shoulder surgery in my practice. The two orthopedic conditions that bring patients to the orthopedist with complaints of night pain are, of course, carpal

**RE: JOSE DUARTE**
October 24, 2005
Page Seven

tunnel syndrome and the second is rotator cuff problems with the shoulder, so this is a reasonable complaint.

Please note that Dr. Ma felt that Mr. Duarte had impingement syndrome secondary to instability.

Mr. Duarte has not had an MRI of his shoulder.

He tells me he will get a sensation of something "pulling" in the shoulder which he describes as being like a "rubber band." He tells me this is in opposition to the right side which feels stable and solid. On further questioning, he tells me he does have a feeling of instability in the left shoulder.

He tells me just as he is sitting and talking to me, that he has a feeling that the left shoulder is "dropping down."

Mr. Duarte tells me also that he will get pain coming down from the side of his neck on the left side, going down into the top of the shoulder.

Mr. Duarte tells me he has never had injuries or problems with his right shoulder.

## PHYSICAL EXAMINATION:

On physical examination Mr. Duarte is a generally healthy-appearing man.

His shoulder girdles, on inspection from the front and rear, appear symmetrical. There is no obvious sulcus sign just with the arm hanging naturally by his side.

He has full abduction and forward flexion of both shoulders to 180 degrees. With internal rotation behind the back he touches to the lower angle of the scapula on both sides. This motion is symmetrical, however, on the left side he complains of pain with this maneuver. He points to both the posterior and anterior part of the shoulder socket as being the source of pain.

**RE: JOSE DUARTE**
October 24, 2005
Page Eight


He has full external rotation of both shoulders but again complains of pain in the left shoulder with that maneuver.

He is tender across the posterior capsule of the shoulder. He has definite inferior laxity of the left shoulder. When I pull straight down on the arm, he develops a small sulcus under the acromion. The left shoulder is absolutely more lax more than the unaffected right side.

I am not able to sublux the left shoulder out of the socket or, for that matter, the right shoulder.

When I pull forcefully on the arm in an anterior direction he has symmetrical laxity of the shoulders, probably within normal limits.

When I abduct him out to 90 degrees and internally and externally rotate the left shoulder, I can feel some very fine crepitus and on one occasion I could feel a little crack coming from the shoulder area. This test rubs the rotator cuff under the acromion.

Forearm measurements: 10-3/4 inches on the right and 10-1/2 inches on the left. Biceps measurements: 12-1/2 inches on the right and 12-1/4 inches on the left. This is a normal difference between dominant right and nondominant left sides.


**DIAGNOSIS:** Impingement syndrome secondary to multidirectional instability of the left shoulder.


**SUMMARY:**

Permanent and stationary (MMI):

It is my opinion Mr. Duarte is permanent and stationary (MMI) and probably was at the time Dr. Ma declared him so.

**RE: JOSE DUARTE**
October 24, 2005
Page Nine

Vocational rehabilitation:

He is physically able to return to his previous duty as a teacher.
He probably could not do his prior employment as a firefighter.

Work restrictions:

He has disability precluding heavy or repetitive use of his left
shoulder. He is specifically precluded from doing significant work
at or above shoulder height.

Causation and apportionment:

I have considered Labor Code Sections 4663 and 4664 in my
determination of causation and apportionment. I have also
considered the Escobedo vs. Marshall's decision. In fact, I have
that decision in front of me as I am dictating this report.

Mr. Duarte's disability is 100 percent due to the described injury
at the Oakland Unified School District.

On page three of the Escobedo vs. Marshall's decision, labeled
paragraph 4, The physician may apportion to preexisting problems
that were asymptomatic provided there is "substantial medical
evidence establishing that these other factors have caused
permanent disability." In other words, the Appeals Board wants a
cause and effect relationship.

Mr. Duarte had a single dislocation of his left shoulder while at the
firefighters academy. He was then able to go to work for the
California Department of Forestry for a season and was a volunteer
firefighter for a year without restrictions and without symptoms.

As opposed to Ms. Escobedo in her case who had what the Appeals
Board referred to as a "trivial injury," Mr. Duarte had a significant
injury when struck by a 200 pound out of control student. He did
not sustain another dislocation with that injury, nor does he have
the condition of recurrent dislocation. I see no evidence for

**RE: JOSE DUARTE**
October 24, 2005
Page Ten


"substantial" causation prior to the specific injury of December 2003.


Future medical treatment:

He may require continuing medical care including physician's visits, analgesic drugs, steroid injections, physical therapy and surgical treatment. If he is having enough symptoms, he certainly should go back to see Dr. Ma. He would probably need an MRI and possibly arthroscopic surgery. That would be a decision that the Applicant and his treating physician should make.

The ACOEM Guidelines discussed shoulder problems up to three months postinjury or special studies and do not apply in this case. There is probably no specific peer review guidelines for a chronic shoulder problem such as this. I am giving you what would be consensus treatment.


Factors of disability:

There are no objective factors of disability other than definite mild laxity of the left shoulder.

He has subjective factors of disability of virtually continuous minimal pain in his left shoulder, increasing to intermittently slight with any significant use of the left shoulder. If he were to go to a job involving heavy lifting, heavy pulling or significant overhead use he would have frequent moderate to severe pain.


I declare under penalty of perjury that the information contained in this report and its attachments, if any, is true and correct to the best of my knowledge and belief, except as to information that I have indicated I received from others. As to that information, I declare under penalty of perjury that the information accurately describes the information provided to me and, except as noted herein, that I believe it to be true.

I further declare under penalty of perjury that I have not violated Labor Code Section 139.3.

**RE:  JOSE DUARTE**
October 24, 2005
Page Eleven


The time spent performing the evaluation is in compliance with the guidelines established by the Industrial Medical Council.

Over 75% of my time is devoted to medical treatment annually.

Joseph Anthony Matan, M. D.
JAM:mt3
Date:  October 24, 2005
Contra Costa County

cc:

Michael P. Mullen, Esq.
1480 Moraga Road
Moraga, CA  94556

JT2 Integrated Resources
P. O. Box 70410
Oakland, CA  94612

# EXH. P



**TheStandard**
*Positively different.*

Employee ̄fits Dept.
900 SW Fiftr Avenue
Portland OR 97204-1235
(800)368-1135

(SERIES 39)
**168388**

$\frac{24-22}{1230}$ 01

| Ref. Number | Date | Amount |
|---|---|---|
| 00085058-014 | 02/02/2006 | $85.68 |

Eighty five ************************************** and 68/100 DOLLARS

Pay
To The
Order Of

JOSE DUARTE
5319 BROADWAY TERRACE NO 103
OAKLAND   CA   94618

STANDARD   INSURANCE   COMPANY

US Bank
24-Hour Banking
1-800-673-3555

⑈168388⑈ ⑆123000220⑊ 15360000634?⑈

Please detach and save this for your records. Not valid six months after issue date. For reissue return to:
Standard Insurance Company, Employee Benefits Dept., 900 SW Fifth Ave, Portland OR 97204-1235

STATEMENT DATE: FEB  2, 2006
MEMBER NAME: JOSE DUARTE                    MEMBER: *********
 GROUP NAME: OAKLAND UNIFIED SCHOOL DIST          GROUP: 10023412
      CLAIM: 00085058-014                      CONTRACT: 614371
OUR RECORDS SHOW THE TAXABLE % OF YOUR BENEFITS IS:  100.00%

BENEFIT CALCULATION FOR PERIOD FROM 02/01/2006 TO 02/02/2006   0 MONTH(S)  2 DAY

LONG TERM DISABILITY:                                    $85.68

NET BENEFIT                                              $85.68

ADJUSTED NET BENEFIT:                                    $85.68

PAYMENT AMOUNT:                                          $85.68

CHECK AMOUNT:                                            $85.68

39-168388

EXH. 6

STATE OF CALIFORNIA - HEALTH AND HUMAN SERVICES AGENCY                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF SOCIAL SERVICES**                                                     S05/RRSIDH
**Disability Determination Service Division**
PO BOX 24225
OAKLAND, CA 94623
Hearing Impaired Only: Call 711-California Relay Service or TDD 866-806-7284

March 12, 2007

JOSE ALFREDO DUARTE MIRANDA
5319 BROADWAY TERRACE
APT 103
OAKLAND CA 94618

                                    SSN:  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
                        DDS CASE NUMBER:  610132
                        CONTRACT NUMBER:  2216362

This is to remind you of your examination scheduled with:

              HEALTH ANALYSIS INC
              424 40TH ST
              OAKLAND CA 94612
              Telephone: (800) 528-4656
              On 03/19/2007 at 1:00 P.M.
              for a  exam.

In order for this agency to evaluate your claim, you must keep this appointment. The cost of
the examination will be paid by this agency. The examination is for evaluation only, not
treatment.

All the instructions in the original appointment letter still apply. Please bring a picture
identification to the examination.

IF YOU FAIL TO APPEAR FOR THIS APPOINTMENT WITHOUT GOOD CAUSE, THE
DECISION WILL BE MADE BASED ON THE INFORMATION CURRENTLY IN YOUR CASE
AND YOU MAY BE FOUND NOT DISABLED OR BLIND.

If you have been sent to a medical or mental evaluation for a  Medi-Cal disability claim within
the last 6 months, please call me immediately at the number below.

If for any reason you cannot keep this appointment, telephone me immediately at
**(510) 622-3728**. You may call collect, station-to-station through the operator.  If you
are a hearing-impaired person using TDD equipment, you may call the number listed
on the top of this page.

RAJEEV R SIDHER/K41, Disability Eval. Analyst I
c: Harvey Sackett

CEF C06 (01/07)                                            **006010**

04/06/2007 15:46 FAX 8313732.    HEALTH ANALYSIS    MA OAKLAND    ☑023

# HEALTH ANALYSIS INCORPORATED

## PSYCHOLOGICAL EVALUATION

Name:               **Jose Duarte Miranda**
SSN:                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
Date of Birth:       10/8/65
Date of Assessment:  3/19/07
Clinic:             Oakland

## VITAL SIGNS
Height: 69 inches.    Weight: 166 pounds.    Blood Pressure: 120/80.    Pulse: _72_

## TESTS ADMINISTERED
Rey 15-Item Memory Test-II
Wechsler Adult Intelligence Scale-III (WAIS-III)
Bender-Gestalt Test
Wechsler Memory Scale-Revised (WMS-R) & Wechsler Memory Scale-III (WMS-III):
    Selected Subtests

## TEST DATA –
### REY 15-ITEM MEMORY TEST-II:
The claimant took quite a bit of time to reproduce the symbols and numbers, but his performance did not indicate that he was malingering in any way.

### WAIS-III:

| Verbal | Performance |
|---|---|
| Vocabulary | Picture Completion |
| Similarities | Digit Symbol |
| Arithmetic | Block Design |
| Digit Span | Matrix Reasoning |
| Information | Picture Arrangement |
| Comprehension | |

Verbal IQ: 104    Performance IQ: 89    Full Scale IQ: 98

### BENDER-GESTALT TEST:
The claimant's Bender-Gestalt was very well organized, but very slowly done. In fact, on Figure 7, which is somewhat complicated, the claimant appeared almost paralyzed with his obsessive concentration and desire for perfection. However, the profile does not reflect any brain damage or severe anxiety. It does suggest obsessive-compulsive traits and slowness of reaction time and work.

**WMS-R & WMS-III** (Tests from each edition are used by this examiner):
I.    Mental Control
        (a) Claimant counted slowly but accurately from 20 backwards;
        (b) Claimant recited the alphabet;
        (c) Claimant counted slowly by threes from 1 to 40.

RE: Josa Duarte Miranda
SSN: 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    Page 2

11.    Verbal Reproduction – The claimant gave several accurate facts for both Story A and Story B, but his memory processes seemed to be below his measured intelligence. He appeared to be somewhat bewildered and "frozen" when given stimuli verbally and asked to recall these.

III.    Visual Reproductions – The claimant's performance on this test was quite accurate and much better than his performance on the Verbal Reproduction subtest.

## BEHAVIORAL OBSERVATIONS

The claimant is a pleasant looking, 41-year-old, Latino male. He was quite friendly and open during the evaluation, but had an eye stare. He worked painfully slowly on some of the testing tasks. He seemed highly perfectionistic and obsessive-compulsive. He also appeared to be attempting to control himself in many of his movements, and he could be said to be over-controlled. The examiner wanted to find out more about the severe beating the claimant received in a school classroom, but when prodded to talk about it, the claimant shivered and shook and had a very contorted and negative response to the memories of this incident.

## MENTAL STATUS AND ASSOCIATED CRITICAL HISTORY

The claimant was well oriented to time, place, and person. His reaction time was quite slow during the testing. At times he seemed dissociated from the situation.

The claimant was beaten severely on December 3, 2003 while teaching at the School for Social Responsibility. Apparently, his right shoulder was quite damaged. Dr. Ma at the University of California San Francisco Shoulder Clinic has seen the claimant, as has Dr. Anthony Mattan. Dr. Susan Sloman (psychologist) and Dr. Jerome Goldstein, both indicate that the claimant is suffering from a severe Posttraumatic Stress Disorder and may be incapable of doing consistent and productive work in a vocational context. Notes by Dr. Sloman indicate that the claimant was an extremely optimistic and trusting person, but the beating seemed to have fractured his world view. She indicated that the trauma of being assaulted has left the claimant dysfunctional and with Posttraumatic Stress Disorder. She indicated that the claimant has "poor memory and intellectual functioning." She also noted, "He has a delusion of imposing on others." She indicated that he has difficulty focusing, is withdrawn, is somewhat distrustful of others, and that his friendships have diminished. A record by Dr. Goldstein dated 10/12/05 indicated that the claimant "has been seen at the San Francisco Clinical Research Center since December 9, 2004. His diagnosis is Posttraumatic Stress Disorder with significant depression. Due to this condition, he has a definite lack of concentration, impaired energy, nightmares, flashbacks, memory loss, and anxiety."

The claimant denied hallucinations. He denied suicidal ideation. Except for some marital counseling prior to his divorce, the claimant has not received mental health treatment.

The claimant stated that the school fired him when he took out a restraining order on the two boys who beat him. Apparently, nothing happened to these students. The claimant was working for a title company, but was fired because of his slowness. He noted, "I couldn't deal with complicated directions and I had blackouts, which took me off task." Of note, the claimant reportedly had no psychiatric problems before his severe beating and was apparently productive without any issues of incompetence or failure to remember things.

The claimant stated that he generally sleeps well, but his shoulder pain does interfere with his sleep. His nightmares have gone away for the most part, though he might have a nightmare and feelings of

RE: Jose Duarte Miranda
SSN: 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

Page 3

terror once a month. He stated that his appetite is good. He lives alone, but is helped by his family. The claimant listens to folk music. He spends a lot of time with his mother, who is frail. There seems to be a reciprocal nurturance between the claimant and his mother. The claimant stated that he has friends. He goes out to eat at restaurants.

The claimant reported that his biggest problems are short-term memory impairment and learning difficulties. He stated, "I can't express or recall what I know." This appears to be somewhat parallel to aphasia, but there is no indication that the claimant had any brain insult. Hence, his inability to recall things that he knows is probably related to emotional and mental numbness.

## PSYCHIATRIC DIAGNOSIS

| AXIS I | 309.81 | Posttraumatic Stress Disorder, Chronic |
|--------|--------|---------------------------------------|
| AXIS II | V71.09 | No Diagnosis on Axis II |
| AXIS III | | Right Shoulder Injury |
| AXIS IV | | Severe Stress |
| AXIS V | | GAF = 60 |

## SUMMARY AND RECOMMENDATIONS

The claimant is a 41-year-old, Latino male. He appeared cooperative and genuine during the evaluation. On the WAIS-III, his Verbal IQ score fell at the high end of the low average range, while his Performance IQ score fell within the average range. His Full Scale IQ score of 98 placed his intellectual functioning in the average range. However, he was extremely slow in performing testing tasks, was somewhat dissociative, and showed some memory problems. He seemed extremely obsessive-compulsive, perfectionistic, and emotionally numbed, though he was friendly and articulate. When asked about the assault that occurred in 2003, it was clear that the claimant could not think about the incident without severe mental and physical reactions. His ruminations and nightmares have slowly abated, but according to Dr. Sloman and Dr. Goldstein, the claimant has been severely impaired by the assault.

Based on the claimant's history and clinical presentation as well as the reviewed records, he appears to be impaired in his ability to return to teaching. He would have difficulty in any situation involving the execution of even simple tasks in a consistent manner. He would be able to interact appropriately with co-workers, supervisors, and the public. It is possible that over time the claimant may overcome some of his slowness, terror, and emotional numbness. The injury to the claimant's right shoulder might also be an impairing factor with respect to his ability to return to work. This is deferred to medical opinion.

If disability is approved, the check can be sent directly to the claimant.

Thank you for referring this claimant's psychological assessment to our clinic. Please let me know if I may be of further assistance.

MORTON FELIX, Ph.D.
Clinical Psychologist
CA License PSY 3336

MF/sb

EXH. A

STATE OF CALIFORNIA - HEALTH AND HUMAN SERVICES AGENCY                    ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF SOCIAL SERVICES**                                        S05/RRSIDH
**Disability Determination Service Division**
PO BOX 24225
OAKLAND, CA 94623
Hearing Impaired Only: Call 711-California Relay Service or TDD 866-806-7284

March 9, 2007

JOSE ALFREDO DUARTE MIRANDA
5319 BROADWAY TERRACE
APT 103
OAKLAND CA 94618

                                          SSN:  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
                          DDS CASE NUMBER:  610132
                          CONTRACT NUMBER:  2218845

Your claim for disability benefits under the Social Security Act has been reviewed and
more information is needed about your condition. Therefore, it is necessary that you
be examined, at NO COST TO YOU, by:

                    HEALTH ANALYSIS INC
                    424 40TH ST
                    OAKLAND CA 94612
                    Telephone:  (800) 528-4656

An appointment has been scheduled for you on: 03/27/2007 at 11:15 A.M. for a
Orthopedist exam. Our agency will pay only for the authorized examination or test
and for certain related travel expenses.

BE SURE TO READ ANY SPECIAL INSTRUCTIONS ATTACHED TO THIS
LETTER.

Please bring a picture identification to the examination. At the time of the
examination or test, it may be determined that other tests are also needed or that a
scheduled test is not needed or should not be done. The doctor(s) will inform us of
any changes.

The doctor(s) will not make a decision about your claim, but will only send a medical
report to us regarding your present condition.

YOU ARE RESPONSIBLE FOR COMPLYING WITH THE FOLLOWING. FAILURE
TO DO SO WILL RESULT IN A DECISION BEING MADE BASED ON THE
INFORMATION CURRENTLY IN YOUR CASE AND WE MAY FIND THAT YOU ARE
NOT DISABLED.

   1. You must appear for your examination(s).
   2. **If more than one examination is scheduled, you will receive a separate
      letter for each one. You must go to all of the examination(s).**

CEF C01 (01/07)

                                                        007001

DEA:  R    )H
DDS CASE NUMBER:  6ᵣ~ 32
CONTRACT NUMBER:  2218845

3. If you are unable to appear for the examination, you must tell us why you are unable to go at least two (2) days prior to the scheduled appointment date.
4. IMPORTANT: If eyeglasses and/or contact lenses are worn, please bring them to the appointment. Also bring all of your current prescription medications in their original containers.

Since this examination is at no cost to you, please do NOT agree to any arrangement that would require payment from you or any other agency (such as using your Medi-Cal Benefit Identification Card).

The enclosed leaflet provides information on why a special medical examination is needed and what your and the doctor's roles are in providing this evidence to us.

You must complete the top part of the enclosed form to let us know that you will keep the appointment. If you complete the bottom part of the same form, we will send a copy of the examination report and/or test to your doctor.

If you have been sent to a medical or mental evaluation for a Medi-Cal disability claim within the last 6 months, please call me immediately at the number below.

If you need to contact me concerning the exam(s), you may call me at **(510) 622-3728**. You may call collect, station-to-station through the operator. If you are a hearing-impaired person using TDD equipment, you may call the number listed on the first page.


RAJEEV R SIDHER/K41, Disability Eval. Analyst I

Enclosures

c: Harvey Sackett

007003

# HEALTH ANALYSIS, Inc.

MIRANDA, Jose Duarte                                    March 27, 2007
SSN: 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                                        Oakland

**MEDICAL RECORD REVIEW:** Medical record was reviewed.

**CHIEF COMPLAINT:** Neck pain and left shoulder pain.

**HISTORY OF PRESENT ILLNESS:**  This is a 41-year-old male who was here for a
consultative orthopedic disability evaluation.  Claimant had his chief complaints ever since
12/4/2003, "I was attacked by a student".  Regarding his complaint of left shoulder pain, as per
medical record review, claimant has a history of left shoulder dislocation in 1997, and this was
reduced under sedation.  By history, claimant did have X-rays done of his left shoulder on March
2004.  As per medical record review, orthopedic evaluation performed by Joseph Anthony
Matan, M.D., it is stated in his report, "diagnosis – impingement syndrome secondary to multi-
directional instability of the left shoulder".  Claimant was told that he will need operation to his
left shoulder in the future.

Regarding his complaint of neck pain, he does not know if he ever had any radiologic studies.
Claimant has no problems sitting, standing or walking.  He is able to walk up and down the
stairs.  Claimant lives in a first floor apartment.  There are 12 steps leading to the front door.
Regarding his activity of daily living, he is independent in his dressing.  He is able to cook and
prepare his own meals.  He is independent in his feeding.  He does no grocery shopping.  He is
independent in his hygiene.  Regarding housework, he does wash the dishes.  He does take out
the garbage.  He does vacuum.  He does sweep and mop the floor.  He does not do laundry.  He
does drive and put gasoline in his car.  Claimant drove to this appointment.

**PAST MEDICAL HISTORY**: Unremarkable.

**MEDICATIONS:** Celexa and Ibuprofen.

**PREVIOUS ORTHOPEDIC SURGERIES:** None.

**WORK HISTORY:**   Last worked December 2004 as a legal assistant.  The reason why
claimant is not working is not related to any orthopedic issues.

**PHYSICAL EXAMINATION:** All active ROM and movements performed by the claimant are
completely voluntary and with no assistance.  Height 5'9 ½ inches, weight 168 lbs., blood
pressure 112/74, pulse 76.

General Appearance: This is a well developed, well nourished male who was noted to be sitting
in the waiting room comfortably.  He was able to get off the chair and walk into the exam room.

Gait:  Claimant ambulates with no ambulatory aid.  His gait was normal with normal cadence,
gait velocity and stride length.  There was no limp.  He was sitting comfortably during the
history taking.  He was able to undress, bend over, take off his shoes normally and without any

04/13/2007 11:04 FAX 8313752              HEALTH ANALYSIS                                    ☑009

MIRANDA, Jose Duarte                                                    March 27, 2007
SSN: 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                                                        Page 2

discomfort. He was able to rise from the chair and stand erect normally. He was able to squat approximately three-quarters of the way down and come to an upright position normally. He was able to get on and off the exam table normally.

Neck: Inspection normal. Active ROM – flexion approximately 50 degrees, extension 30 degrees, right and left lateral bending 20 degrees and right and left rotation 40 degrees.

Trunk and Thoracolumbar Spine: Inspection normal. Active ROM – from a neutral position, he was able to flex to approximately 60 degrees, right and left lateral bending 20 degrees.

Upper Extremities: Inspection normal. Examination of the left shoulder – inspection normal. Upon palpation, claimant complains of tenderness at the posterior anterior aspect. Active ROM – he was able to forward flex and abduct both shoulders to 150 degrees. He has full active ROM of both elbows in flexion and extension, full active ROM of both wrists in flexion and extension, and is able to make a fist normally with both hands. There are no joint deformities noted bilaterally. Right arm circumference 11 ¾ inch, left arm circumference 12 inch measured 4 inches from the olecranon process. Right forearm circumference 10 ¾ inch, left forearm circumference 10 ½ inch measured 2 inches from the olecranon process.

Manual motor muscle testing: Right shoulder 5/5, left shoulder 4-/5 limited by pain, bilateral elbow flexors and extensors 5/5, bilateral wrist flexors and extensors 5/5, right grip strength 5/5, left grip strength 5/5, bilateral pinch strength normal. Fine finger movements are intact bilaterally. He was able to pick up a coin normally with both hands. He was able to write with his right hand and his handwriting was legible. Sensory examination normal. Deep tendon reflexes: biceps jerk 2+ bilaterally, triceps jerk 1+ bilaterally, brachioradialis jerk 1+ bilaterally.

Lower Extremities: Inspection normal. Active ROM – he was able to extend both hips to neutral and fully flex both hips. He has full active ROM of both knees in extension and flexion, full active ROM of both ankles in dorsiflexion and plantar flexion. There were no joint deformities noted bilaterally.

Manual motor muscle testing: Hips bilaterally 5/5, bilateral knee extensors and flexors 5/5, bilateral ankle dorsiflexors and plantar flexors 5/5. Sensory examination is normal bilaterally. Thigh circumference, calf circumference appears to be equal. Leg lengths are equal. Deep tendon reflexes: Knee jerk 2+ bilaterally and ankle jerk 2+ bilaterally.

**DIAGNOSTIC IMPRESSION**
1. Chronic neck pain, possible musculoligamentous/soft tissue pain, possible cervical disc disease and/or degenerative changes of the cervical facet joints, possible radiation of pain from the left shoulder, or any combination of these.
2. Chronic left shoulder pain. As per medical record review, claimant carries a diagnosis of "impingement syndrome secondary to multi-directional instability of the left shoulder".

**FUNCTIONAL CAPACITY ASSESSMENT:** There is no gross visual impairment. Claimant is able to hear and understand normal conversational speech. There is no speech impairment.

04/13/2007 11:04 FAX 831          HEALTH ANALYSIS                          ☑010

MIRANDA, Jose Duarte                                    March 27, 2007
SSN: 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                                        Page 3

There is no restriction in standing and/or walking. There is no restriction in sitting. There is no restriction in stooping. There is no restriction in crouching, kneeling or squatting. There is no restriction in climbing stairs. Climbing ladders and crawling should be limited to occasionally.

There is no restriction in performing pushing and pulling right arm/hand control. In spite of his complaint of left shoulder pain, I feel that he should still be able to perform pushing and pulling left arm/hand control on an occasional plus basis. There is no restriction in performing bilateral pushing leg/foot control. He should be able to lift and carry frequently 10 lbs. and occasionally 20 lbs. There is no limitation in reaching using his right shoulder. Reaching using his left shoulder should be limited to occasionally, and he should avoid reaching over the left shoulder level. There is no limitation in his ability to perform gross and fine manipulative tasks with both hands.

Regarding his ability to travel, he does drive. He is also able to take public transportation.

Thank you for the referral of this claimant. If I can be of further assistance, please notify me.

CP:sh

CALVIN PON, M.D.
Board Eligible Physical Medicine & Rehabilitation
Orthopaedics

007955

EXH. $\underline{I}$

STANDARD INSURANCE COMPANY



TheStandard

**Contact Us**

## Contacts for ZIP Code  94618

### Employee Benefits Sales & Service Office:

San Francisco Sales & Svc Off
1600 Riviera Ste 385
Walnut Creek, CA  94596
Toll-Free Phone: (800) 801-5092
Direct Phone: (925) 947-3950
Fax Number: (925) 947-0728
E-mail: sanfranciscogo@standard.com

### Retirement Plans Sales & Service Office:

San Francisco Regional RP
1600 Riviera Ste 150
Walnut Creek, CA  94596
Toll-Free Phone: (800) 221-1773
Direct Phone: (925) 947-1770
Fax Number: (925) 947-0433
E-mail: sanfranciscorp@standard.com

### Individual Sales & Service Office:

Standard Insurance Company
1100 SW Sixth Ave.
Portland, OR  97204
Toll-Free Phone: (800) 247-6888

Search for offices in another ZIP code:

[        ]    Submit

Copyright © 2005 StanCorp Financial Group, Inc. All rights reserved.
Privacy Policy and Legal Notices

**EXHIBIT  B**

1   Shawn Hanson (State Bar No. 109321)
    Katherine S. Ritchey (State Bar No. 178409)
2   Emily E. Booth (State Bar No. 248008)
    JONES DAY
3   555 California Street, 26th Floor
    San Francisco, CA 94104
4   Telephone:   (415) 626-3939
    Facsimile:   (415) 875-5700
5
    Attorneys for Defendant
6   THE STANDARD INSURANCE COMPANY

7

8                    **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                    **COUNTY OF ALAMEDA – UNLIMITED JURISDICTION**

10

11  | JOSE DUARTE, | **CASE NO. RG 08-369292** |
    | --- | --- |
12  | Plaintiff, | **(Assigned to Judge Kenneth Mark Barr)** |
13  | v. | GENERAL DENIAL AND DEFENSES OF |
    | | STANDARD INSURANCE COMPANY TO |
14  | THE STANDARD INSURANCE | PLAINTIFF'S COMPLAINT |
    | COMPANY, et al., | |
15  | Defendants. | |
16  | | Action filed:   February 1, 2008 |
    | | Trial Date:      Not set |
17

18

19          Pursuant to section 431.30(d) of the California Code of Civil Procedure, defendant

20  Standard Insurance Company ("Standard") generally denies each and every allegation of

21  PLAINTIFF'S Complaint filed February 1, 2008.

22          Having answered PLAINTIFF'S Complaint, Standard alleges its defenses. Each defense

23  is asserted as to all causes of action against Standard. By setting forth these defenses, Standard

24  does not assume the burden of proving any fact, issue, or element of a cause of action where such

25  burden properly belongs to PLAINTIFF. Moreover, nothing stated herein is intended or shall be

26  construed as an acknowledgement that any particular issue or subject matter is relevant to

27  PLAINTIFF'S allegations.

28

                                              1

1

## **First Defense to Entire Complaint**

2

### **(Failure to State a Cause of Action)**

3     1.     The Complaint, and each cause of action, fails to set forth facts sufficient to state a

4     cause of action upon which relief may be granted against Standard and further fails to state facts

5     sufficient to entitle PLAINTIFF to the relief sought, or to any other relief whatsoever from

6     Standard.

7

## **Second Defense to Entire Complaint**

8

### **(Discharge of Obligations / Unjust Enrichment)**

9     2.     Standard has performed all obligations required by Standard Disability Policy, No.

10    614371-A ("Policy"). PLAINTIFF is not entitled to any additional payment pursuant to the

11    Policy and the payment of any additional amount, as demanded by PLAINTIFF, would amount to

12    a windfall and unjust enrichment.

13

## **Third Defense to Entire Complaint**

14

### **(Waiver)**

15    3.     Standard is informed and believes that, at all times relevant to the matters alleged

16    in the Complaint, PLAINTIFF was fully informed of the alleged rights he now asserts.

17    PLAINTIFF has acted in a manner inconsistent with the assertion of those rights and,

18    accordingly, has waived the claims he now asserts.

19

## **Fourth Defense to Entire Complaint**

20

### **(Exclusions and Limitations of Coverage)**

21    4.     PLAINTIFF'S recovery, if any, is limited by the terms and conditions of the

22    Policy, including exclusions and limitations of coverage.

23

## **Fifth Defense to Entire Complaint**

24

### **(Estoppel)**

25    5.     PLAINTIFF is not entitled to benefits under the terms and conditions of the

26    Policy, and Standard is informed and believes that PLAINTIFF was informed of any rights and

27    claims that he may have against it. PLAINTIFF conducted himself in such a way as to lead

28    Standard to believe that he relinquished any rights he had against Standard, and Standard has

2

1    relied upon this conduct to its detriment. PLAINTIFF, therefore, is estopped from seeking

2    damages or other relief based upon the allegations of the Complaint.

3                          **Sixth Defense to Entire Complaint**

4                              **(Mitigation of Damages)**

5        6.       Standard is informed and believes that PLAINTIFF has failed to mitigate his

6    damages, if any.

7                         **Seventh Defense to Entire Complaint**

8           **(Punitive Damages; Constitutionality of Punitive Damages)**

9        7.       PLAINTIFF is not entitled to the award of punitive damages insofar as that award

10   would violate Standard's due process or other rights under the United States Constitution, the

11   laws of the United States, or the Constitution or laws of the State of California. Standard further

12   states that PLAINTIFF fails to state sufficient facts to support the prayer for punitive damages

13   against Standard.

14                         **Eighth Defense to Entire Complaint**

15                             **(Statute of Limitations)**

16       8.       Standard is informed and believes that PLAINTIFF is barred from bringing some

17   or all claims by the applicable statutes of limitations, including but not limited to Cal. Code Civ.

18   Proc. §§ 337, 338, 339, Cal. Bus. & Prof. Code § 17208, as well as the contractual procedures and

19   limitations periods for actions at law and equity set forth in the Policy.

20                          **Ninth Defense to Entire Complaint**

21                       **(Plaintiff is not Real Party in Interest)**

22       9.       Standard is informed and believes that Plaintiff filed for bankruptcy and that the

23   claims at issue in this litigation were known to Plaintiff at the time of the bankruptcy and were

24   not disclosed to the bankruptcy trustee. Accordingly, Standard is informed and believes that

25   Plaintiff is not the real party in interest. Moreover, the doctrines of estoppel, waiver, unjust

26   enrichment and unclean hands bar any recovery by Plaintiff.

27                      **(Right to Assert Additional Defenses)**

28

3

1    10.    Standard hereby gives notice that it intends to rely on any additional affirmative

2    defenses that become available or apparent during discovery or at any other time during the

3    pendency of this case and, thus, reserves the right to amend its answer to assert such additional

4    defenses.

5         WHEREFORE, Standard prays for judgment as follows:

6    1.    That PLAINTIFF take nothing from Standard by his Complaint;

7    2.    That the Complaint be dismissed with prejudice as to Standard;

8    3.    That Standard recover its attorneys' fees and costs from PLAINTIFF as permitted

9    by law; and

10    4.    For such other and further relief as the Court may deem proper.

11

12    Dated: June\8\, 2008                    JONES DAY

13

14                                    By: _Emily Booth_____

15                                         Emily E. Booth

16                                    Attorney for Defendant
                                        THE STANDARD INSURANCE COMPANY
17

18    SFI-585224v1

19

20

21

22

23

24

25

26

27

28

4

1    **PROOF OF SERVICE BY HAND DELIVERY**

2    I, Lorraine France-Gorn, declare that I am a citizen of the United States and employed in

3    San Francisco County, California. I am over the age of eighteen years and not a party to the

4    within-entitled action. My business address is 555 California Street, 26th Floor, San Francisco,

5    California 94104-1500. On June 18, 2008, I served a copy of the within document:

6    **GENERAL DENIAL AND DEFENSES OF STANDARD INSURANCE
     COMPANY TO PLAINTIFF'S COMPLAINT**
7

8    by placing the document(s) listed above in a sealed envelope and arranging for such envelope to

9    be delivered, with delivery time prior to 5:00 p.m. on the date specified above, to the person and

10   address as set forth below:

11   **Jose Duarte
     5319 Broadway Terrace, #103
12   Oakland, CA 94618**

13   I declare that I am employed in the office of a member of the bar of this court at whose

14   direction the service was made and that this declaration was executed on June 18, 2008 at San

15   Francisco, California.

16   Lorraine France-Gorn

17

18

19

20

21

22

23

24

25

26

27

28

**GENERAL DENIAL AND DEFENSES OF STANDARD INSURANCE COMPANY TO PLAINTIFF'S COMPLAINT**

SFI-586166v1