1  Shawn Hanson (State Bar No. 109321)
   shanson@jonesday.com
2  Katherine S. Ritchey (State Bar No. 178409)
   ksritchey@jonesday.com
3  JONES DAY
   555 California Street, 26th Floor
4  San Francisco, CA  94104
   Telephone:     (415) 626-3939
5  Facsimile:     (415) 875-5700

6  Attorneys for Defendant
   THE STANDARD INSURANCE COMPANY
7

8                    UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                    SAN FRANCISCO DIVISION

11

12  **JOSE DUARTE,**                    | Case No. CV-08-03021-JSW

13             **Plaintiff,**

14        **v.**                        | Hearing:     August 29, 2008
                                        | Time:        9:00 a.m.
15  **THE STANDARD INSURANCE**          | Courtroom: 2, 17th Floor
    **COMPANY, a subdivision of STANCORP,** | Before the Honorable Jeffrey S. White
16  **and Does 1 through 50,**

17             **Defendants.**

18

19      **STANDARD'S OPPOSITION TO PLAINTIFF'S MOTION FOR REMAND**

20

21

22

23

24

25

26

27

28

1    **I.    <u>Introduction and Summary of Argument</u>**

2         Plaintiff's motion to remand this case to state court for lack of jurisdiction should be

3    denied.  Removal was proper because this Court has diversity jurisdiction.

4         The amount in controversy exceeds $75,000, which is evident from the complaint.

5    Plaintiff asserts that, at a minimum, approximately $44,000 is owed to him for past disability

6    benefits, but he also asserts that this Court issue injunctions requiring Standard Insurance

7    Company ("Standard") to pay him disability benefits until the age of 65 and alleges multiple other

8    remedies, including punitive damages and attorneys fees.  In Plaintiff's Motion for Remand,

9    however, he asserts that he "places no dollar figures" on additional remedies in his complaint,

10   suggesting that he can avoid removal by failing to plead a specific amount for certain claimed

11   damages.  Motion for Remand at 4.  This argument is contrary to the law.  *See, e.g., Maiolino v.*

12   *Unumprovident Corp.*, 2004 U.S. Dist. LEXIS 7556 (N.D. Cal. Apr. 27, 2004) ("Although

13   plaintiff argues that the failure to specifically plead the jurisdictional requirement in his complaint

14   is sufficient to fall below the $ 75,000 threshold, the complaint still seeks enforcement of a policy

15   that would pay more than $ 4,000 per month, as well as seeking punitive damages.  Plaintiff does

16   nothing to demonstrate that the damages he seeks cannot, with any certainty, meet the

17   requirement for diversity jurisdiction.").  His combined allegations establish that the amount in

18   controversy exceeds $75,000.

19        Complete diversity exists because Plaintiff is a citizen of California and Standard is a

20   citizen of Oregon.  Plaintiff's argument to the contrary, that Standard has substantial sales in

21   California, does not defeat complete diversity in this case.  Motion for Remand at 6-7.  If it did,

22   most corporations would be citizens of California for diversity purposes.  As this Court has held,

23   "[i]t is highly unlikely that Congress intended every national corporation that does more business

24   in California than in any other state, by virtue of that fact alone, to be deemed a citizen of

25   California for purposes of diversity jurisdiction."  *Ho v. Ikon Office Solutions, Inc.,* 143

26   F.Supp.2d 1163, 1164 (N.D. Cal. 2001).

27        Likewise, if Plaintiff is correct that overlapping officers and directors between a parent

28   and a subsidiary establishes alter ego liability, then scores of corporations will cease to have

Defendant's Opposition to Plaintiff's Motion
for Remand; CV-08-03021-JSW

1   distinct legal status from their parent corporations.  Motion for Remand at 7.  Again, Plaintiff's

2   argument runs afoul of prevailing jurisprudence; separately incorporated businesses are presumed

3   to have separate principal places of business, and sharing a corporate officer does not alter that

4   presumption.  *See, e.g., Powers v. Fox Television Stations, Inc.,* 907 F.Supp. 719, 723-24

5   (S.D.N.Y. 1995).

6   **II.    Procedural Background**

7        Plaintiff filed a complaint in the Superior Court of the State of California for the County

8   of Alameda (the "Superior Court"), entitled *Jose Duarte v. The Standard Insurance Company, a*

9   *subdivision of Stancorp; and DOES 1 through 50*, Case No. RG08369292 on February 1, 2008.

10  Plaintiff alleged that Standard improperly failed to pay him disability benefits.

11       On June 18, 2008, Standard filed its General Denial and Defenses in the Alameda County

12  Superior Court and timely removed the case to this Court.  Standard's notice of removal was

13  supported by specific facts asserted in the notice and the Declaration of Rebecca J. Jeffrey

14  ("Jeffrey Decl.")

15  **III.    Argument**

16       The requirements for diversity jurisdiction are an amount in controversy exceeding

17  $75,000 and diversity of citizenship.  28 U.S.C. § 1332.  Standard meets both requirements.

18       A.    Standard has Met its Burden of Establishing the Requisite Amount in Controversy

19       Diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of

20  $ 75,000, exclusive of interests and costs . . . ."  28 U.S.C. § 1332(a).  Plaintiff concedes that, at

21  *minimum*, $44,795.52 is at stake here for past benefits.  Motion for Remand at 4.  Additionally,

22  however, he "places no dollar figures for each" of the other remedies asserted in his Complaint.

23  Motion for Remand at 4.  Thus, Plaintiff has failed to plead with specificity the amount in

24  controversy.

25       Motions for Remand are evaluated under the preponderance of the evidence test when the

26  amount in controversy has not been specified by the plaintiff.  *See Sanchez v. Monumental Life*

27  *Ins. Co.,* 102 F.3d 398, 404 (9th Cir. 1996).[1]  Standard meets its burden despite Plaintiff's attempt

28       [1] Moreover, in *Maiolino,* the Northern District of California held that in a motion for
    remand, with facts similar to those here, "the burden rests with the plaintiff, who is the party

Defendant's Opposition to Plaintiff's Motion
for Remand; CV-08-03021-JSW

1   to manipulate the amount in controversy in his Motion for Remand.  For example, Plaintiff asserts

2   that the amount in controversy is less than $75,000, but he also, paradoxically, asserts that the

3   claimed amount for other remedies is open-ended.  Motion for Remand at 4.  Plaintiff's refusal to

4   commit to a specific amount of damages continued with his response to a letter asking him to

5   confirm the amount of his damages (Hanson Decl. Ex. 1) and Defendant's First Set of Requests

6   for Admission, (Hanson Decl. Ex. 2).  After being asked to confirm that Plaintiff was not seeking

7   more than $44,795.52 (a straightforward request in light of his Motion for Remand), Plaintiff

8   avoided affirming or denying the Requests for Admission.  Hanson Decl. Ex. 3.   Regardless of

9   this sophistry, the amount in controversy is determined by Plaintiff's complaint.  *See Scovis v.*

10  *Henrichsen (In re Scovis)*, 249 F.3d 975, 986 (9th Cir. 2001); *St. Paul Mercury Indem. Co.  v.*

11  *Red Cab Co.,* 303 U.S. 283, 293 (1939) ("[E]vents occurring subsequent to removal which reduce

12  the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not

13  oust the district court's jurisdiction once it has attached.").

14          Plaintiff's Complaint confirms that much more is at stake here than $44,795.52.[2]  In

15  addition to Plaintiff's claim for past benefits for Breach of Contract, he pled five other causes of

16  action: Breach of the Implied Covenant of Good Faith and Fair Dealing; Breach of the Obligation

17  of Good Faith and Fair Dealing; Bad Faith Insurer Breach; Violation of California Civil Code

18  § 51, The Unruh Act; Unfair Competition; and Declaratory and Injunctive Relief Including

19  Specific Performance.  Complaint at ¶¶ 41 – 88.  Plaintiff also seeks multiple remedies, including

20  injunctions mandating the payment of future benefits, restitution and disgorgement of profits,

21  punitive damages, and attorneys' fees.  Complaint at ¶ 112-115.  Plaintiff admittedly "places no

22  dollar figures" for his remedies other than benefits.  Motion for Remand at 4.

23          Plaintiff's Complaint confirms that he seeks future benefits in addition to past benefits.

24  _____

    (continued…)

25  seeking remand" to demonstrate that the "amount in controversy cannot exceed $75,000."  2004

26  U.S. Dist. Lexis 7556 at *6.

27          [2] Plaintiff's own case explains why his argument fails.  In *Arrellano v. Home Depot*, the
    Court denied a motion for remand where, as here, the plaintiff offered no evidence that the
    arguments for the amount in controversy "are inflated or otherwise unreliable."  245 F. Supp. 2d

28  1102, 1108 (S.D. Cal. 2003).

Defendant's Opposition to Plaintiff's Motion
for Remand; CV-08-03021-JSW

1    For example, ¶ 93 of the Complaint asks the Court to "[i]ssue a permanent injunction mandating

2    that all Standard make prompt [sic] payment of disability benefits every month on or about the 1st

3    of the month," which indicates that Plaintiff is seeking not only past benefits, but prospective

4    relief.[3] This is consistent with ¶ 106, which asks the Court to "[d]eclare that Duarte satisfied the

5    requirements for payment of disability benefits to age 65." Thus, if Plaintiff is demanding a

6    monthly benefit of $1599.84 (¶ 110) until the age of 65, the amount in controversy far exceeds

7    $75,000.[4] Furthermore, Plaintiff's bad faith claims establish that future benefits are at stake

8    should he successfully prove these tort claims (¶¶ 49 -64); s*ee, e.g., Hangarter v. Provident Life*

9    *and Accident Insurance Co.,* 373 F.3d 998, 1012 (9th Cir. 2004) (confirming that under California

10   law, "future damages for bad faith claims based upon tort theories of liability are appropriate.").[5]

11   The amount in controversy far exceeds $75,000 when Plaintiff's bad faith claims are considered

12   because future benefits may be awarded if Plaintiff proves this allegation. *See, e.g., Albino v.*

13   *Standard Insurance Co*., 399 F. Supp. 2d 1334, 1340 (holding "that the amount in controversy is

14   met in this case because Plaintiff's future policy benefits could be awarded as compensatory

15   damages under her claim for tortious breach of the covenant of good faith and fair dealing.").

16         Plaintiff also seeks restitution and disgorgement of profits (Complaint at ¶ 112), punitive

17   damages (¶ 113), and attorneys' fees (¶ 114). These claims must be considered in calculating the

18   amount in controversy. *See Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150, 1156 (9th Cir. 1998)

19   (holding that attorneys fees that plaintiffs can recover as a matter of law must be considered by

20   the court in calculating the amount in controversy); *Brandt v. Superior Court (Standard Ins.)*, 37

21   Cal. 3d 813, 817 (1985) (a plaintiff can potentially recover attorneys' fees as a measure of

22   damages under a breach of the implied covenant of good faith and fair dealing, and attorneys' fees

---

23   [3] Additionally, ¶ 87 claims "Duarte has no adequate remedy at law for the injuries
24   suffered and *to be suffered in the future* in that it is impossible for him to calculate a sum of
     damages that will compensate them [sic] for the deprivation of their rights [sic] as alleged
25   herein." (emphasis supplied.)

26   [4] Plaintiff was 38 at the time of the injury for which he now seeks disability benefits.
     Complaint at ¶ 7. Thus, he seeks disability benefits for approximately 27 years, which amounts
27   to approximately $518,076 (not adjusted to reflect present value discounts).

28   [5] While Plaintiff's complaint claims this "is not a tort action" (¶ 6), he seeks not only
     future benefits, but also punitive damages (¶ 113) and attorneys' fees (¶ 114). None of these
     remedies are available for a breach of contract.

Defendant's Opposition to Plaintiff's Motion
for Remand; CV-08-03021-JSW

1   must also be considered by the court in assessing the amount in controversy of the action); *Surber*

2   *v. Reliance Nat'l Indem. Co.,* 110 F. Supp. 2d 1227, 1232 (N.D. Cal. 2000), citing *Richmond v.*

3   *Allstate Ins. Co*., 897 F. Supp. 447, 450 (S.D. Cal. 1995) (exemplary and punitive damages also

4   to be considered in determining amount in controversy).

5           There is ample support in cases from this Court and others that Plaintiff's claims for

6   punitive damages and attorneys' fees increase the amount in controversy here from the

7   $44,795.52 asserted in Plaintiff's Motion for Remand.  For example, punitive damages are likely

8   to be measured as a multiple of contract damages.  *State Farm Mut. Auto Ins. Co. v. Campbell*,

9   538 U.S. 408 (2003).  Even a one-to-one ratio will satisfy the amount in controversy here, if

10  awarded.  Likewise, attorneys' fees may be recovered by the Plaintiff; therefore, they should be

11  considered in assessing the amount in controversy here.   *Surber v. Reliance Nat'l Indem. Co*., 110

12  F. Supp. 2d 1227, 1232 (N.D. Cal. 2000).  The Ninth Circuit has upheld substantial jury awards

13  (from this very district) for punitive damages and attorneys' fees when the Plaintiff has

14  demonstrated breach of contract and bad faith against an insurer in disability benefits cases.

15  *Hangarter v. Provident Life and Accident Insurance Co.,* 373 F.3d 998, 1005 (9th Cir. 2004)

16  (upholding jury awards of $5,000,000 in punitive damages and $750,000 for attorneys' fees).

17  Even much smaller awards of attorneys' fees in policy benefits cases involving bad faith

18  allegations are substantial.  *McGregor v. Paul Revere Life Ins. Co.,* 369 F.3d 1099, 1102 (9th Cir.

19  2004) (affirming $11,886 in attorneys' fees).

20          Finally, and contrary to Plaintiff's argument, his failure to plead a specific amount of

21  damages in his Complaint should be construed in favor of removal, not against it.  *See Bosinger v.*

22  *Phillips Plastic Corporation*, 57 F. Supp. 2d 986, 989 (S.D. Cal. 1999) ("[A]s such evidence [to

23  show that the amount in controversy exceeds $75,000] may not always be available to a removing

24  defendant, to require such proof might defeat removal in an instance where a plaintiff declined to

25  plead a specific amount of damages and a defendant could not readily ascertain the approximate

26  amount of damages a plaintiff seeks within thirty days.  Moreover… the Court finds in Plaintiff's

27  silence, implicit support for Defendant's allegation as to the amount in controversy.").

28

Defendant's Opposition to Plaintiff's Motion
for Remand; CV-08-03021-JSW

1

        B.      <u>Standard has Met its Burden in Establishing Diversity of Citizenship</u>

2

3

           1.      The Parties are Diverse Regardless of Standard's Business Presence in California

4          Complete diversity must exist between the parties to support diversity jurisdiction.  28

5  U.S.C. § 1332.  Plaintiff alleged that he is a resident of Oakland, California.  Complaint ¶ 7.

6  Standard has dual citizenship for diversity purposes.  28 U.S.C. § 1332(c).  It is a citizen both of

7  the state where it was incorporated and the state where it has its primary place of business.  *Id.*

8  For purposes of both definitions, Standard is a citizen of Oregon.  *See* Jeffery Decl. ¶ 5.  Plaintiff,

9  however, attempts to defeat diversity jurisdiction by asserting Standard is also a citizen of

10  California.  Motion for Remand at 6.

11         Plaintiff is not the first to unconvincingly argue Standard is a citizen of California in an

12  effort to defeat diversity jurisdiction.  Motion for Remand at 5-6.  At least two federal district

13  courts in California have rejected similar arguments.  *See Albino v. Standard Ins. Co.,* 349 F.

14  Supp. 2d 1334, 1336 (C.D. Cal. 2004) (holding the percentage of Standard's employees and real

15  and personal property located in Oregon constituted "factors heavily favor[ing] Oregon as

16  containing a substantial predominance of [Standard's] business activities.");  *Jewett v. Standard*

17  *Ins. Co*., 2004 WL 2475553, *2 (C.D. Cal. 2004) (holding that although a slight plurality of

18  Standard's total revenues were generated in California, this was just one factor to consider in

19  determining Standard's principal place of business, and this factor was outweighed by the rest of

20  Standard's operations being located in Oregon).  It should come as no surprise that Standard, or

21  many other companies for that matter, derives the largest percentage of its business from

22  California.  "As the Northern District of California has persuasively noted, because California has

23  the largest population of any state in the union, it will naturally have more gross sales and more

24  customers than other states."  *Albino*, 349 F. Supp. 2d at 1338 (citing *Ho v. Ikon Office Solutions,*

25  *Inc.,* 143 F. Supp. 3d 1163, 1167 (N.D. Cal. 2001).

26

27

28

Defendant's Opposition to Plaintiff's Motion for Remand; CV-08-03021-JSW

1
2

        2.      Standard has Relied Upon Admissible Evidence to Demonstrate Standard's Citizenship

3
4
5
6
7
8
9
10
11
12
13
14
15
16

Plaintiff alleges that the declaration of Rebecca L. Jeffrey fails to establish that Standard is a citizen of California.  Although Standard does not concede that the Jeffrey Declaration is insufficient, in an abundance of caution, Standard files herewith supplementary declarations from those persons who provided the information to Ms. Jeffrey upon which she based her statements on information and belief.  *See* Declaration of Brent Stephens in Support of Defendant's Opposition to Plaintiff's Motion for Remand, Declaration of Cathy Tran in Support of Defendant's Opposition to Plaintiff's Motion for Remand; Declaration of Brent Mekvold in Support of Defendant's Opposition to Plaintiff's Motion for Remand; and Declaration of Molly Amano in Support of Defendant's Opposition to Plaintiff's Motion for Remand (collectively "Supplementary Declarations").  The Court may rely upon the Supplementary Declarations.  *See Barrow Dev. Co., Inc. v. Fulton Ins. Co.,* 418 F.2d 316, 318 (9th Cir. 1969).  "In *Barrow,* the court held that allegations in a removal notice that are defective in form, but not so lacking in substance, may be amended."  *Piazza v. EMPI, Inc.,* 2008 U.S. Dist. LEXIS 28136, *29 (E.D. Cal. February 28, 2008).

17
18
19
20
21
22
23
24
25
26

The Supplementary Declarations leave no doubt that Standard is a citizen of Oregon. Standard was, at the time of filing this action, and still is, incorporated in Oregon, and its principal business office is in Portland, Oregon.  The day-to-day control of Standard is exercised from Oregon.  The individuals who control the day-to-day operations of Standard's business work at Standard's corporate headquarters, located in Portland, Oregon.  Standard supervises its business operations throughout the country from Oregon.  The vast majority of Standard's employees, real property and personal property are located in Oregon.  Jeffrey Decl.; Supplementary Declarations.  Standard is not a citizen of the State of California.  *See Albino v. Standard Ins. Co.*, 349 F. Supp. 2d 1334, 1336 (C.D. Cal. 2004); *Jewett v. Standard Ins. Co.*, 2004 WL 2475553, *7 (C.D. Cal. October, 26 2004).

27
28

        3.      Plaintiff Fails to Establish an Alter Ego Relationship Between StanCorp Financial and Standard

Defendant's Opposition to Plaintiff's Motion for Remand; CV-08-03021-JSW

Plaintiff's final argument to defeat diversity jurisdiction invokes StanCorp Financial Group, Inc. ("StanCorp").  Plaintiff asserts that the citizenship of StanCorp, Standard's parent company, determines the citizenship of Standard.  Motion for Remand at 8.  Plaintiff then argues that StanCorp is a citizen of California and that StanCorp's citizenship is imputed to Standard, thereby defeating complete diversity.

While it is not necessary for the Court to reach the issue of StanCorp's citizenship because Plaintiff does not establish an alter ego relationship, the documents attached to Plaintiff's Motion for Remand establish that StanCorp is both incorporated under the laws of Oregon and headquartered in Oregon.  Motion for Remand Ex. 2 at 3-4 (internal page numbering of StanCorp's 10-K).  Moreover, StanCorp is a holding company (*id.*), which means it has no independent operations.  Plaintiff apparently is attempting to attribute the assets of StanCorp's other subsidiary corporations to Standard, which requires an additional alter ego analysis not discussed by Plaintiff (i.e., to attribute the assets of other subsidiaries to Standard, Plaintiff must show both that Standard and StanCorp are alter egos, and that StanCorp and the other subsidiary(ies) are alter egos).

Plaintiff's argument that StanCorp is a citizen of California is premised on a misreading of *Arrellano v. Home Depot U.S.A., Inc.*, 245 F. Supp. 2d 1102 (S.D. Cal. 2003).  The court in *Arrellano* denied a motion for remand by the plaintiff who argued remand was proper, in part, because the defendant had a majority of its land holdings in California.  *Id.* at 1108.  The court noted that the location of the land holdings was a "factor" in determining corporate citizenship, and as such, it should be weighed amongst several other factors.  Thus, even if Plaintiff did demonstrate an alter ego relationship between StanCorp and Standard, StanCorp's citizenship is not determined solely on the basis of where its property is located.  Plaintiff has not demonstrated any justification that StanCorp is a citizen of California.

Finally, unless there is an alter ego relationship, the citizenship of parent and subsidiary corporations is determined separately.  *Taber Partners, I v. Merit Builders*, 987 F.2d 57, 61 (1st Cir. 1993).  StanCorp is not the alter ego of Standard; therefore, StanCorp's citizenship is irrelevant to diversity jurisdiction in this case.

1  California law determines whether StanCorp is the alter ego of Standard.[6] *See Loving*

2  *Saviour Church v. United States,* 728 F.2d 1085, 1086 (8th Cir. 1984) (federal courts generally

3  look to state law of the forum state to determine whether an entity is an alter ego of another in

4  diversity actions.); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  California

5  law requires two elements to establish an alter ego relationship: "(1) that there is such unity of

6  interest and ownership that the separate personalities … no longer exist and (2) that failure to

7  disregard [their separate identities] would result in fraud or injustice." *AT&T v. Compagnie*

8  *Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). "Courts apply the alter ego doctrine with

9  great caution and reluctance." *TV Events & Mktg. v. AMCON Distrib. Co*., 484 F. Supp. 2d 1124,

10  1142 (D. Haw. 2006) (quoting *Pearson v. Component Tech. Corp*., 247 F.3d 471, 485 (3d Cir.

11  2001)).

12  "Alter ego determinations are highly fact-based." *Sapic v. Gov't of Turkm.*, 345 F.3d 347,

13  359 (5th Cir. 2003).  Plaintiff, however, asserts only two facts here: Standard is a wholly owned

14  subsidiary of StanCorp, and the two share the same board of directors.  Motion for Remand at 6.

15  Neither fact is sufficient to demonstrate an alter ego relationship.  For example, demonstrating a

16  parent-subsidiary relationship, by itself, does not establish an alter ego relationship.[7] *See, e.g.,*

17  _____

18  [6] Plaintiff asserts that this Court should rely upon the test in *Powers v. Fox Television Stations*, 907 F. Supp. 719 (S.D.N.Y. 1995), to determine the presence of an alter ego relationship.  Motion for Remand at 6.  Lacking a pin cite, this is an ambiguous assertion.

19  *Powers* describes multiple rules and tests, among them, that a "subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own

20  principal place of business." *Id.* at 772 (quotations omitted).  Presumably, Plaintiff is referencing *Powers'* alter ego test.  The test to determine an alter ego relationship, however, is defined by

21  California law, as discussed above, making *Powers* inapposite in this respect.  Moreover, *Powers* held that the plaintiff's argument to defeat diversity by demonstrating an alter ego relationship

22  was "unusual" and—ultimately—unpersuasive. *Id.* at 721, 724.

23  [7] Plaintiff misreads *One Communs. Corp. v. Sprint Nextel Corp.,* arguing that it supports his motion for remand.  495 F.Supp.2d 219, 221 (D.Mass 2007); Motion for Remand at 6.  The

24  case is not only inapposite, but adverse to Plaintiff's argument.  *One Communications* held that "the citizenship of an unincorporated entity is determined by the citizenship of all of its

25  members." *Id.* at 220.  Here, Plaintiff is not attempting to demonstrate a similar argument that the citizenship of the subsidiary determines the citizenship of the parent (nevermind that both

26  Standard and StanCorp are separately incorporated); rather, he is attempting to show that the citizenship of the parent, StanCorp, determines the citizenship of the subsidiary, Standard.  Thus,

27  *One Communications* is inapposite.  Moreover, *One Communications* rejected the plaintiff's attempt to impute to the subsidiary the citizenship of the parent, holding "[a]bsolute ownership

28  and control of a subsidiary does not in and of itself render the subsidiary an alter ego of the parent corporation." *Id.* at 221.

1   *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1298 (S.D. Cal. 2003) ([T]here is a parent-

2   subsidiary relationship, but there is not such unity of interest, i.e., alter ego, so as to disregard the

3   corporate relationship").  Additionally, that two companies share the same board of directors does

4   not establish an alter ego relationship.  *United States v. Bestfoods*, 524 U.S. 51, 69 (U.S. 1998)

5   ("[I]t is entirely appropriate for directors of a parent corporation to serve as directors of its

6   subsidiary, and that fact alone may not serve to expose the parent corporation to liability for its

7   subsidiary's acts.")  Moreover, these two facts taken together do not establish an alter ego

8   relationship.  *See, e.g., Calvert v. Huckins*, 875 F. Supp. 674, 678 (E.D. Cal. 1995)  (concluding

9   that courts, when considering that a parent company has "ownership interests" in the subsidiary

10  and "some interlocking directors and officers,"  "have repeatedly held that such factors do not

11  justify" holding that plaintiff has established an alter ego relationship.).

12

13          **IV.     Conclusion**

14          For the foregoing reasons, Plaintiff's Motion for Remand should be denied.

15

16  Dated:  August 8, 2008                          Respectfully submitted,

17                                                  Jones Day

18

19                                                  By:   /s/ Shawn Hanson
                                                         Shawn Hanson
20

21                                                  Attorneys for Defendant
                                                    THE STANDARD INSURANCE
22                                                  COMPANY

23

24

25  SFI-588449v7

26

27

28

Defendant's Opposition to Plaintiff's Motion
for Remand; CV-08-03021-JSW