**NOT FOR CITATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE DUARTE,

    Plaintiff,

v.

THE STANDARD INSURANCE COMPANY,

    Defendant.

No. 08-03021 JSW

**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO STRIKE DECLARATION IN SUPPORT OF NOTICE OF REMOVAL AND DENYING PLAINTIFF'S MOTION TO REMAND**

**INTRODUCTION**

Now before the Court are the Motion to Strike the Declaration in Support of Notice of Removal and the Motion to Remand filed by Plaintiff, Jose Duarte ("Duarte"). Having considered the parties' papers, relevant legal authority, and the record in this case, the Court finds the matter suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b). The hearing set for August 29, 2008 is VACATED, and the Court HEREBY GRANTS IN PART AND DENIES IN PART Duarte's motion to strike and HEREBY DENIES the motion to remand.

**BACKGROUND**

On February 1, 2008, Duarte filed a Complaint against Defendant, The Standard Insurance Company ("Standard"), in the Superior Court of the State of California for the County of Alameda. (Notice of Removal, Ex. A (Complaint).)

In his Complaint, Duarte alleges that Standard breached an insurance contract by "failing to pay him disability insurance benefits to age 65" and by improperly terminating disability insurance benefits after twenty-four months. (*See* Compl., ¶¶ 1, 26, 28, 34, 37.) Based on these allegations, Duarte asserts six claims for relief: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Breach of the Obligation of Good Faith and Fair Dealing Bad Faith Insurer Breach; (4) Violation of California Civil Code § 51, Unruh Act; (5) Unfair Competition in Violation of California Business and Professions Code § 17200; and (6) Declaratory and Injunctive Relief, Including Specific Performance. (*Id.* ¶¶ 41-88.)

In his prayer for relief, Duarte seeks, *inter alia*, $28,800 for benefits not paid since February 2006, and future benefits of in the form of monthly payments of either $1200 or $1600 going forward to age 65. Duarte also seeks punitive damages and attorneys' fees. (*Id.* ¶¶ 91, 104-105, 110, 113-114.) In a demand letter to Standard, Duarte stated that his "settlement demand/offer is the <u>tendering of the policy limit</u> of $28,800 for back due benefits and payment of benefits going forward to age 65 starting on February 2, 2008." (Reply, Ex. 1 (emphasis in original).)[1] Duarte has not affirmatively declared that he seeks damages of less than $75,000.

On June 19, 2008, Standard removed the case to this court on the basis of diversity jurisdiction. Standard asserted, relying on allegations in the Complaint, that the amount in controversy exceeds $75,000. (Notice of Removal, ¶ 5a.) Standard also asserts that it is a citizen of Oregon. At the time of removal, it supported its position with the declaration of Rebecca Jeffrey, a Senior Paralegal for Standard. (Declaration of Rebecca J. Jeffrey in Support of Defendant's Notice of Removal ("Jeffrey Decl."), ¶ 4.) On information and belief, Ms.

---

[1] Duarte has objected to the admissibility of much of Standard's evidence. However, to support the factual contentions in his motion and reply, Duarte simply attaches exhibits to his brief. This is not in compliance with Northern District Local Rule 7-5(a), which requires that "[f]actual contentions made in support of or in opposition to any motion must be supported by an affidavit or declaration and by appropriate references to the record. Extracts from depositions, interrogatory answers, requests for admissions and other evidentiary matters must be appropriately authenticated by an affidavit or declaration." Because Standard has not objected to this evidence, the Court has considered it.

2

Jeffrey purports to set forth facts regarding the location of the substantial predominance of Standard's business activities. (*See* Jeffrey Decl., ¶¶ 8-11.)

It is undisputed that Standard is an Oregon corporation. According to the record, Standard employs 3,498 people in 34 states. (Declaration of Molly Amano ("Amano Decl."), ¶ 7.) Of those employees, 2,437 (or 69.6%), work in Oregon, 163 (or 4.7%) work in Maine, 133 (or 3.8 % work in Pennsylvania), 118 (or 3.4%) work in California, and 110 (or 3.1 %) work in New York. (*Id.*) Standard also attests that, as of December 31, 2007, it owned personal property with a value of $58,702,351. (Declaration of David Mekvold ("Mekvold Decl."), ¶ 7.) Mr. Mekvold attests that personal property valued at $53,034,540 is located in Oregon. Personal property valued at $1,246,256, $994,215, 559,929 and $544,571 is located in Maine, California, Pennsylvania, and Texas, respectively.

Standard also contends that it has real property in only two states, Oregon and Georgia, and that the book value of that property is $40,571,020 and $426,811, respectively. (Declaration of Cathy Tran ("Tran Decl."), ¶ 8.) Standard admits that a majority of its sales revenue is derived from sales that originate in California. (*See* Declaration of Brent Stephens ("Stephens Decl."), ¶ 7.) According to Mr. Stephens' declaration: 14.99 % of Standard's sales originate in California; 9.98 % originate in Oregon; 9.31% Texas; 7.62% originate in Washington; and 5.23% originate in Florida. (*Id.*)

## ANALYSIS

**A.     Applicable Legal Standards.**

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant ... to the district court of the United States for the district and division embracing the place where such action is pending." *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 7-8 (1983) (citation omitted) (quoting 28 U.S.C. § 1441). However, federal courts are courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Accordingly, the burden of establishing federal jurisdiction for purposes of removal is on the party seeking removal. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004). The removal statute

1 is strictly construed against removal jurisdiction, and "Federal jurisdiction must be rejected if
2 there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d
3 564, 566 (9th Cir. 1992).

An party may remove an action on the basis of diversity jurisdiction if no defendant is a citizen of the same state as any plaintiff and "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which the action is brought." 28 U.S.C. § 1441(b); *see also* 28 U.S.C. § 1332(a)(1). In addition, the removing party "must show that 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.'" *Valdez*, 372 F.3d at 1116 (quoting 28 U.S.C. § 1332(a)).

**B.     Duarte's Motion to Strike is Granted in Part.**

When it removed this case, Standard relied on the Jeffrey Declaration to establish that its principal place of business is Oregon. Duarte moves to strike the Jeffrey Declaration on the ground that it contains inadmissible hearsay. The Court concurs, in part. Although Standard asserts in its opposition, that the information in Ms. Jeffrey's declaration is based upon a review of business records, that is not supported by Ms. Jeffrey's declaration. She attests that for facts asserted on information and belief, "as part of my job duties I gathered information from individuals within the company with such knowledge," and that "[b]ased on my investigation I believe these facts to be true and correct." (*Id.* ¶ 2.) She does not state that she relied on business records. (*Compare* Jeffrey Decl., ¶ 2 *with* Amano Decl., ¶ 6 ("The facts set forth in this Declaration are derived from data compilations found in business records maintained in the ordinary course of Standard's business activity and it was the regular practice of that business activity to keep such records.").) Accordingly, the Court grants, in part, Duarte's motion to strike, and shall not consider paragraphs 8-11 of the Jeffrey Declaration.

**C.     Duarte's Motion to Remand is Denied.**

Duarte contends that Standard has not met and cannot meet its burden to show that the amount in controversy exceeds $75,000 and that it is not a citizen of California.

**1.     Amount in controversy.**

4

1  "[I]n cases where a plaintiff's state court complaint does not specify a particular amount of damages, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $[75,000]." *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). In order to determine whether a removing defendant has established jurisdiction by a preponderance of the evidence, a court may consider "facts presented in the removal petition as well as any 'summary-judgement-type evidence relevant to the amount in controversy at the time of removal.' Conclusory allegations as to the amount in controversy are insufficient." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090-1091 (9th Cir. 2003) (quoting *Singer v. State Farm Mut. Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997), in turn quoting *Allen v. R&H Oil and Gas Co.*, 63 F.3d 1326, 1335-36 (5th Cir. 1995)).

In its Notice of Removal, Standard alleged that the amount in controversy exceeded $75,000 because "Plaintiff has alleged benefits to age 65 and has prayed for them to be calculated as either $1200 a month or $1599.84 a month," and cites to exhibits attached to the Complaint to show that Duarte seeks such benefits for approximately 20 years. (Notice of Removal ¶ 5.a (citing Compl. ¶¶ 7, 110); *see also* Compl., Ex. G.) Standard also relies on the fact that Duarte seeks punitive damages and attorneys' fees to establish the amount in controversy. (*Id.* (citing Compl. ¶¶ 112-115).) Duarte argues that he only seeks $28,800 in past due benefits and argues that the Court should not consider the value of the future benefits that he might receive because Standard would not be required to pay those benefits in a lump sum.

In *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029 (N.D. Cal. 2002), the plaintiff filed suit in state court alleging that the defendant, his former employer, retaliated and discriminated against him in violation of California's Fair Employment and Housing Act ("FEHA"). *Id.* at 1030. After the defendant removed the case, the plaintiff moved to remand on the basis that the defendant had not established that the amount in controversy exceeded the jurisdictional amount. *Id.* at 1031. The court disagreed and considered future lost wages in its calculation. Although the court declined "to project future wage loss until a hypothetical trial date," based on the lost waged incurred at the time of removal, the court concluded that "it is

5

1  nonetheless reasonable to expect" future lost wages to exceed the amount that had accrued at
2  the time of removal. *Id.* at 1032; *cf. Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004,
3  1010 (N.D. Cal. 2002) (calculating amount in controversy by including, in connection with a
4  claim for declaratory relief that a lease was null and void, the monetary value of payments that
5  plaintiff would not have to make if declaratory relief granted).

6      In this case, the value of future benefits impacts the total value of Duarte's claim much
7  like the value of future lost wages impacted the value of the plaintiff's claim in *Simmons*. Thus,
8  the court shall consider them to determine whether the jurisdictional minimum has been
9  satisfied. *See Hangarter v. Provident Life and Accident Ins. Co.*, 373 F.3d 998, 1012 (9th Cir.
10 2004) (plaintiff may receive an award of future damages based on policy benefits that would
11 have been due for claims based on tortious breach of insurance policy). At the time he filed his
12 Complaint, Duarte was 42 years old. (*See* Compl., Ex. G.) In his Complaint, he seeks
13 prospective benefits in the amount of at least $1200 per month until age 65. (Compl., ¶ 91, 106,
14 110.) If he were to prevail, the value of the claim for future benefits is approximately
15 $300,000.[2] When the past due benefits are combined with future benefits, the monetary value
16 of his claims against Standard amount to approximately $ 328,800, which exceeds the
17 jurisdictional threshold.

18     Accordingly, the Court concludes that Standard has shown that it is more likely than not
19 that Duarte's claims meet the jurisdictional threshold.

20     **2.    Citizenship.**

21     For purposes of diversity jurisdiction, "a corporation shall be deemed to be a citizen of
22 any State by which it has been incorporated and of the State where it has its principal place of
23 business." 28 U.S.C. § 1332(c)(1); *see also United Computer Sys, Inc. v. AT&T Corp.*, 298

---

[2] The Court has not adjusted for present value discounts. However, if Duarte received monthly payments of $1200, that would total $14,400 per year. Assuming he received $14,400 for the next 23 years, that would amount to $331,200.

6

1  F.3d 756, 763 (9th Cir. 2002). It is undisputed that Standard is an Oregon corporation. Duarte

2  challenges Standard's assertion that its principal place of business also is Oregon.[3]

3       Within the Ninth Circuit, a corporation's principal place of business is determined either

4  by "(1) the place of operations test; or (2) the nerve center test." *Albino v. Standard Ins. Co.*,

5  349 F. Supp. 2d 1334, 1337 (C.D. Cal. 2004); *see also Tosco Corp. v. Communities for a Better*

6  *Env.*, 236 F.3d 495, 500 (9th Cir. 2001). To determine which test to apply, a court must

7  determine if any state has a "substantial predominance" of the corporate defendant's business

8  activities. *Albino*, 349 F. Supp. 2d at 1337.

9       To determine if a corporation's business activities substantially predominates in a given

10 state, a court must compare "that corporations's business activity in the state at issue to its

11 business activity in other individual states." *Tosco*, 236 F.3d at 500. "'[S]ubstantial

12 predominance' does not require the majority of a corporation's total business activity to be

13 located in one state, but instead, requires only that the amount of [the] corporation's business

14 activity in one state be significantly larger than any other state in which the corporation

15 conducts business." *Id.* A court is to consider a number of factors, including "location of

16 employees, tangible property, production activities, sources of income, and where sales take

17 place." *Id.*; *see also Albino*, 349 F. Supp. 2d at 1337 (same and concluding that factors "heavily

18 favor Oregon as containing a 'substantial predominance' of Standard's business activities).

19      Although the Court has not considered paragraphs 8 through 11 of the Jeffrey

20 Declaration, Standard submits competent and admissible evidence of the facts contained in

21 those paragraphs in opposition to Duarte's motion to remand. It is clear that Standard originates

---

[3] Duarte also argues that Standard is the alter ego of its parent corporation and asserts that the parent corporation is a citizen of California. Thus, Duarte argues Standard must be deemed to be a citizen of California. However, the cases on which Duarte relies for this proposition address the proper means of determining the citizenship of an unincorporated entity, such as a limited liability company or a partnership, rather than a corporation. *See, e.g., Johnson v. Columbia Properties Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006) (assessing citizenship of limited liability company); *One Communications Corp. v. Sprint Nextel Corp.*, 495 F. Supp. 2d 219, 220 (D. Mass. 2007) (assessing citizenship of limited liability company subsidiaries of corporation). The Court also concludes that Duarte has not established that Standard is an alter ego of its parent corporation, Stancorp Financial Group, Inc., or that jurisdictional discovery on this issue would be warranted.

7

most of its sales in California. (Stephens Decl., ¶ 7.) However, this fact is not necessarily dispositive, because California has one of the largest populations in the United States. *See, e.g., Albino*, 349 F. Supp. 2d at 1338 (noting that even though Standard derived majority of its income and sales from California, "in per capita terms, California is actually a less significant source of revenue"). Further, when the Court looks to the remaining factors, most of Standard's employees are located in Oregon, as are most of its tangible property and real property. (*See* Amano Decl., ¶ 7; Mekvold Decl., ¶ 7; Tran Decl., ¶ 7.). These latter factors suggest that a "substantial predominance" of Standard's business activities occur in Oregon. Finally, Ms. Jeffrey attests, based upon personal knowledge, that Standard's headquarters in Oregon "contain the entire finance, accounting, purchasing, treasury, marketing, information systems, internal audit and legal departments" are located at its headquarters in Oregon. (Jeffrey Decl., ¶ 12.) Similarly, Ms. Jeffrey attests that Standard's Public Affairs and Communications departments are located in Oregon. (*Id.* ¶ 13.)

On these facts, the Court concludes that Standard's principal place of business is Oregon. *See, e.g., Albino,* 349 F. Supp. 2d at 1337-38 (concluding that Standard's principal place of business is Oregon); *Jewett v. Standard Ins. Co.*, 2004 WL 2475553 (C.D. Cal. 2004) (same).

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Duarte's motion to strike the Jeffrey Declaration and DENIES the motion to remand.

**IT IS SO ORDERED.**

Dated: August 26, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE